DANIEL H. BOOKIN (S.B. #78996)
dbookin@omm.com
RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
DIXIE NOONAN (S.B. #257786)
dnoonan@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone:     (415) 984-8700
Facsimile:      (415) 984-8701

Attorneys for Defendant
Bank of America, N.A.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

SEAN L. GILBERT, on behalf of himself and
all persons similarly situated,

               Plaintiff,

     v.

BANK OF AMERICA, N.A. et al.,

               Defendants.

Case No. 13 1171

Alameda County Superior Court
No. RG13-667016

**NOTICE OF REMOVAL BY
DEFENDANT BANK OF AMERICA,
N.A.**

Complaint Filed: February 11, 2013

EDL

1  **TO THE CLERK OF THE NORTHERN DISTRICT OF CALIFORNIA and ALL**

2  **PARTIES AND THEIR ATTORNEYS OF RECORD:**

3  PLEASE TAKE NOTICE that under 12 U.S.C. § 632 and 28 U.S.C. §§ 1331, 1367, 1441,

4  1446, and 1453, Defendant Bank of America, N.A. removes the above-named action from the

5  Superior Court of the State of California, in and for the County of Alameda, to the United States

6  District Court, Northern District of California.

7  **PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL**

8  1.     On February 11, 2013, Plaintiff Sean L. Gilbert filed a purported class action

9  complaint (the "Complaint") against Bank of America and other defendants in the California

10  Superior Court, in and for the County of Alameda.  The action is captioned *Sean L. Gilbert, on*

11  *behalf of himself and all persons similarly situated v. Bank of America, N.A., MoneyMutual, LLC,*

12  *Selling Source, LLC, Effective Marketing Solutions, LLC, London Bay Capital, LLC, Montel*

13  *Brian Anthony Williams, Aaron Shoaf, Glenn McKay, and Does 1 through 100 inclusive*, Case

14  No. RG13-667016 ("State Court Action").  A copy of the Complaint is attached as Exhibit 1.

15  2.     Bank of America was served with the Complaint on February 13, 2013.  Removal

16  to this Court is timely because this Notice of Removal is being filed before the expiration of the

17  thirty-day window for filing pursuant to 28 U.S.C. § 1446(b).

18  3.     The Superior Court of the State of California, in and for the County of Alameda, is

19  located within the Northern District of California.  28 U.S.C. § 84(d).  This Notice of Removal is

20  therefore properly filed in this Court pursuant to 28 U.S.C. § 1441(a).

21  **BASES FOR REMOVAL JURISDICTION**

22  **I.     Federal Question Jurisdiction—The Edge Act**

23  4.     The Edge Act  provides for removal of and federal question jurisdiction over

24  certain state court actions, as follows:

25  [A]ll suits of a civil nature at common law or in equity to which any
corporation organized under the laws of the United States shall be a party,
26  arising out of transactions involving international or foreign banking . . .
or out of other international or foreign financial operations . . . shall be
27  deemed to arise under the laws of the United States, and the district courts
of the United States shall have original jurisdiction of all such suits; and
28  any defendant in any such suit may, at any time before the trial thereof,

- 1 -

BANK OF AMERICA, N.A.'S
NOTICE OF REMOVAL

remove such suits from a State court into the district court of the United
States for the proper district by following the procedure for the removal of
causes otherwise provided by law.

12 U.S.C. § 632. Under the statutory language, any defendant may remove the lawsuit;
unanimity is not required. All the requirements for removal under the Edge Act are
satisfied here.

5.     *Civil Suit*. The State Court Action is a "suit of a civil nature at common law or in
equity." 12 U.S.C. § 632. *See also Fed. Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1240
(11th Cir. 2000) (finding that the history of § 632 strongly supports the view that § 632 "truly
means all civil actions regardless of whether such actions are based on a state statute."). Plaintiff
alleges civil claims against Bank of America for (1) aiding and abetting violation of California's
Deferred Deposit Transaction Law (Financial Code §§ 23000 *et seq*.) (Compl. ¶¶ 61-74); (2)
violating California's Unfair Competition Law (Business and Professions Code §§ 17200 *et seq*.)
(Compl. ¶¶ 75-83; ¶¶ 90-103) and (3) Negligence (Compl. ¶¶ 104-111).

6.     *United States Corporation is a Party*. Bank of America, a named defendant in the
State Court Action, is a national bank, which is a corporation "organized under the laws of the
United States." 12 U.S.C. § 632. (*See* Compl. ¶ 2.) *See also, e.g., AIG, Inc. v. Bank of America
Corp.*, 820 F. Supp. 2d 555, 557 (S.D.N.Y. 2011) (finding that defendant Bank of America, N.A.,
is the nationally-chartered bank defendant for the purpose of Edge Act).

7.     *Arises Out of International Banking Transactions and/or International Financial
Operations*. Plaintiff's claims "aris[e] out of transactions involving international or foreign
banking" and international financial operations. 12 U.S.C. § 632. Plaintiff challenges the legality
of electronic funds transfers that Bank of America made from Plaintiff's Bank of America
account to companies in foreign countries that make payday loans, where the transfers were based
on authorization forms from Plaintiff. (*See, e.g.,* Compl. ¶¶ 64-67 (alleging that Bank of America
withdrew money from Plaintiff's account and electronically transmitted it to the offshore lenders);
*id.* ¶ 94 (same); *id.* ¶ 110 ("Bank of America breached its duty of care owed to Plaintiff . . . by
approving the withdrawal of funds from their accounts to the suspicious overseas lenders").) The
Complaint expressly alleges that the alleged "offshore lenders" are in foreign countries and that

-2-                                  BANK OF AMERICA, N.A.'S
                                     NOTICE OF REMOVAL

1  their operations were "lending activities." (*E.g.*, Compl. ¶¶ 27, 64.) Furthermore, the alleged acts

2  of Bank of America—transmitting money from customers' accounts based on their authorization

3  forms—are quintessential banking transactions. Thus, jurisdiction under the Edge Act is

4  appropriate. *See also, e.g.*, *City of Stockton v. Bank of America, N.A.*, No. C-08-4060, 2008 WL

5  4911183, at *5 (N.D. Cal. Nov. 13, 2008) (holding that "a suit satisfies the jurisdictional

6  requisites of Section 632 if any part of it arises out of transactions involving international or

7  foreign banking."); *In re Lloyd's Am. Trust Fund. Litig.*, 928 F. Supp. 333, 339 (S.D.N.Y. 1996)

8  (holding that defendant engaged in international banking services when it "execute[d] orders to

9  transfer funds to, from and among" different bank accounts around the world); *Warter v. Boston

10  Sec., S.A.*, No. 03-cv-81026, 2004 WL 691787, at *6-8 (S.D. Fla. Mar. 22, 2004) (holding that

11  Edge Act jurisdiction existed "because the facts underlying Plaintiff's [tort] claims, wire transfers,

12  managing deposits, and providing investment advice, constitute banking activities").

13  **II.    Federal Question Jurisdiction—Substantial Federal Question Under The Electronic
        Funds Transfer Act**

14

15  8.    Federal question jurisdiction also extends to cases in which a well-pleaded

16  complaint establishes that the plaintiff's right to relief necessarily depends on a resolution of a

substantial question of federal law. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers

17  Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983). Courts have found that causes of action

18  brought under California's Unfair Competition Law ("UCL") may give rise to federal question

19  jurisdiction under the substantial federal question doctrine where the cause of action is not also

20  premised on separate state law theories. *Wiley v. Trendywest Resorts, Inc.*, No. 04-cv-0432, 2005

21  WL 1030220, at *2 (N.D. Cal. May 3, 2005); *Nat'l Credit Reporting Ass'n v. Experian Info.*

22  *Solutions, Inc.*, No. 04-cv-01661, 2004 WL 1888769, at *3 (N.D. Cal. July 21, 2004). In this

23  case, Plaintiff's Fifth Cause of Action is a UCL claim that is premised solely on allegations that

24  Bank of America violated the federal Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.*,

25  and its implementing federal regulation, "Regulation E." (*See* Compl. ¶¶ 90-103.) As such,

26  resolution of that cause of action necessarily depends on the adjudication of a substantial question

27  of federal law—specifically, compliance with a federal statute and federal regulation. Thus,

28

- 3 -                                BANK OF AMERICA, N.A.'S
                                                                                        NOTICE OF REMOVAL

1  federal question jurisdiction exists on this independent basis.

2       9.    Extending supplemental jurisdiction over Plaintiff's other state law claims is

3  proper, moreover, where those claims "form part of the same case or controversy under Article III

4  of the United States Constitution" as claims over which this Court has original jurisdiction. *See*

5  28 U.S.C. § 1367(a). In this case, Plaintiff's other claims against Bank of America are closely

6  related to the UCL claim that is predicated on violation of the EFTA. They all arise out of the

7  same alleged misconduct—the alleged participation in purportedly illegal payday loans. *See*

8  *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 1994) ("A state law claim is part of the same

9  case or controversy when it shares a 'common nucleus of operative fact' with the federal claims

10  and the state and federal claims would normally be tried together."); *Baer v. First Options of*

11  *Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995) (finding that "[a] loose factual connection

12  between the claims is generally sufficient" for a court to exercise supplemental jurisdiction over

13  related state law claims). Asserting supplemental jurisdiction over those claims is therefore

14  proper here.

15                          **CONCLUSION**

16       10.    This action is within the original jurisdiction of this Court pursuant to 12 U.S.C. §

17  632 and 28 U.S.C. §§ 1331 & 1367, as described above. It therefore is removable pursuant to 28

18  U.S.C. §§ 1441(a) & 1453.

19       11.    As required by 28 U.S.C. § 1446(d), Bank of America will provide written notice

20  of the removal of this action to Plaintiff and to the Alameda County Superior Court.

21                    *          *          *

22

23

24

25

26

27

28

- 4 -

BANK OF AMERICA, N.A.'S
NOTICE OF REMOVAL

1      WHEREFORE, Defendant Bank of America prays that the State Court Action be removed

2  from the Superior Court of the State of California, County of Alameda, to this Honorable Court,

3  and respectfully requests that this Court retain jurisdiction for all further proceedings.

4

5      Dated:  March 15, 2013                    Respectfully submitted,

6                                                O'MELVENY & MYERS LLP

7

8                                         By:    _____

9                                                Randall W. Edwards
                                                 Attorneys for Defendant
10                                               Bank of America, N.A.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 5 -                                   BANK OF AMERICA, N.A.'S
                                         NOTICE OF REMOVAL

# EXHIBIT   1

2/3/13. @R 4SP.

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:** Bank of America, N.A.,
*(AVISO AL DEMANDADO):* MoneyMutual, LLC, Selling Source,
LLC, Effective Marketing Solutions, LLC, London Bay
Capital, LLC, Montel Brian Anthony Williams, Aaron
Shoaf, Glenn McKay, and Does 1 through 100 inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** Sean L. Gilbert, on
*(LO ESTA DEMANDANDO EL DEMANDANTE):* behalf of himself
and all persons similarly situated.

| FOR COURT USE ONLY / SOLO PARA USO DE LA CORTE |
|---|
| **ENDORSED FILED ALAMEDA COUNTY** |
| FEB 1 1 2013 |
| CLERK OF THE SUPERIOR COURT |
| **Anita Dhir** |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court, County of Alameda
1225 Fallon Street
P.O. Box 838
Oakland, CA 94612-4280

**CASE NUMBER:**
*(Número del Caso):* RG13667014

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jeffrey Wilens, Esq. (#120371)      714-854-7205      714-854-7206fax
LakeShore Law Center
18340 Yorba Linda Blvd., Suite 107-610,
Yorba Linda, CA 92886

**Anita Dhir**

DATE: 2/11/13
*(Fecha):*

Clerk, by _____, Deputy
*(Secretario)*              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Bank of America, N.A.

under:
☐ CCP 416.10 (corporation)
☐ CCP 416.20 (defunct corporation)
☒ CCP 416.40 (association or partnership)
☐ other *(specify):*
☐ CCP 416.60 (minor)
☐ CCP 416.70 (conservatee)
☐ CCP 416.90 (authorized person)

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465



1
2
3
4
5

**LAKESHORE LAW CENTER**
**Jeffrey Wilens, Esq. (State Bar No. 120371)**
**18340 Yorba Linda Blvd., Suite 107-610**
**Yorba Linda, CA 92886**
**714-854-7205**
**714-854-7206 (fax)**
**jeff@lakeshorelaw.org**

**FILED**
**ALAMEDA COUNTY**

FEB 1 1 2013

CLERK OF THE SUPERIOR COURT
By_____
Deputy

6
7
8
9
10
11

**THE SPENCER LAW FIRM**
**Jeffrey P. Spencer, Esq. (State Bar No. 182440)**
**903 Calle Amanecer, Suite 220**
**San Clemente, CA 92673**
**949-240-8595**
**949-240-8515 (fax)**
**jps@spencerlaw.net**

12

**Attorneys for Plaintiff**

**BY FAX**

13

**ALAMEDA COUNTY SUPERIOR COURT, STATE OF**

14

**CALIFORNIA (Unlimited Civil), René C. Davidson Courthouse,**

15

**1225 Fallon Street, Oakland, California 94612**

16
17
18

SEAN L. GILBERT, on behalf of
himself and all persons similarly
situated,

) Case No. **RG13667016**
) Assigned for All Purposes to:
)
)

19

Plaintiff,

)
) CLASS ACTION

20

v.

)
) **COMPLAINT FOR**

21
22
23
24
25
26
27
28

BANK OF AMERICA, N.A.,
MONEYMUTUAL, LLC,
SELLING SOURCE, LLC,
EFFECTIVE MARKETING
SOLUTIONS, LLC,
LONDON BAY CAPITAL, LLC,
MONTEL BRIAN ANTHONY
WILLIAMS,
AARON SHOAF,
GLENN MCKAY,
and Does 1 through 100 inclusive,

)
) **1. Aiding and Abetting Violation of**
) **California Deferred Deposit Transaction**
) **Law (Financial Code § 23000 et. seq.)**
) **2. Aiding and Abetting Violation of**
) **California Deferred Deposit Transaction**
) **Law (Financial Code § 23000 et. seq.)**
) **3. Violation of Unfair Competition Law**
) **(Business and Professions Code § 17200**
) **et. seq.)**
) **4. Violation of Unfair Competition Law**
) **Business and Professions Code § 17200**

1
COMPLAINT

) et. seq.)
) **5. Violation of Unfair Competition Law**
) **Business and Professions Code § 17200**
) et. seq.)
) **6. Negligence**
Defendants.            )
                       )

Plaintiff alleges as follows:

## PARTIES

1. Plaintiff SEAN L. GILBERT, an individual, brings this action on behalf of himself, and on behalf of a class of similarly situated persons pursuant to Code of Civil Procedure § 382. Plaintiff is a resident of the State of California and a competent adult.

2. Plaintiff is informed and believes, and thereupon alleges, that Defendant BANK OF AMERICA, N.A. is now, and at all times mentioned in this Complaint was, a national association based in North Carolina and doing business in the County of Alameda, State of California, and throughout the State of California and United States. It has not designated a principle place of business in California.

3. Plaintiff is informed and believes, and thereupon alleges, that Defendant MONEYMUTUAL, LLC is now, and at all times mentioned in this Complaint was, a business of unknown form based in Silver Springs, Nevada and doing business in the County of Alameda, State of California, and throughout the State of California and United States. It has not designated a principle place of business in California.

4. Plaintiff is informed and believes, and thereupon alleges, that Defendant SELLING SOURCE, LLC is now, and at all times mentioned in this Complaint was, a business of unknown form based in Las Vegas, Nevada and doing business in the County of Alameda, State of California, and throughout the State of California and United States. It has not designated a principle place of business in California.

5. Plaintiff is informed and believes, and thereupon alleges, that Defendant EFFECTIVE MARKETING SOLUTIONS, LLC., is now, and at all times mentioned in

1   this Complaint was, a corporation based in Silver Springs, Nevada and doing
2   business in the County of Alameda, State of California, and throughout the State of
3   California and United States. It has not designated a principle place of business in
4   California.

5   6. Plaintiff is informed and believes, and thereupon alleges, that Defendant LONDON
6      BAY CAPITAL, LLC., is now, and at all times mentioned in this Complaint was, a
7      corporation based in San Francisco, Califorina and doing business in the County of
8      Alameda, State of California, and throughout the State of California and United
9      States. It has designated a principle place of business in San Francisco, California.

10  7. Plaintiff is informed and believes, and thereupon alleges, that Defendant MONTEL
11     BRIAN ANTHONY WILLIAMS, is now, and at all times mentioned in this Complaint
12     was, a natural person residing in Jackson, Tennessee and doing business in the
13     County of Alameda, State of California, and throughout the State of California and
14     United States.

15  8. Plaintiff is informed and believes, and thereupon alleges, that Defendant AARON
16     SHOAF, is now, and at all times mentioned in this Complaint was, a natural person
17     residing in the State of Nevada and doing business in the County of Alameda, State
18     of California, and throughout the State of California and United States.

19  9. Plaintiff is informed and believes, and thereupon alleges, that Defendant GLENN
20     MCKAY, is now, and at all times mentioned in this Complaint was, a natural person
21     residing in the State of Nevada and doing business in the County of Alameda, State
22     of California, and throughout the State of California and United States. McKay is the
23     President and Chief Operating Officer of Selling Source, LLC.

24  10. Plaintiff does not know the true names or capacities of the Defendants sued herein as
25      DOES 1 through 100 inclusive, and therefore sue these Defendants by such fictitious
26      names. Plaintiff will amend this complaint to allege their true names and capacities
27      when ascertained. Plaintiff is informed and believes, and thereon alleges, that each
28      of these fictitiously named Defendants is responsible in some manner for the

3
COMPLAINT

1     occurrences herein alleged, and that Plaintiff's damages as herein alleged were

2     proximately caused by those Defendants. Each reference in this complaint to

3     "Defendant" or "Defendants" or to a specifically named Defendant refers also to all

4     Defendants sued under fictitious names.

5    11. Plaintiff is informed and believes, and thereon alleges, that at all times herein

6     mentioned each of the Defendants, including all Defendants sued under fictitious

7     names, and each of the persons who are not parties to this action but are identified

8     by name or otherwise throughout this complaint, was the alter ego of each of the

9     remaining Defendants, was the successor in interest or predecessor in interest, and

10    was the agent and employee of each of the remaining Defendants and in doing the

11    things herein alleged was acting within the course and scope of this agency and

12    employment.

13                            **CLASS ALLEGATIONS**

14    12. Plaintiff is a member of a class of persons, the members of which are similarly

15     situated to each other member of that class. The class is defined as follows:

16           All California residents who signed a contract identifying the
lender as one of the Offshore Lenders and initiating a
17           "Deferred Deposit Transaction" pursuant to a written
agreement offered by those Offshore Lenders on or after
18           February 11, 2009.

19

20    13. Plaintiff is informed and believes, and thereupon alleges, that the class Plaintiff

     represents includes at least 100 persons who contracted to enter into Deferred

21     Deposit Transactions with the Offshore Lenders during the aforementioned time

22     frame.

23    14. The identity of the members of the class is ascertainable from Defendants' own

24     business records or those of its agents.

25    15. The Plaintiff and Class Members' claims against Defendants involve questions of law

26     or fact common to the class that are substantially similar and predominate over

27     questions affecting individual Class Members in that all Class Members executed

28

1   substantially identical form agreements prepared by the Offshore Lenders, and the

2   same question as to the legality of the agreement applies to each Class Member.

3   16. The claims of Plaintiff are typical of the claims of the members of the Class.

4   17. Plaintiff can fairly and adequately represent the interests of the Class.

5   **FIRST CAUSE OF ACTION FOR AIDING AND ABETTING THE VIOLATION**

6   **OF THE CALIFORNIA DEFERRED DEPOSIT TRANSACTION LAW**

7   **(FINANCIAL CODE § 23000 ET. AL.) AGAINST DEFENDANTS**

8   **MONEYMUTUAL, LLC, SELLING SOUCE, LLC, EFFECTIVE MARKETING**

9
    **SOLUTIONS, LLC, LONDON BAY CAPITAL, LLC, GLEN MCKAY, AARON**
10
    **SHOAF AND MONTEL BRIAN ANTHONY WILLIAMS (BROUGHT AS**
11

12   **INDIVIDUAL ACTION AND CLASS ACTION)**

13   18. Plaintiff incorporates in this cause of action the allegations contained in paragraphs 1

14   through 16, inclusive.

15   19. Financial Code § 23000, et. seq., the California Deferred Deposit Transaction Law

16   (CDDTL), regulates the making of what are commonly called "payday loans."

17   20. In a payday loan, the borrower receives a cash advance of a specified amount secured

18   by a check (or electronic draft) to repay a larger amount of money in a short period

19   of time.

20   21. Payday loans made to California residents by companies located in California or

21   elsewhere are legal under certain circumstances and the industry is heavily

22   regulated.

23   22. Financial Code § 23001 (a) defines a "Deferred Deposit Transaction" as a

24   "transaction whereby a person defers depositing a customer's personal check until a

25   specific date, pursuant to a written agreement for a fee or other charge, as provided

26   in Section 23035." There is no requirement that the "personal check" be a "paper

27   check" and commonly the borrower provides an entirely electronic version of a check

28   as security for the loan and the actual repayment is obtained by the lender by

1    electronically withdrawing funds from the borrower's bank account.

2   23. Section 23001 (d) defines a "Licensee" as "any person who offers, originates, or
3    makes a deferred deposit transaction, who arranges a deferred deposit transaction
4    for a deferred deposit originator, who acts as an agent for a deferred deposit
5    originator, or who assists a deferred deposit originator in the origination of a
6    deferred deposit transaction."

7   24. Financial Code § 23005 provides that "no person shall offer, originate, or make a
8    deferred deposit transaction, arrange a deferred deposit transaction for a deferred
9    deposit originator, act as an agent for a deferred deposit originator, or assist a
10    deferred deposit originator in the origination of a deferred deposit transaction
11    without first obtaining a license from the commissioner and complying with the
12    provisions of this division."

13   25. Financial Code § 23035 provides that the maximum length of a payday loan is 31
14    days and the maximum face amount of the repayment check is $300. Financial Code
15    § 23036 provides that the maximum fee (finance charge) for a payday loan is 15%.
16    In conjunction, these provision mean the maximum amount that can be borrowed is
17    $255 and the maximum finance charge is $45 for a repayment amount of $300. No
18    additional fees or finance charges can be imposed even if the borrower receives
19    "extensions" on repaying the loan.

20   26. There are numerous other regulations and requirements concerning the making of
21    payday loans, but the aforementioned ones will suffice for purposes of this lawsuit
22    for reasons that will soon become apparent.

23   27. During the Class Period, numerous companies based in foreign countries made
24    payday loans to California residents. These companies will be referred to as the
25    Offshore Lenders. They include but are not limited to the following: VIP Loan Shop,
26    Action PDL Loan Services, Payday Mobility, Cash Yes, OPD Solutions, LLC and SGC
27    Processing, Gateway Holdings Group LLC, Horizon Opportunities Group, LLC, SCS
28    Processing, LLC, Payday Valet, and VIP PDL Services, LLC.

1   28. Additional Offshore Lenders can be identified from Defendants' business records.

2   29. None of the Offshore Lenders was licensed by the State of California during the Class

3       Period and none of them advertised or claimed to be so licensed.

4   30. All of the Offshore Lenders made loans larger than $255 to California residents and

5       imposed finance charges and fees greater than 15% of the repayment amount.

6   31. Every loan made by the Offshore Lenders was illegal under California law for

7       numerous reasons including that the lender was not licensed by the State of

8       California to make a payday loan or any other type of loan for that matter.

9       Additionally, every loan charged fees greater than that permitted by California law

10  32. During the Class Period, Defendants MONEYMUTUAL, SELLING SOURCE, LLC,

11      EFFECTIVE MARKETING SOLUTIONS, LLC, LONDON BAY CAPITAL, LLC, GLEN

12      MCKAY and AARON SHOAF, collectively the MoneyMutual Defendants, owned

13      managed and operated a payday lender referral service widely advertised on

14      television, radio and the Internet. This referral service was and is still located at

15      www.moneymutual.com.

16  33. The MoneyMutual website contains many pages promoting its network of payday

17      lenders. The website explains: "A cash advance is a signature loan backed by a

18      future source of income, usually your paycheck. That's why they are also known as

19      'payday loans.' A cash advance is designed to help you out through a temporary loss

20      of cash or an unforeseen emergency. You can use the cash for car repair, food, credit

21      card bills, other bills, rent, travel or whatever you need. Payday loans, short term

22      loans, cash advance loans and installment loans are growing in popularity because

23      they are easy to obtain and can be an excellent alternative to exorbitant late fees,

24      reconnect fees and other penalties creditors can charge against your accounts."

25  34. It further explains: "Getting your cash is as easy as 1-2-3. MoneyMutual is not a

26      lender. Instead, we have built one of the nation's largest networks of online short-

27      term lenders. After submitting your information, if you are matched with a lender,

28      MoneyMutual will redirect to the lender's web site where you will be able to review

loan terms and conditions. In many cases, the lender will then contact you to confirm your personal information and finalize the loan. They may contact you via telephone, email, text messages, etc. Please make sure that you respond in a timely manner to ensure that funds are deposited as quickly as possible."

35. The website assures consumers that all lenders on the MoneyMutual Network are required to adhere to a Code of Conduct, which includes the requirement that lenders "comply with any and all applicable federal and state collection practices laws and regulations." The website claims that "MoneyMutual regularly monitors lender practices for compliance with this Code of Lender Conduct. In the event that MoneyMutual determines that a lender is not acting in accordance with this Code of Lender Conduct, that lender's participation in the MoneyMutual program is subject to suspension and/or possible termination."

36. During the same period, television celebrity MONTEL BRIAN ANTHONY WILLIAMS, promoted and highly recommended the www.moneymutual.com website and the payday loan referral services provided therein by means of radio, television and Internet advertising. He continues to do so today.

37. For example, during the Class Period, on the homepage of www.moneymutual.com, there was a large picture of a smiling Montel Williams and a quote from him saying "Money Mutual's online lending network is a cash source you can trust for finding a short term cash loan quickly and easily." There is also a logo "As seen on TV." Mr. Williams has appeared in numerous television and radio commercials during the Class Period for the purpose of promoting www.moneymutual.com.

38. On YouTube, at www.youtube.com/user/moneymutual?feature=results_main, many of these commercials can be found on the "channel" dedicated to MoneyMutual. In one of the commercials, Mr. Williams assures the viewers or listeners that MoneyMutual can connect consumers to over 100 lenders, who can lend up to $1,000 fast and "no worries." In another commercial, he describes some financial emergencies that might befall the consumer and then says "I am here to offer you a

1    backup plan—MoneyMutual." In another commercial, Mr. Williams, in referring to
2    MoneyMutual, states "We have helped people all across America." In another
3    commercial, Mr. Williams again refers to MoneyMutual when he states "We have the
4    largest network of short-term lenders who can get you up to $1,000...." In another
5    commercial, Mr. Williams states "Hi, I'm Montel Williams from MoneyMutual, your
6    trusted source of over 60 lenders to get you short-term cash.. . . . .Look for me and
7    you will know it's MoneyMutual." Finally, in a commercial dating back to December
8    2009, Mr. Williams states "Hi, I'm Montel Williams, would an extra $1,000 come in
9    handy right now? Then I would like to talk to you about MoneyMutual. It's your
10   trusted source to over 60 lenders to get you up to $1,000 fast....."

11   39. On the MoneyMutual website, during the Class Period there was a frequently asked
12   questions page that contains the following information: "Q. Why is Montel Williams
13   endorsing this site? A. Montel Williams has endorsed MoneyMutual to provide
14   access to short term cash loans to people who have no other alternatives. Montel
15   takes pride in being able to provide people with information to help them live better
16   physically, spiritually, financially, and emotionally. Montel understands that people
17   have unexpected and needed expenses and sometimes difficult to pay due to lack of
18   funds or credit. Rather than bounce a check, or receive late payment penalties,
19   Montel believes that a short term loan from MoneyMutual's network of participating
20   lenders can provide the immediate assistance to avoid costly fees. According to
21   Williams, "MoneyMutual's online lending network is the only source you can trust
22   for finding a short term loan quickly and easily." MoneyMutual allows people to
23   receive instant approval on getting a cash loan of up to $1,000*. Restrictions do
24   apply. See Moneymutual.com for details."

25   40. On a different page of the MoneyMutual website, during the Class Period, this
26   statement was displayed: "Why does Montel Williams endorse MoneyMutual?
27   Celebrated talk show host and Daytime Emmy Award winner Montel Williams
28   associates himself only with products that help people live better physically,

9

1    spiritually, financially and emotionally. He understands that people will find
2    themselves with difficult to pay expenses due to lack of funds or credit and agrees
3    that a cash advance can provide the needed quick assistance and help avoid more
4    costly fees."

5    41. As indicated above, Mr. Williams did not simply act as a celebrity endorser of a
6    product, but repeatedly personally vouched for the integrity of the MoneyMutual
7    lending network and repeatedly stated or implied that he personally was part of
8    MoneyMutual.

9    42. MoneyMutual Defendants pay Mr. Williams a substantial fee for his services in
10   "endorsing" the website.

11   43. Notwithstanding the foregoing assurances and the Lender's Code of Conduct, in
12   reality, the MoneyMutual Network has been comprised of many, if not mostly, illegal
13   and criminal lenders, identified here as the Offshore Lenders.

14   44. The MoneyMutual Defendants and Montel Williams decided which lenders would be
15   added to the MoneyMutual Lending Network.    They considered applications
16   submitted by the lenders including any proof of licensing as well as the lender's
17   websites. They knew from these information sources that the Offshore Lenders were
18   based overseas and were not licensed to make payday loans. They further knew that
19   since those lenders could not make any payday loans, they could not collect finance
20   charges on the loans.    They further knew that the lenders were violating
21   MoneyMutual's own Lender's Code of Conduct by collecting and trying to collect
22   finance charges on these illegal loans. Nevertheless, the MoneyMutual Defendants
23   and Montel Williams permitted these lenders to join and to continue to participate in
24   the Lending Network during the Class Period.

25   45. During the Class Period, the Departments of Corporations and Attorneys General for
26   numerous States issued cease and desist notices against many of the Offshore
27   Lenders affiliated with the MoneyMutual website. Those orders were ignored by the
28   Offshore Lenders.    The MoneyMutual Defendants and Montel Williams knew of

1 these various State law enforcement actions but continued to recommend these
2 lenders to consumers.

3 46. At no time during the Class Period, did Mr. Williams or the MoneyMutual
4 Defendants disclose that many of the "approved lenders" were illegal or unlicensed
5 or that they charged fees in excess of that permitted by law.

6 47. In allowing these illegal lenders to join the Lending Network and in recommending
7 the services of these illegal lenders to consumers, and in concealing the illegal status
8 of the lenders, MoneyMutual Defendants and Montel Williams intended to provide
9 and did provide substantial assistance and encouragement to the illegal lenders.

10 48. They did so knowingly because the MoneyMutual Defendants and Montel Williams
11 were paid a significant percentage of the revenue generated from the illegal payday
12 loans as their "commission" or "profit sharing" from this enterprise. They intended
13 to have the MoneyMutual website lend an aura of respectability and further
14 encourage consumers to take loans from the illegal lenders in the Lending Network.

15 49. During the Class Period, Plaintiff Gilbert and the Class Members used the
16 MoneyMutual website to locate payday lenders because they trusted Montel
17 Williams and the MoneyMutual website appeared to be a reliable and trustworthy
18 source of loans. In using the MoneyMutual website, they were referred to and
19 entered into loan agreements with some of the Offshore Lenders.

20 50. For example, in the November and December 2012 time frame, Plaintiff obtained a
21 number of payday loans from Offshore Lenders referred to him by the Money Mutual
22 website. He obtained a loan from VIP Loan Shop for $380 and has paid back at least
23 $120 to date. Plaintiff obtained a loan from Action PDL Loan Services and has paid
24 back at least $180 to date. Plaintiff obtained a loan from Payday Mobility for $400
25 and has paid back at least $145 to date. Plaintiff obtained a loan from OPD Solutions
26 for $300 and has paid back at least $90 to date. Plaintiff obtained loans from Cash
27 Yes for $425 and SGC Processing for $250 and it is not clear how much has been
28 paid back on those loans.

1   51. With respect to loans Plaintiff has not yet paid back, he is being harassed by
2       collection agencies affiliated with the illegal lenders.

3   52. Similarly, during the Class Period, the Class Members were referred through the
4       MoneyMutual website to the Offshore Lenders which offered, originated or made
5       Deferred Deposit Transactions or otherwise acted as a "Licensee" with respect to
6       loans made to the Class Members. Hence, as to each of those Class Members, the
7       Offshore Lenders violated Financial Code § 23005 and/or Financial Code § 23035
8       and § 23036.

9   53. As a result of the MoneyMutual Defendants and Montel Williams' knowing and
10     active participation in the making of illegal payday loans, these Defendants are liable
11     as aiders and abettors to the violations of the Financial Code committed by the
12     Offshore Lenders.

13   54. Financial Code § 23060 (a) provides "If any amount other than, or in excess of, the
14     charges or fees permitted by this division is willfully charged, contracted for, or
15     received, a deferred deposit transaction contract shall be void, and no person shall
16     have any right to collect or receive the principal amount provided in the deferred
17     deposit transaction, any charges, or fees in connection with the transaction."

18   55. Financial Code § 23060 (b) provides "If any provision of this division is willfully
19     violated in the making or collection of a deferred deposit transaction, the deferred
20     deposit transaction contract shall be void, and no person shall have any right to
21     collect or receive any amount provided in the deferred deposit transaction, any
22     charges, or fees in connection with the transaction."

23   56. Moreover, pursuant to Financial Code § 23065, the knowing and willful violation of
24     any provision of the CDDTL by a lender is punishable as a criminal offense carrying
25     up to one year in and payment of a $10,000 fine.

26   57. As a result of the aforementioned willful violations of provisions of the CDDTL,
27     Plaintiff's and each of the Class Members' Loan Agreements is void as a matter of law
28     and no person shall have any right to collect or receive the principal amount (or any

<div align="center">12</div>
<div align="center">COMPLAINT</div>

1   amount) provided in the deferred deposit transaction, any charges, or fees in
2   connection with the transaction."

3   58. Additionally, pursuant to Financial Code § 23064, Plaintiff and the Class Members
4       may recover from the MoneyMutual Defendants and Montel Williams up to three
5       times the damages actually incurred but in no event less that the amount paid by
6       them to the Offshore Lenders.

7   59. Further, pursuant to Financial Code § 23064, upon a determination that Defendants'
8       violations were willful, the Court may award punitive damages in addition to the
9       amounts set forth above.

10  60. Further, pursuant to Financial Code § 23064, the Court should order MoneyMutual
11      Defendants and Montel Williams' to make restitution and disgorge all money
12      obtained by the Offshore Lenders in these illegal transactions and shall further
13      enjoin MoneyMutual Defendants and Montel Williams' from permitting illegal
14      lenders to participate in their Lending Network.

15  **SECOND CAUSE OF ACTION FOR AIDING AND ABETTING THE**
16  **VIOLATION OF THE CALIFORNIA DEFERRED DEPOSIT TRANSACTION**
17  **LAW (FINANCIAL CODE § 23000 ET. AL.) AGAINST DEFENDANT BANK**
18  **OF AMERICA, N.A. (BROUGHT AS INDIVIDUAL ACTION AND CLASS**
19  **ACTION)**
20
21  61. Plaintiff incorporates in this cause of action the allegations contained in paragraphs 1
22      through 59, inclusive.

23  62. Defendant Bank of America and other unidentified banks and merchant processors
24      currently named as Doe Defendants aided and abetted the Offshore Lenders in
25      making illegal payday loans.

26  63. Defendant Bank of America, as a national bank, is not a "licensee" within the
27      meaning of Financial Code § 23001 (d). While Defendant Bank of America was not
28      required to procure a license from the Department of Corporations in order to offer

1    or make payday loans, this provision does not permit it o aid and abet another
2    person or entity in <u>its</u> violation of the Financial Code.

3    64. During the Class Period, Plaintiff had a checking account with Defendant Bank of
4        America that was used in connection with the aforementioned payday loans. On the
5        approximate dates previously alleged, Bank of America withdrew money from
6        Plaintiff's checking account and electronically transmitted it to bank accounts
7        belonging to the Offshore Lenders. Similarly, during the Class Period, many of the
8        Class Members also had checking accounts with Bank of America, which withdrew
9        money from those Class Members' accounts and transmitted the money to the bank
10       accounts of the Offshore Lenders.

11   65. In making these withdrawals and transmissions, Bank of America intentionally
12       provided substantial assistance to the illegal lending activities of the Offshore
13       Lenders.

14   66. At the time Bank of America made these electronic withdrawals and transfers, it
15       knew the identity of the Offshore Lenders, it knew the lenders were engaged in the
16       business of making payday loans from the Caribbean, Central America or similar
17       locations to California residents, it knew that the Offshore Lenders were not licensed
18       to make payday loans to California or United States residents, and therefore it knew
19       the loan transactions were illegal under California and United States law and that the
20       loan transactions were void.

21   67. Bank of America knew these facts because when the Offshore Lenders attempted to
22       initiate debits from Plaintiff's bank accounts, they were required to provide written
23       ACH Authorization Forms that had purportedly been signed by the Plaintiff and
24       Class Members and Bank of America was prohibited by Clearing House rules from
25       honoring the ACH debit requests without verifying that the Plaintiff and Class
26       Members had authorized the debits to be made. The information present in the
27       purported ACH Authorization forms provided this knowledge to Bank of America.

28   68. Bank of America also was aware of the illegal nature of the lending activities of the

1    Offshore Lenders through its own internal compliance procedures as well as from
2    public actions taken by various States against the Offshore Lenders, including cease
3    and desist orders.

4  69. Along the same lines, the Office of the Comptroller of the Currency (OCC) issued an
5    advisory to national banks including Bank of America in November 2000 warning it
6    against establishing business relationships with third party payday lenders. The
7    OCC took public actions against some national banks in 2003 because of their
8    improper relationship with third party payday loan vendors. Eventually, the OCC
9    forced national banks to stop partnering with payday lenders.

10 70. Further, at the time Bank of America withdrew and transmitted these funds, it acted
11   with the specific intent to assist the Offshore Lenders in profiting from their illegal
12   activities and was motivated by the revenue that flowed to it by way of its fees and
13   charges in connection with the transmission of these funds. The more money was
14   transmitted, the more Bank of America profited.

15 71. As a result of Bank of America's knowing and active participation in the making of
16   illegal payday loans, is liable as aiders and abettors to the violations of the Financial
17   Code committed by the Offshore Lenders.

18 72. Therefore, pursuant to Financial Code § 23064, Plaintiff and the Class Members may
19   recover from Bank of America up to three times the damages actually incurred but in
20   no event less that the amount paid by them to the Offshore Lenders.

21 73. Further, pursuant to Financial Code § 23064, upon a determination that Defendants'
22   violations were willful, the Court may award punitive damages in addition to the
23   amounts set forth above.

24 74. Further, pursuant to Financial Code § 23064, the Court should order Bank of
25   America to make restitution and disgorge all money obtained by the Offshore
26   Lenders in these illegal transactions.

27   **THIRD CAUSE OF ACTION FOR VIOLATION OF THE UNFAIR**
28   **COMPETITION LAW AGAINST ALL DEFENDANTS (BROUGHT AS**

15
COMPLAINT

1 **INDIVIDUAL ACTION AND CLASS ACTION)**

2 75. Plaintiff incorporates in this cause of action the allegations contained in paragraphs 1
3 through 73, inclusive.

4 76. The Unfair Competition Law prohibits any person from engaging in unfair
5 competition as that term is defined in Business and Professions Code § 17200, which
6 includes any "unlawful, unfair or fraudulent business act or practice," "unfair,
7 deceptive, untrue or misleading advertising," and any act prohibited by Chapter 1
8 (commencing with section 17500) of Part 3 of Division 7 of the Business and
9 Professions Code.

10 77. During the Class Period, the Offshore Lenders violated various sections of the
11 Financial Code as set forth above, which constituted an unlawful business practice.

12 78. During the Class Period, MoneyMutual Defendants and Montel Williams aided and
13 abetted the Offshore Lenders in the violations of the Financial Code.

14 79. During the Class Period, Bank of America aided and abetted the Offshore Lenders in
15 the violations of the Financial Code.

16 80. As a proximate result of the violation of the UCL as set forth above, Plaintiff suffered
17 injury in fact and sustained monetary loss (hundreds of dollars) according to proof.

18 81. Similarly, during the class period, Class Members also lost money to Defendants as a
19 result of the illegal Deferred Deposit Transactions.

20 82. Pursuant to Business and Professions Code § 17203 and § 17204, Plaintiff is
21 empowered to compel Defendants to restore to Plaintiff and the Class Members the
22 money or property that Defendants acquired as a result of any act which constitutes
23 unfair competition.

24 83. The conduct of Defendants will continue to harm the general public unless it is
25 enjoined.

26 **FOURTH CAUSE OF ACTION FOR VIOLATION OF THE UNFAIR**
27 **COMPETITION LAW—FRAUD-- AGAINST DEFENDANTS MONEYMUTUAL,**
28

16
COMPLAINT

**LLC, SELLING SOUCE, LLC, EFFECTIVE MARKETING SOLUTIONS, LLC,**

**LONDON BAY CAPITAL, LLC, GLEN MCKAY, AARON SHOAF AND**

**MONTEL BRIAN ANTHONY WILLIAMS (BROUGHT AS INDIVIDUAL**

**ACTION AND CLASS ACTION) BY PLAINTIFF BERNAL**

84. Plaintiff incorporates in this cause of action the allegations contained in paragraphs 1 through 82, inclusive.

85. As previously alleged, the MoneyMutual Defendants and Montel Willaims made false, misleading and deceptive statements about the reliability and trustworthiness of the lenders in the Lending Network including the Offshore Lenders. This constituted a fraudulent business practice in violation of the UCL.

86. As a proximate result of the violation of the UCL as set forth above, Plaintiff suffered injury in fact and sustained monetary loss (hundreds of dollars) according to proof.

87. Similarly, during the class period, thousands of Class Members also lost money to Defendants as a result of the violation of the Unfair Competition Law.

88. Pursuant to Business and Professions Code § 17203 and § 17204, Plaintiff is empowered to compel Defendants to restore to Plaintiff and the Class Members the money or property that Defendants acquired as a result of any act which constitutes unfair competition.

89. The conduct of Defendants will continue to harm the general public unless it is enjoined.

**FIFTH CAUSE OF ACTION FOR VIOLATION OF THE UNFAIR**

**COMPETITION LAW—UNLAWFUL OR UNFAIR ACT--AGAINST**

**DEFENDANT BANK OF AMERICA, N.A. (BROUGHT AS INDIVIDUAL**

**ACTION AND CLASS ACTION)**

90. Plaintiff incorporates in this cause of action the allegations contained in paragraphs 1 through 88, inclusive.

91. As set forth above, Bank of America withdrew money from Plaintiff's checking account and from the checking accounts of the Class Members paid that money to the Offshore Lenders.

92. These transfers of funds were not originated by any check, draft or similar paper instrument and were initiated through computers associated with the Offshore Lenders.

93. Each of these transfers was governed by 15 U.S.C. § 1693 et. seq., the Electronic Funds Transfer Act (EFTA) and Regulation E which was adopted to enforce it.

94. 15 U.S.C. § 1693g (e) provides that "Except as provided in this section, a consumer incurs no liability from an unauthorized electronic fund transfer." Section 1693g (a) provides a consumer's liability for an unauthorized transfer shall not exceed the lesser of $50 or the value of the product/services received by the consumer prior to his notifying the bank of the unauthorized transfer.

95. Section 1693g (a) also provides: "Notwithstanding the foregoing, reimbursement need not be made to the consumer for losses the financial institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement (or in extenuating circumstances such as extended travel or hospitalization, within a reasonable time under the circumstances) any unauthorized electronic fund transfer or account error which appears on the periodic statement provided to the consumer under section 1693d of this title." However, Plaintiff and the Class Members could not have prevented the losses by reporting the unauthorized transfers within 60 days after the periodic statements are provided because they losses were typically caused by one or a few transfers that occurred well before the 60 day deadline and therefore there were no "future" losses that could have been blocked.

96. Regulation E, similarly, provides:   "(b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows: . . . .(3) Periodic statement;

18
COMPLAINT

1   timely notice not given. A consumer must report an unauthorized electronic fund

2   transfer that appears on a periodic statement within 60 days of the financial

3   institution's transmittal of the statement to avoid liability for subsequent transfers. If

4   the consumer fails to do so, the consumer's liability shall not exceed the amount of

5   the unauthorized transfers that occur after the close of the 60 days and before notice

6   to the institution, and that the institution establishes would not have occurred had

7   the consumer notified the institution within the 60-day period. . . ."

8   97. Under these provisions, Plaintiff and Class Members were not liable for any

9   unauthorized electronic fund transfers except that if the transfer appears on a

10  monthly statement and the accountholder failed to report it within 60 days, in which

11  case the accountholder is only liable for new unauthorized transfers occurring after

12  that 60 day period.

13  98. During the Class Period, Bank of America removed money from Plaintiff's checking

14  account and those of certain Class Members in violation of 15 USC § 1693(g) and

15  Regulation E because the electronic fund transfers to the Offshore Lenders were not

16  "authorized."

17  99. 15 U.S.C. §1693a and Regulation E defines an "unauthorized electronic funds

18  transfer" as "an electronic fund transfer from a consumer's account initiated by a

19  person other than the consumer without actual authority to initiate such transfer and

20  from which the consumer receives no benefit. . . "

21  100.   The Offshore Lenders did not have "actual authority" to initiate transfers from

22  Plaintiff and Class Members' bank accounts at Bank of America.  In fact, the Loan

23  Agreements were void and therefore any purported authorization to make a funds

24  transfer was also void.

25  101.   The Plaintiff and Class members did not "benefit" from the transfer of funds from

26  their bank accounts to the Offshore Lenders because they had no legal obligation to

27  pay any money to the Offshore Lenders and therefore were legally entitled to keep

28  the initial loan as a "gift."  Hence there could be no benefit by repaying money they

1    were not obligated to repay.

2    102.   In most cases, it would have done Plaintiff and Class Members no good to have

3    reported the unauthorized transfer to a particular Offshore Lender because by the

4    time of 60 days after the issuance of the monthly bank statement listing the first

5    debit to the particular accountholder's account, all of the money related to a

6    particular Loan Agreement had already been debited and transferred to the Offshore

7    Lender.  In other words, in most instances the Plaintiff and Class Members suffered

8    a total loss from a single or series of related or unauthorized transfers long before the

9    60 days deadline occurred.

10   103.   Pursuant to Business and Professions Code § 17203 and § 17204, Plaintiff is

11   empowered to compel Bank of America to restore to Plaintiff and the Class Members

12   the money or property that Chase took out of their accounts and transferred to the

13   Offshore Lenders.

14   **SIXTH CAUSE OF ACTION FOR NEGLIGENCE AGAINST DEFENDANT**

15   **BANK OF AMERICA, N.A. (BROUGHT AS INDIVIDUAL ACTION AND**

16   **CLASS ACTION)**

17   104.   Plaintiff incorporates in this cause of action the allegations contained in

18   paragraphs 1 through 102, inclusive.

19   105.   Defendant Bank of America owed a duty of care to Plaintiff and those Class

20   Members who had bank accounts and therefore were its customers.

21   106.   This duty of care required Bank of America to exercise        reasonable care and

22   due diligence in general and, for our purposes, in particular with respect to

23   suspicious transfers from the its customers' accounts to foreign entities, previously

24   associated with fraud and criminal conduct.   This would include transactions

25   involving certain types of businesses located in Belize, certain Caribbean Islands and

26   the Isle of Mann.

27   107.   To the extent Bank of America maintains it did not know the Offshore Lenders

28

20
COMPLAINT

1    were illegal and criminal lenders, it should have known based upon the information
2    available to it in the diligent exercise of its responsibilities under the Bank Secrecy
3    Act, 31 CFR § 1020.320 and similar laws and regulations.

4    108.    For example, the Bank Secrecy Act/Anti-Money Laundering Examination Manual
5    published by the Federal Reserve System, Office of the Comptroller of the Currency
6    and similar agencies warns banks that offshore companies, including those involved
7    in gambling, online payday lending and adult entertainment are high risk businesses
8    requiring additional risk mitigation steps and banks dealing with payment
9    processors associated with these high risk businesses should scrutinize the
10   businesses.  It is even recommended that banks consider restricting transactions
11   with payment processors involved with online payday lenders.

12   109.    Bank of America should also have known the Offshore Lenders were operating
13   illegal businesses because of the significant number of cease and desist orders issued
14   by various States against the Lenders on the grounds they were operating illegal
15   lending services.

16   110.    Bank of America breached its duty of care owed to the Plaintiff and Class
17   Members by approving the withdrawal of funds from their accounts to the suspicious
18   overseas lenders without even providing a warning to the bank's accountholders.

19   111.    As a direct and proximate result of Bank of America's breach of the duty of care,
20   Plaintiff and Class Members suffered damages in the form of the loss of money
21   transferred to the Offshore Lenders.

22                            **REQUEST FOR JURY TRIAL**

23   WHEREFORE, Plaintiff requests trial by jury.

24                              **PRAYER FOR RELIEF**

25   WHEREFORE, Plaintiff prays for judgment on all causes of action against
26   Defendants as follows:

27   1.  For an order certifying this matter as a class action;

28

2. For a declaration of the rights and liabilities of the parties including a declaration that the Offshore Lenders' Deferred Deposit Transactions made with the Plaintiff and Class Members were illegal and that any debt arising from these transactions is void;

3. For preliminary and permanent injunctive relief pursuant to Financial Code § 23064 and Business and Professions Code § 17203 restraining and enjoining Defendants from continuing the acts of unlawful competition set forth above, requiring Defendants to take any acts needed to prevent further violations, and requiring Defendants to take affirmative measures to redress past wrongdoings, such as by correcting credit reports and cancelling debts;

4. For an order requiring Defendants to provide an accounting of all moneys which they may have received as a result of the acts and practices found to constitute unfair competition under Business and Professions Code § 17200;

5. For an order that Defendants identify, locate and make restitution to affected members of the general public, and specifically the members of the Class, and all additional orders necessary to accomplish this purpose, pursuant to Business and Professions Code § 17203;

6. For distribution of any moneys recovered on behalf of members of the Class, via fluid recovery or cy pres recovery where necessary to prevent Defendant from retaining the benefits of their wrongful conduct as provided in California v. Levi Strauss & Co. (1986) 41 Cal.3d 460 and People v. Thomas Shelton Powers, M.D. Inc. (1992) 2 Cal.App.4th 330;

7. For compensatory damages on the first and second causes of action not to be less than the amount paid by Plaintiff and each Class Member and not to exceed three times any damages;

8. For compensatory damages on the sixth cause of action;

9. For punitive or exemplary damages on the first and second causes of action;

10. For prejudgment interest on the sum of money awarded as damages or restitution;

COMPLAINT

1    11. For reasonable attorney's fees pursuant to Financial Code § 23064, pursuant to the

2    Private Attorney General doctrine in Code of Civil Procedure § 1021.5, pursuant to

3    the "common fund" doctrine, and pursuant to the "substantial benefit" doctrine.

4    12. For costs of suit incurred herein; and

5    13. For such other and further relief as the court may deem proper.

6    DATED:  February 11, 2013

7                         Respectfully submitted,

8

9                    By    *Jeffrey Wilens*

10                         JEFFREY WILENS
                          Attorney for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

COMPLAINT