**LAKESHORE LAW CENTER**
**Jeffrey Wilens, Esq. (State Bar No. 120371)**
**18340 Yorba Linda Blvd., Suite 107-610**
**Yorba Linda, CA 92886**
**714-854-7205**
**714-854-7206 (fax)**
**jeff@lakeshorelaw.org**

**THE SPENCER LAW FIRM**
**Jeffrey P. Spencer, Esq. (State Bar No. 182440)**
**903 Calle Amanecer, Suite 220**
**San Clemente, CA 92673**
**949-240-8595**
**949-240-8515 (fax)**
**jps@spencerlaw.net**

**Attorneys for Plaintiffs**

### UNITED STATES DISTRICT COURT,

### NORTHERN DISTRICT OF CALIFORNIA,

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SEAN L. GILBERT, et. al. | ) Case No. CV-13-01171-JSW |
| | ) Complaint filed February 11, 2013 |
| | ) Trial Date: |
| | ) Pre-Trial Date: |
| Plaintiff, | ) Discovery Cut-Off: |
| | ) |
| v. | ) **Class Action** |
| | ) |
| BANK OF AMERICA, N.A., | ) **PLAINTIFF'S MOTION TO** |
| et. al, | ) **REMAND TO STATE COURT,** |
| | ) **REQUEST FOR ATTORNEY'S** |
| | ) **FEES, POINTS AND** |
| | ) **AUTHORITIES IN SUPPORT** |
| | ) **THEREOF** |
| | ) Hearing Date:  May 31, 2013  9:00 a.m. |
| | ) Department 11 |
| Defendants. | ) Hon. Jeffrey S. White, District Judge |

1

TO EACH PARTY AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on the 31st day of May 2013, at the hour of 9:00 a.m. or as soon thereafter as counsel may be heard in Department 11 of the United States District Court, 450 Golden Gate Avenue, San Francisco, California, Plaintiff will move pursuant to 28 U.S.C. § 1447 (c) for an order remanding the above entitled case to the state court.  Said motion will be made upon the grounds that there is no federal jurisdiction.

Plaintiff further requests that the court order Defendant Bank of America, N.A. to pay Plaintiff his "just costs and any actual expenses, including attorney fees, incurred as a result of the removal. . . ."  (28 U.S.C.A. §1447 (c).)   Plaintiffs have submitted a declaration seeking fees and costs in excess of $6,000.00, but limit the request to that amount.

Said motion will be made on the grounds set forth in the accompanying memorandum of law.  This motion will be based upon this notice, the points and authorities set forth below, the attached declaration(s), any separate statement filed herewith, and the complete files and records in this action.

DATED: April 25, 2013

Respectfully submitted,

By      _/s/_Jeffrey Wilens_____

JEFFREY WILENS
Attorney for Plaintiff

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... i

STATEMENT OF ISSUES TO BE DECIDED ............................................................ 1

STATEMENT OF CASE ............................................................................................... 1

POINTS AND AUTHORITIES .................................................................................... 3

ARGUMENT ................................................................................................................. 3

   I.  THE CASE SHOULD BE REMANDED SINCE THE EDGE ACT DOES NOT PROVIDE FOR FEDERAL QUESTION JURISDICTION. ............................................. 3

     A.   THE EDGE ACT DOES NOT APPLY TO THIS LAWSUIT.............................. 3

     B.   THERE IS NO SUBSTANTIAL QUESTION OF FEDERAL LAW THAT MUST BE RESOLVED................................................................. 9

   II. ATTORNEY'S FEES SHOULD BE AWARDED. .......................................................... 15

CONCLUSION ............................................................................................................. 16

DECLARATION OF JEFFREY WILENS ................................................................... 1

# **TABLE OF AUTHORITIES**

## **Cases**

*Alcarmen* v. *Citibank* *N.A.* (N.D. Cal., May 13, 2009, C-09-0853 EMC) 2009 WL 1330803 ........................................................................................................ 12, 13

*Balcorta* v. *Twentieth* *Century-Fox* *Film* *Corp.* (9th Cir. 2000) 208 F.3d 1102................15

*Bolden* v. *KB* *Home* (C.D. Cal. 2008) 618 F.Supp.2d 1196 ......................................... 12, 14

*City* *of* *Huntsville* v. *City* *of* *Madison* (11th Cir. 1994) 24 F.3d 169 .................................. 10

*City* *of* *Stockton* v. *Bank* *of* *America*, *N.A.* (N.D. Cal., Nov. 13, 2008, C-08-4060 MMC) 2008 WL 4911183......................................................................................... 8

*Dreisbach* v. *Murphy* (9th Cir. 1981) 658 F.2d 720 ....................................................... 14

*Eastman* v. *Marine* *Mechanical* *Corp.* (6th Cir. 2006) 438 F.3d 544........................... 11, 14

Empire Health Choice Assurance, Inc. v. McVeigh (2006) 547 U.S. 677 ..........................11

Emrich v. Touche Ross & Co. (9th Cir. 1988) 846 F.2d 1190 .................................. 4

Gotro v. R & B Realty Group (9th Cir. 1995) 69 F.3d 1485 .................................15

Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg. (2005) 545 U.S. 308 ............................................................................................ 10, 11

In re Currency Conversion Fee Antitrust Litigation (S.D.N.Y., Sept. 10, 2003, 1409) 2003 WL 22097502.......................................................................................... 7

In re Lloyd's American Trust Fund Litigation (S.D.N.Y. 1996) 928 F.Supp. 333.............. 8

In re Ocean Petroleum, Inc. (Bankr. E.D.N.Y. 2000) 252 B.R. 25..................................... 6

Jairath v. Dyer (11th Cir. 1998) 154 F.3d 1280 ......................................................... 10

Lippitt v. Raymond James Financial Services, Inc. (9th Cir. 2003) 340 F.3d 1033....10, 13

Merrell Dow Pharmaceuticals Inc. v. Thompson (1986) 478 U.S. 804 .......................... 10

Moore v. Permanente Medical Group, Inc. (9th Cir. 1992) 981 F.2d 443.........................15

Pinto v. Bank One Corp. (S.D.N.Y. June 4, 2003) 2003 WL 21297300 ....................... 4, 7

Rains v. Criterion Systems, Inc. (9th Cir. 1996) 80 F.3d 339 ...........................................13

Retailers Nat. Bank v. Harding (N.D. Cal., June 30, 2006, C-03-4190CW) 2006 WL 6181282...................................................................................................... 4, 5, 6

United States v. City of Loveland, Ohio (6th Cir. 2010) 621 F3d 465...............................11

Warter v. Boston Securities, S.A. (S.D. Fla., Mar. 22, 2004, 03-81026-CIV/RYSKAMP) 2004 WL 691787 .......................................................................................... 8, 9

## Statutes

12 U.S.C. § 632.......................................................................................................... 3

15 U.S.C. § 1693 ..................................................................................................... 10

15 U.S.C. § 1693m................................................................................................... 12

15 U.S.C. § 1693q.................................................................................................... 12

15 U.S.C. § 45 ......................................................................................................... 14

15 U.S.C. § 1693a ....................................................................................................11

28 U.S.C. § 1447 ................................................................................................ 15

Business and Professions Code § 17200 ........................................................ 10

PLAINTIFF'S MOTION TO REMAND TO STATE COURT CV-13-01171-JSW

## **STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether this action must be remanded to state court because there is no federal question jurisdiction under the "Edge Act."

2. Whether this action must be remanded to state court because there is no federal question jurisdiction as the Court is not required to resolve a substantial question of federal law.

## **STATEMENT OF CASE**

This is a putative class action against eight Defendants that fall into two groups. The first group is Bank of America, N. A. (the Bank) and other unidentified banks that held the accounts belonging to illegal payday lenders referred to in the lawsuit as the Offshore Lenders.  The second group is MoneyMutual, LLC, Selling Source, LLC, Effective Marketing Solutions, LLC, London Bay Capital, LLC, Montel Williams, Aaron Shoaf, Glenn McKay all of whom are related to a payday lending website www.moneymutual.com.  (Complaint[1], ¶¶ 32, 36, 63-65.)

The Complaint alleges that Plaintiff and Class Members obtained payday loans through the Money Mutual website.  The loans were brokered by the Money Mutual Defendants, based in Nevada, and were actually provided by Offshore Lenders, which were based in foreign countries.[2]  None of the lenders were licensed in California to make such loans and the loans did not comply with the finance charge cap and other requirements of California law.  The loans were illegal and the Plaintiff and Class

---

[1]The Complaint is attached to Doc. 1, Notice of Removal, as Exhibit 1.

[2]Although the Complaint alleges the Offshore Lenders are "based" in foreign countries that allegation is based upon the address used in the loan agreements.  Plaintiff does not know where the owners of these companies actually reside and no assumption can be made that the owners do their banking with foreign banks.

1

Members are entitled to full restitution and cancellation of the debt. (Complaint, ¶¶ 27-31, 43-47, 54-60, 77-78, 82, 85, 88.)

The Money Mutual website solicits consumers to obtain payday loans and falsely claims that the lenders affiliated with that website comply with all applicable state and federal laws and have been screened for compliance. The website contains numerous testimonials from television celebrity Montel Williams who is also the pitchman for Money Mutual on television, radio and the Internet. Notwithstanding these assurance, many if not most of the lenders referred to consumers by Money Mutual are illegal. (Complaint, ¶¶ 43-49.)

The Bank was aware that the Offshore Lenders were operating illegally but nevertheless electronically transferred money from Plaintiff and the Class Members' bank accounts and sent that money to the Offshore Lenders. (Complaint, ¶¶ 64-70.)

There are six causes of action:

1. Aiding and Abetting Violation of the DDTL by the Money Mutual Defendants.

2. Aiding and Abetting Violation of the DDTL by the Bank.

3. Violation of the Unfair Competition Law—unlawful business practices—against all Defendants.

4. Violation of the Unfair Competition Law—fraud and deceit—against the Money Mutual Defendants.

5. Violation of the Unfair Competition Law—unlawful or unfair business practices—against the Bank.

6. Negligence against the Bank.

## POINTS AND AUTHORITIES

## ARGUMENT

# I.   THE CASE SHOULD BE REMANDED SINCE THE EDGE ACT DOES NOT PROVIDE FOR FEDERAL QUESTION JURISDICTION.

The Bank argues that there is federal question jurisdiction under two theories. First, Defendant relies upon the Edge Act to argue there is federal question jurisdiction. Secondly, Defendant argues alternative federal question jurisdiction based on the necessity to decide an important question of federal law in order to resolve the lawsuit. Both arguments fail and the action should be remanded.

## A.  THE EDGE ACT DOES NOT APPLY TO THIS LAWSUIT.

This action must be remanded to state court as Defendant has failed to meet its burden of establishing federal question jurisdiction under the Edge Act.  12 U.S.C. § 632 provides:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, **arising out of transactions involving international or foreign banking**, or banking in a dependency or insular possession of the United States, **or out of other international or foreign financial operations**, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, **shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits**; and **any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States** for the proper district by following the procedure for the removal of causes otherwise provided by law. Such removal shall not cause undue delay in the trial of such case and a case so removed shall have a place on the

3

calendar of the United States court to which it is removed relative to that which it held on the State court from which it was removed.  (emphasis added)

Thus, jurisdiction under the Edge Act requires a) a civil action; b) a United States corporation is a party; c) the lawsuit must arise out of international banking transactions or international financial operations.   (Retailers Nat. Bank v. Harding (N.D. Cal., June 30, 2006, C-03-4190CW) 2006 WL 6181282, *2 quoting Pinto v. Bank One Corp. (S.D.N.Y. June 4, 2003) 2003 WL 21297300, at *2.)   The first two requirements are met.  The last one is not met.

The burden of establishing federal jurisdiction is upon the party seeking removal, and the removal statute is strictly construed against removal jurisdiction.  (Emrich v. Touche Ross & Co. (9th Cir. 1988) 846 F.2d 1190, 1195.)

In Retailers Nat. Bank v. Harding, supra, the Northern District court considered an analogous fact pattern and found the "international financial transaction/operations" requirement had not been met.  That lawsuit arose from the Plaintiff National Bank's lawsuit to collect a credit card debt arising from gambling losses suffered by the individual defendant.  The defendant filed a counterclaim alleging several national banks violated the Unfair Competition Law by allowing her to use the credit card to purchase gambling credits for use at an illegal offshore gambling site.  The case was removed to federal court under the Edge Act.  A motion to remand was filed by the counterclaimant/defendant.

In connection with that remand motion, the Harding court asked the national bank to identify whether the merchant bank (i.e., the bank used by the offshore gambling site to process the credit card payments originated by the national bank was an international bank.  (Id. at p. *1.)        There was no evidence presented that the

4

merchant bank used by the offshore gambling site was an international bank.  This lack of evidence proved to be determinative as the district court explained:

> The Court concludes that for Edge Act jurisdictional purposes, **the relevant banking transactions are between the issuing banks (here, Counterclaim-Defendants) and the casino's merchant banks**. If the casino's merchant banks were domestic, however, the only banking transaction that crossed the foreign-domestic border was between a merchant bank and an on-line gambling site. Such a transaction would be too tangentially related to this case to satisfy the Edge Act's foreign transaction nexus requirement. Indeed, none of the parties to that transaction would even be before the Court.   If, on the other hand, the merchant banks were foreign, then transactions between the issuing banks and the foreign banks would be "transactions involving international or foreign banking" within the meaning of the Edge Act.  (Id. at p. *3 (emphasis added.)

The district court noted the Notice of removal identified the offshore casinos as being foreign companies but did not claim the banks servicing those gambling merchants were themselves foreign.  (Id. at p. 3.)  Furthermore, the district court provided the bank multiple opportunities to present evidence The district court explained in detail how the banks were provided further opportunity to present evidence the merchant banks were foreign, but failed to do so.  (Id. at p. *4.)

Consequently, the district court held:

> Mindful of the presumption that removal statutes are to be strictly construed,  Telecredit, 679 F.Supp. at 1103, and that generally "courts have interpreted § 632 narrowly," Bank of N.Y., 861 F.Supp. at 232, **the Court finds that there is not an adequate basis to conclude that the transactions at issue here were foreign**. Visa and MasterCard have not sufficiently demonstrated that their general rules regarding merchant banks actually applied to the relevant transactions here.  Other Counterclaim-**Defendants have failed to provide any evidence whatsoever that the relevant merchant banks were foreign**. The Court declines to order any additional briefing

5

because Counterclaim-Defendants have already been permitted to file two supplemental briefs on this matter. **Therefore, the Court finds that it has no jurisdiction pursuant to the Edge Act over this case**. (Id at p. *4 (emphasis added).)

Similarly, Bank of America in the instant Notice of Removal identifies the offshore payday lenders as foreign corporations but does <u>not</u> identify the merchant banks used by the payday lenders as being foreign banks. Paragraph 64 of the Complaint explains that the Bank of America did not send cash or some equivalent <u>directly</u> to the Offshore Lenders. Instead money from Plaintiff and Class Members' accounts was sent to "bank accounts" belonging to the Offshore Lenders. Paragraph 67 makes it clear that this transfer process is pursuant to the Automated Clearing House (ACH) Network, which has been described in this manner:

> The ACH Network is a processing and delivery system that provides for the distribution and settlement of electronic credits and debits among financial institutions. The ACH Network is governed by the NACHA Operating Rules. The NACHA rules define participating institutions in the following manner. An "Originator" is an "entity that agrees to initiate ACH entries into the payment system according to an arrangement with a Receiver." understanding the ACH Network: An ACH Primer at 2. A "Receiver" is a natural person or organization which has authorized an Originator to initiate an ACH entry into the Receiver's account with the RDFI. Id. An "RDFI" or Receiving Depository Institution is the Depository Financial Institution that receives ACH entries from the ACH Operator and posts the entries to the accounts of its depositors (Receivers). Id. An Automated Clearing House Operator is the central clearing facility operated by a private organization or a Federal Reserve Bank (FRB) on behalf of DFIs (Depository Financial Institutions), to or from which Participating DFIs transmit or receive ACH entries. Id. An "ODFI" or Originating Depository Financial Institution is the institution that receives payment instructions from the Originators and then forwards the entries to the ACH Operator. Id. (<u>In</u> <u>re</u> <u>Ocean</u> <u>Petroleum,</u> <u>Inc</u>. (Bankr. E.D.N.Y. 2000) 252 B.R. 25, 29.)

6

For purposes of the instant lawsuit and the payments made <u>by</u> the Plaintiff and Class Members to the Offshore Lenders, the Plaintiff and Class Members would be the alleged Originators, the Offshore Lenders are the Receivers, the Offshore Lenders' banks are the "Receiving Depository Institution" or RDFI's and Bank of America is the "Originating Depository Institution" or ODFI.

The RDFIs (the banks used by the Offshore Lenders) are analogous to the "merchant banks" discussed in the <u>Harding</u> case.  Just as how removing parties in Harding failed to identify whether the merchant banks were or were not foreign banks, Bank of America here has failed to identify whether the Offshore Lenders' banks were or were not foreign banks.  As a result, Bank of America has failed to meet its burden to prove the Edge Act applies here.

By contrast, in <u>Pinto</u> v. <u>Bank</u> <u>One</u> <u>Corp</u>., <u>supra</u>,  another offshore gambling case very similar to <u>Harding</u>, the court found the Edge Act did apply.  The difference?  In <u>Pinto</u>, there was evidence the offshore casino's <u>bank</u> was located in Bermuda, a foreign country.  (<u>Id.</u> at p. *3.)

It is anticipated the Bank will attempt to distinguish the instant lawsuit from <u>Harding</u> because the latter involved an illegal offshore gambling site while the former involves an illegal offshore lender.  "The Edge Act limits its jurisdiction to transactions involving international or foreign banking that can be characterized as traditional banking activities."  (<u>In</u> <u>re</u> <u>Currency</u> <u>Conversion</u> <u>Fee</u> <u>Antitrust</u> <u>Litigation</u> (S.D.N.Y., Sept. 10, 2003, 1409) 2003 WL 22097502, *2.) "Lending" is of course a traditional banking activity.  However, the Offshore Lenders are <u>not</u> banks and Bank of America does not suggest otherwise.  For purposes of the Edge Act, something does not become "banking" or "financial operations" just because a criminal illegally engages in activity similar to

7

what licensed banks can normally do.

As explained above, this lawsuit is about "non-licensed" individuals using Offshore addresses (not banks or financial institutions) making loans to California residents in violation of California law.  It would be no different than a "loan shark" making illegal loans.  Bank of America and the Money Mutual Defendants are <u>not</u> being sued for making the loans themselves.  Bank of America is being sued for transferring money from Plaintiff and the Class Members' accounts to the "loan sharks."    "Loan Sharking" is not "banking" activity or a "financial operation."

The cases cited in the Notice of Removal are inapposite because they all involved situations where a foreign bank was identified as being involved in the transaction that was the basis for the lawsuit.  For example, in <u>City</u> <u>of</u> <u>Stockton</u> v. <u>Bank</u> <u>of</u> <u>America</u>, <u>N.A.</u> (N.D. Cal., Nov. 13, 2008, C-08-4060 MMC) 2008 WL 4911183, *1, *4, Edge Act jurisdiction was found because the lawsuit targeted a number of foreign and domestic banks that issued "Guaranteed Investment Contracts."  Moreover, that lawsuit involved "alleged illegal agreement between foreign banks and others and, as a result, necessarily 'involves' international or foreign banking."  (<u>Id.</u> at p. *5.)  Similarly, in <u>In</u> <u>re</u> <u>Lloyd's</u> <u>American</u> <u>Trust</u> <u>Fund</u> <u>Litigation</u> (S.D.N.Y. 1996) 928 F.Supp. 333, 335-339, Edge Act jurisdiction was found because the lawsuit targeted Citibank's mishandling of numerous trust funds held in bank accounts across the world including transfers from accounts in one country to accounts in another country, but most of the activity was between the USA and the United Kingdom.    Finally, in <u>Warter</u> v. <u>Boston</u> <u>Securities,</u> <u>S.A.</u> (S.D. Fla., Mar. 22, 2004, 03-81026-CIV/RYSKAMP) 2004 WL 691787, *1-2, the lawsuit involved a claim against both a domestic bank and a foreign bank (the two were later merged together after the alleged tort was committed) for embezzlement.  Since the lawsuit

involved international banking activities of wire transfers, the provision of investment advice, and client account management, that court found jurisdiction pursuant to the Edge Act.  (<u>Id.</u> at p. *8.)

It must be reiterated that we do not know whether the Offshore Lenders bank accounts are with foreign banks.  We do not even know who owns the Offshore Lenders. It is quite possible for an American living in America to obtain the equivalent of a "P. O. Box" in the Cayman Islands or Belize, to use that as the address for his illegal payday loan company in an attempt to evade the requirements of United States law, but to still do all his banking at an American branch of an American bank.  <u>In other words, the payday loan "repayments" ostensibly going from Bank of America to the Offshore Lenders may never have left the United States at all</u>.  The mailing address of the Offshore Lender is irrelevant.

Bank of America, at a minimum, knows the identity of the banks used by the Offshore Lenders, even if it may claim it cannot verify the identity of the Offshore Lenders.  Bank of America simply needs to present evidence of the identity of the RDFIs used by the Offshore Lenders and show at least some of them are foreign banks.  Its counsel has been asked to do so informally by Plaintiff's counsel but it has declined to do so.  If it still refuses to do so, this Court should draw the inference that information would defeat Edge Act jurisdiction and remand the case.

## B.  THERE IS NO SUBSTANTIAL QUESTION OF FEDERAL LAW THAT MUST BE RESOLVED.

Federal Question jurisdiction can also be found where there is a cause of action under federal law or the state law claims raise a substantial disputed question of federal law.  There is no basis for federal question jurisdiction here.  None of the causes of

9

action are federal law claims.  However, the Bank notes that the Fifth Cause of Action alleges a violation of California's Unfair Competition Law (Business and Professions Code § 17200 et. seq.) based upon an "unlawful" business practice.  The predicate "unlawful" acts are violations of the 15 U.S.C. § 1693 et. seq., the Electronic Funds Transfer Act (EFTA), and Regulation E which was adopted to enforce it.  Specifically, the Bank is alleged to have made "unauthorized transfers" (as defined by EFTA and Regulation E) to the Offshore Lenders  in violation of 15 USC § 1693(g) and Regulation E.  (Notice of Removal, Doc. 1, pp. 4-5.)

The mere fact that a state-law UCL claim is based upon a federal law does not establish federal question jurisdiction.  (Merrell Dow Pharmaceuticals Inc. v. Thompson (1986) 478 U.S. 804, 813 (referring to "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"); City of Huntsville v. City of Madison (11th Cir. 1994) 24 F.3d 169, 174 (no federal question jurisdiction even though interpretation of a federal law was necessary to resolve the state law contract claim); Jairath v. Dyer (11th Cir. 1998) 154 F.3d 1280, 1284 (rejecting federal question jurisdiction even where violation of the federal statute was a necessary element of the state cause of action).)  However, federal question jurisdiction will lie over state law claims that "really and substantially involve a dispute or controversy respecting the validity, construction or effect of federal law." (Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg. (2005) 545 U.S. 308, 313.)

In Lippitt v. Raymond James Financial Services, Inc. (9th Cir. 2003) 340 F.3d 1033, 1042, the Court found the federal question doctrine applied where a "substantial, disputed question of federal law" was a "necessary element" of the claim or the "right to

relief depends on the resolution of a substantial, disputed federal question." "A 'substantial' federal question involves the interpretation of a federal statute that actually is in dispute in the litigation and is so important that it 'sensibly belongs in federal court.'" (Eastman v. Marine Mechanical Corp. (6th Cir. 2006) 438 F.3d 544, 552, citing Grable, supra, 545 U.S. at p. 315.)  While the meaning of the federal tax law at issue in Grable was in dispute and an important issue of federal law best addressed by the federal courts, the same cannot be said about the meaning of "actual authority" in the EFTA, as explained below.

Moreover, In Empire Health Choice Assurance, Inc. v. McVeigh (2006) 547 U.S. 677, 700-701, the Supreme Court found that a federal question could be deemed substantial if it presented a "nearly 'pure issue of law'" and its resolution disposed of the case. In this case, resolution of the federal issue–that is, whether the Bank violated the EFTA–would require a fact intensive inquiry as opposed to a determination of a pure matter of law.

In deciding whether a substantial federal questions exists, courts will consider a number of factors, including:  whether the case involves a federal agency; whether the federal question was important; whether the decision on the federal question will resolve the case; and, whether the decision on the federal question will affect other cases.  (United States v. City of Loveland, Ohio (6th Cir. 2010) 621 F3d 465, 472.)  Here the answer is "no" or "not likely" to each factor.

Firstly, there is no federal agency involved in this lawsuit.

Secondly, the federal question is not important as it requires  a straightforward and likely noncontroversial interpretation of the EFTA that can be made by state or federal court.  For example, 15 U.S.C. §1693a and Regulation E define an "unauthorized

electronic funds transfer" as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such ransfer and from which the consumer receives no benefit. . ."  It is not likely application of this definition will trigger any controversy because either the Offshore Lenders had authority to make the loan transfers or they did not.

Moreover, the EFTA does not preempt state laws except those that provide less protection than the EFTA provides.  (15 U.S.C. § 1693q)  In addition, jurisdiction to enforce the EFTA is provided to both federal and state courts, so Congress did not think some specialized expertise found only in the federal judiciary was necessary to hear these claims.  (15 U.S.C. § 1693m (g)).  That stands in contrast to the federal taxation law at issue in the <u>Grable</u> case.  Where a federal law does not provide for exclusive federal jurisdiction, in other words where state courts are deemed suitable to hear claims under the federal law, that factor militates against finding a substantial federal issue is present.  (<u>Bolden</u> v. <u>KB</u> <u>Home</u> (C.D. Cal. 2008) 618 F.Supp.2d 1196, 1207.)

On this point, <u>Alcarmen</u> v. <u>Citibank</u> <u>N.A</u>. (N.D. Cal., May 13, 2009, C-09-0853 EMC) 2009 WL 1330803 is instructive.  In that case, the UCL claim sought rescission of a home loan on the ground there was a Truth In Lending Act violation.  The district court agreed a "question of federal law is clearly implicated by the claims for unfair business practices and unjust enrichment. Both of these claims are predicated on there being a violation of TILA, a federal statute."  (<u>Id.</u> at p. *3.)  Nevertheless, it found the reliance on federal requirement did not raise a substantial federal question.  "In the instant case, Defendants have failed to show that resolution of the federal question in this case would be controlling in numerous other cases" as the TILA claims were fact-based on whether proper disclosures were provided (just like the EFTA claims are fact-

based on whether proper authorizations were provided).  (Id.)  Additionally, state and federal courts both had jurisdiction over TILA claims which showed there was no policy reason to find the federal issue was substantial.  (Id. at p. *4.)

Thirdly, resolving the federal question will not resolve this case as there are three other causes of action (aiding and abetting the making of illegal payday loans in violation of state law, a different theory of liability under the unfair competition law, and common law negligence) against the Bank plus additional causes of action against the other Defendants.

Moreover, the "EFTA violation" theory in the Sixth Cause of Action is just one theory of the Banks' liability under the UCL.  The fourth cause of action alleges the Banks violated state laws.  If the Bank Defendants are found liable on that theory, the sixth cause of action discussed by Chase Bank adds nothing to its overall exposure.  Although these two theories of "unlawful conduct" are styled as different counts or causes of action, they should be treated as one cause of action for purposes of analyzing federal question jurisdiction.  (Bolden, supra, 618 F.Supp.2d at p. 1208, n. 8 (treating different theories of liability under the UCL expressed in different counts as one cause of action for purposes of assessing federal question jurisdiction).)

"When a claim can be supported by alternative and independent theories-one of which is a state law theory and one of which is a federal law theory-federal question jurisdiction does not attach because federal law is not a necessary element of the claim." (Rains v. Criterion Systems, Inc. (9th Cir. 1996) 80 F.3d 339, 346; Lippitt v. Raymond James Financial Services, Inc., supra, 340 F.3d at p. 1043.)

Fourthly and finally, the decision on the interpretation of the EFTA's "unauthorized transfer" language will not affect other cases, but could disrupt the

13

balance between state and federal court enforcement.

In <u>Eastman</u> v. <u>Marine</u> <u>Mechanical</u> <u>Corp.</u>, <u>supra</u>, , 438 F.3d at p. 553, the court held that a "state-law employment action for wrongful termination in violation of federal public policy does not present a substantial federal question over which federal courts may exercise 'arising under' jurisdiction." That case discussed another concern which militates against finding federal question jurisdiction here. There is a grave danger that recognizing federal question jurisdiction every time a state law claim, such as negligence, wrongful termination or (Plaintiff would add), unfair business practices would "severely impact" the federal-state division of labor.

> [O]ur perception is that the bulk of the judicial business in the United States in this area is conducted by the state courts. This balance would be upset drastically if state public policy claims could be converted into federal actions by the simple expedient of referencing federal law as the source of that public policy. We believe such a dramatic shift would distort the division of judicial labor assumed by Congress under section 1331. (<u>Id.</u> at p. 553.)

Similarly, most UCL claims, like most wrongful termination claims that were at issue in <u>Eastman</u>, are filed in state court. There is no federal private right of action equivalent to the UCL as the equivalent, the Federal Trade Commission Act, 15 U.S.C. § 45 (a) (1), does not allow for a private right of action. (<u>Dreisbach</u> v. <u>Murphy</u> (9th Cir. 1981) 658 F.2d 720, 730.) So the lawsuits must necessarily be under state law. If every time a state law UCL claim relied upon a federal law or regulation in explaining why a business practice was unfair or unlawful this conferred federal question jurisdiction, then the federal courts would be deluged with state law actions. (See, <u>Bolden</u> v. <u>KB</u> <u>Home</u>, <u>supra</u>, 618 F.Supp.2d at p. 1207 ("[t]here is a high probability that accepting Defendants' position would significantly increase the number of state law cases removed to federal

court involving UCL claims. Even though UCL claims are no stranger to the federal courts, this is no reason to adopt a position that encourages the relationship.")

A tiny portion of this lawsuit relies upon a violation of a federal law as a predicate for finding a violation of a state law, while the rest of the lawsuit relies entirely on state law, including all the claims against most of the defendants. Chase argues the existence of this tiny part means the entire lawsuit "sensibly belongs" in federal court. Plaintiffs disagree. The only "sensible" thing to do is remand or risk opening the floodgates for innumerable state law claims to be removed to federal court.

## II.    ATTORNEY'S FEES SHOULD BE AWARDED.

The court has discretion under 28 U.S.C. § 1447 (c) to require defendant to pay Plaintiffs' costs, including attorney's fees, in opposing the removal to federal court. The award of attorney's fees and costs is not contingent upon the removal being in bad faith or frivolous. (Moore v. Permanente Medical Group, Inc. (9th Cir. 1992) 981 F.2d 443, 446.) This court has discretion to award fees even "when a defendant's removal, while 'fairly supportable,' was wrong as a matter of law." (Balcorta v. Twentieth Century-Fox Film Corp. (9th Cir. 2000) 208 F.3d 1102, 1106 n. 6.) "Just costs" include court costs and attorney's fees, regardless of whether Plaintiff has in fact paid such fees (e.g., where case is being handled on a contingency fee or pro bono basis). (Gotro v. R & B Realty Group (9th Cir. 1995) 69 F.3d 1485, 1488.) Plaintiffs' counsel has submitted a declaration establishing "just costs" related to Defendant's improper removal to federal court will exceed $6,000. (Wilens Declaration, ¶¶ 2-3.)

Costs should be awarded here. Defendant's removal was not supported by case law from the Ninth Circuit.

## CONCLUSION

For the above stated reasons, plaintiff respectfully urges the court to grant the motion to remand to the Alameda County Superior Court.

DATED: April 25, 2013

Respectfully submitted,

By      _/s/_Jeffrey Wilens_____

JEFFREY WILENS
Attorney for Plaintiff

# <u>DECLARATION OF JEFFREY WILENS</u>

I, JEFFREY WILENS, hereby declare:

1.  I am an attorney of record for Plaintiff in this matter.  I could and would competently testify to the below stated facts of my own personal knowledge if called as a witness.

2.  As a result of Defendant's removal of the state court action to federal court, Plaintiffs have incurred and will incur reasonable expenses and attorney's fees in connection with this motion and the hearing thereon, totaling more than 10 hours at $600 per hour = $6,000 consisting of the following:   Review of Notice of Removal and Supporting Documents  (one hour); Preparation of Motion to Remand (six hours); Review Opposition(s), prepare any Reply (four hours); Court Appearance in San Francisco from Orange County (four hours).

3.  I have been a member of the California State Bar, without interruption, since December 1985.   My normal hourly billing rate for complex civil litigation or consumer litigation on a contingency fee basis is $600 per hour and I have been awarded attorney's fees at that hourly rate in complex litigation.   On October 11, 2012, the Honorable Steven A. Brick granted final approval to a class action settlement in which I had been appointed class counsel in Hamilton v. Vitamin World, Inc., Alameda County Superior Court case no. RG10524008 and awarded me attorney's fees at the hourly rate of $600 per hour, which he found within the range of hourly fees reasonably and normally charged by attorneys with comparable experience.   On October 5, 2011, the Honorable Kim G. Dunning granted final approval to a class action settlement in which I had been appointed class counsel in Lavergne v. Evergreen Royalle, LLC, Orange County Superior Court Case No. 30-2008-00212468 and awarded me fees at the hourly rate of $600 based on similar

1

findings.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

Executed on April 25, 2013, at Yorba Linda, California.

By      ___/s/ Jeffrey Wilens_____

JEFFREY WILENS
Attorney for Plaintiff

PLAINTIFF'S MOTION TO REMAND TO STATE COURT CV-13-01171-JSW