**BUSBY & ZAPPALA, LLP**
RALPH A. ZAPPALA, SB# 102052
E-Mail: rzappala@bzlawllp.com
251 Lafayette Circle
Suite 350
Lafayette, California 94549
Telephone: (925) 299-9600

**WALLACE SAUNDERS**
PAUL CROKER  KS #21627
E-Mail:  pcroker@wallacesaunders.com
10111 W. 87th St.
Overland Park, KS  66212
Telephone:  913.888.1000
Facsimile:  913.888.1065
Admitted Pro Hac Vice

Attorneys for Rare Moon Media, LLC,
Jeremy Shaffer, Brad Levene,
Lindsey Coker, and Josh Mitchem

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN L. GILBERT, et al.,<br><br>  Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>  Defendants. | Case No. 13-CV-01171-JSW<br><br>**REPLY IN SUPPORT OF THE RENEWED MOTION TO COMPEL ARBITRATION BY RARE MOON DEFENDANTS**<br><br>Date: January 9, 2015<br>Time: 9:00 a.m.<br>Judge: Hon. Jeffrey S. White<br>Crtm.: 5<br><br>Date Action Filed:  October 16, 2013 |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | SUMMARY OF ARGUMENT……...…………………………. | 2 |
| II. | ARGUMENTS AND AUTHORITIES..…………………………. | 3 |
| | A. RMDs Sufficiently Established the Existence of the Arbitration Provision in the Loan Agreements Such that They can Compel Arbitration…………………………………. | 3 |
| | B. Plaintiffs' Criticism of David Odell's Declaration and Deposition is Meritless and Fails to Provide this Court with A Single Reason to Reject Arbitration………………………… | 6 |
| | C. RMDs have Standing to Compel Arbitration by Virtue of Third Party Beneficiaries, Alleged Agency, and Equitable Estoppel…………………………………………….. | 9 |
| |    1. The RMDs are Alleged Agents of the Lenders……………. | 9 |
| |    2. The RMDs are Third Party Beneficiaries…………………. | 10 |
| |    3. RMDs May Enforce the Arbitration Agreements Based on Equitable Estoppel……………………………………….. | 10 |
| | D. This Court Absolutely May and Should Strike the Class Allegations…………………………………………………… | 11 |
| | E. The Arbitration Provision is Not Unconscionable…………….. | 12 |
| III. | CONCLUSION………………………………………………… | 13 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*AT&T Mobility, LLC v. Concepcion,* 131 S.Ct. 1740 (2011)……………………. 11

*Aermendariz v. Found. Health Psychcare Svcs., Inc.*, 24 Cal.4th 83 (2000)…… 12

*Bruni v. Didion,* 160 Cal.App.4th 1272, 73 Cal.Rptr.3d 395 (Cal.App. 2008)… 3

*Circuit City Stores v. Adams,* 279 F.3d 889 (9th Cir. 2002)……………………. 3

*Cronin v. Monex Deposit Co.*, 2009 WL 412023 (C.D. Cal., Feb. 17, 2009)….. 4

*Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 WL 250418 at *4
       (N.D. Cal. Jan. 25, 2011). ……………………………………………….. 5

*Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052 (9th Cir. 2013 *en banc*)………. 12

*Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013)………………………. 10

*Newton*, 854 F.Supp.2d at 724; *quoting Flores*, 93 Cal.App.4th at 853……….. 12

*Ortiz v. Hobby Lobby Stores, Inc.*, --- F.Supp.3d ---, 2014 WL 4961126
       (E.D. Cal. Oct. 1, 2014)…………………………………………………. 3

*Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 130 S.Ct. 2772 (2010)……. 11


**Authorities**

9 U.S.C. § 2. …………………………………………………………………… 3

Federal Rule of Evidence §602……………………………………………….. 6

Federal Rule of Evidence §901……………………………………………….. 6,7

Federal Rule of Evidence §901(b)……………………………………………. 7

I.      **Summary of Argument**

The RMDs are entitled to compel binding arbitration. Plaintiffs entered into Loan Agreements with lenders to whom the RMDs provide services and these Loan Agreements specify the terms of their loans. The Loan Agreements containing the subject arbitration provision are inextricably tied to Plaintiffs' claims against the RMDs. As a result, these disputes should be resolved by individual arbitration and the class waiver should be enforced.

Plaintiffs' Opposition (Doc. 148) focuses almost exclusively on the RMDs' evidence establishing the existence of the agreement to arbitrate or authentication of the same. Plaintiffs challenge the RMDs' ability to compel arbitration based on the *gross speculation* that it is *possible* the Loan Agreements differ from those presented to and electronically signed by Plaintiffs. The entire argument is predicated on unfounded conjecture. As will be explained throughout this Reply, RMDs have met and exceeded their burden to compel arbitration based on the sufficient presentation of the arbitration agreement to this Court and the Declaration and deposition testimony of David Odell.

Plaintiffs also argue that the RMDs are not entitled to enforce binding arbitration because they allege that RMDs are not related third parties. This argument fails, however, because RMDs may invoke the terms of the Loan Agreement as alleged related third parties per the arbitration provision, under equitable estoppel, as third party beneficiaries, and per Plaintiff's allegations of agency. Plaintiffs are faced with a dilemma: either the RMDs are related third parties sufficient to compel arbitration or the RMDs are so far removed from the Lenders that they cannot be held liable for the asserted causes of action—there is no middle ground.

Interestingly, despite Plaintiffs' request for and taking of discovery on the issue of procedural unconscionability, Plaintiffs do not even attempt to argue and have waived all arguments related to unconscionability. On November 24, 2014, Plaintiffs and the RMDs filed a Joint Discovery Letter Brief to the Honorable Magistrate Judge Beeler (Doc. 137), Plaintiffs claimed the necessity of taking David Odell's Deposition to explore an argument that the arbitration provision should not be enforced due to procedurally unconscionability. However, Plaintiffs have rendered those efforts moot by abandoning any argument of procedural or

substantive unconscionability. Nevertheless, the arbitration provision is neither procedurally, nor substantively unconscionable. Accordingly, this Court should compel arbitration and enforce the class action waiver.

## II. ARGUMENTS AND AUTHORITIES

### A. RMDs Sufficiently Established the Existence of the Arbitration Provision in the Loan Agreements Such that they can Compel Arbitration.

Plaintiffs attempt to argue against compelling arbitration based on the baseless assertion that the RMDs have not properly authenticated the Loan Agreements. The RMDs, however, have clearly met their burden. In fact, it is the Plaintiffs and not the RMDs who have failed to meet the appropriate burden to invalidate the arbitration provision.

The Federal Arbitration Act (FAA) "place[s] arbitration agreements on equal footing with other contracts" and "establishe[s] a federal policy in favor of arbitration." *Circuit City Stores v. Adams,* 279 F.3d 889, 892 (9th Cir. 2002). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

When deciding whether a claim is subject to an arbitration clause, the Court must first determine if there is a valid arbitration agreement. It is the burden of the party moving to compel arbitration to prove, by a preponderance of the evidence that such an agreement exists. *Bruni v. Didion,* 160 Cal.App.4th 1272, 1282, 73 Cal.Rptr.3d 395 (Cal.App. 2008). If the moving party carries this burden, the opposing party must prove any contrary facts by the same burden. *Bruni* 160 Cal.App.4th at 1282, ("[t]he petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense."). "In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." *Id.*

The RMDs sufficiently authenticated the Loan Agreements and arbitration provision. In *Ortiz v. Hobby Lobby Stores, Inc.*, --- F.Supp.3d ---, 2014 WL 4961126 (E.D. Cal. Oct. 1, 2014),

the court compelled arbitration based on the same authentication elements in the instant action. First, the petition defendant attached the arbitration agreement as an exhibit to a pleading, as the RMDs have done here. *Id.* at *4. Next, the defendant provided a declaration based on personal knowledge, as the RMDs have likewise done. *Id.* The declarant, as Mr. Odell has done, stated that he was familiar with the ordinary course of business related to the agreements and their execution. *Id.* Accordingly, the court recognized that the Plaintiff has signed the agreement. *Id.* The Plaintiffs here signed their respective Loan Agreements electronically. Importantly, Plaintiffs do not dispute those signatures, or the existence of the actual Loan Agreements. Plaintiffs' objections to Mr. Odell's authentication are addressed in Section II.B below.

*Cronin v. Monex Deposit Co.*, 2009 WL 412023 (C.D. Cal., Feb. 17, 2009) provides more support to compel arbitration. In *Cronin*, the court dealt with objections similar to those set forth by Plaintiffs here. In opposition to defendant's petition to compel arbitration, plaintiff primarily argued that: 1) he could not remember signing or reading the agreement; and 2) the declarant authenticating the agreement was improper because he was not in the plaintiff's presence when the agreement was executed. *Id.* at *3. The court rejected these arguments and compelled arbitration. The court found it important that plaintiff could not *remember* signing the agreement, as opposed to affirmatively *denying* that he signed the agreement. *Id.* at *4.

The declarant stated that he never met with or knew plaintiff, but that it was merely part of his job duties to review and be familiar with the general agreement process. As described below, Mr. Odell has precisely testified to this point. Plaintiffs have not challenged the Loan Agreements or arbitration provision on the basis that they did not sign them. RMDs have provided the Declaration of David Odell, bolstered by his deposition taken by Plaintiffs, authenticating the Loan Agreements sufficient for this Court to find that RMDs have met their burden by the preponderance of the evidence.

Another California court has recently found that the RMDs have met their burden of proving the arbitration provision exists sufficient to compel arbitration. In the companion state case, *Pham et. al. v. JPMorgan Chase Bank, N.A. et al.*, Alameda County Superior Court, Case No. RG12652919, the Court reviewed the very same Loan Agreement template and found that

1  RMDs had met their burden.  Indeed that court found that Plaintiffs' nearly, if not, identical to
2  the arguments presently before this Court warranted no more than a few sentences to dismiss.
3  "Second, Plaintiff's evidentiary objections to the Odell declaration are OVERRULED.  The
4  subject Loan Agreements have been submitted in admissible form.  Accordingly, RMDs have
5  established that Pham and Bailey are bound by enforceable arbitration agreements."  Order
6  Petition to Compel Arbitration (Motion) Granted, *Pham et. al. v. JPMorgan Chase Bank, N.A. et
7  al.*, Case No. RG12652919, November 7, 2014, Order enclosed herein as Exhibit 9, "Pham
8  Order."

9       Plaintiffs have failed to meet their own burden to challenge the Loan Agreements under
10 the same standard.  Though RMDs provided more support, they sufficiently met their burden by
11 presenting the Loan Agreements to this Court and not receiving a challenge from Plaintiffs that
12 they did not sign the Loan Agreements.  Now that the burden has shifted to Plaintiffs, they
13 cannot avoid arbitration.  Plaintiffs provide no evidence whatsoever contravening RMDs'
14 support in favor of compelling arbitration.  No single Plaintiff provided a declaration refuting the
15 Loan Agreements.  Plaintiffs did not present a differing Loan Agreement that they purport to be
16 the "true" version.  Plaintiffs also fail to cite any case law that supports the contention that the
17 RMDs' authentication is not sufficient.  Plaintiffs simply attempt to cast doubt on the precise
18 language of the Loan Agreements and question Mr. Odell's ability to authenticate the Loan
19 Agreements.  This falls woefully short in two important regards.  First, it is insufficient to merely
20 propose unsubstantiated alternatives to the RMDs' burden-meeting arguments and evidence of
21 the arbitration provision.  Second, it is insufficient to meet Plaintiffs' burden of "prov[ing] any
22 contrary facts by the same burden."  *Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 WL 250418
23 at *4 (N.D. Cal. Jan. 25, 2011).

24      Accordingly, this Court should compel arbitration because the RMDs met their burden to
25 present a valid Loan Agreement with the arbitration provision and Plaintiffs have failed to meet
26 their burden to refute the same.

### B. Plaintiffs' Criticism of David Odell's Declaration and Deposition is Meritless and Fails to Provide this Court with a Single Reason to Reject Arbitration

Plaintiffs fill the vast majority of their Opposition by speculating about David Odell's ability to authenticate the Loan Agreements. Notably absent from Plaintiffs' discussion is a single refutation that the Plaintiffs never signed or executed the Loan Agreements presented by the RMDs. As previously mentioned, not only have Plaintiffs failed to overcome the evidence presented to this Court by RMDs to compel arbitration, but they have likewise failed to meet their own similar burden. Plaintiffs provide this Court with no evidence whatsoever as to why arbitration should not be compelled. The discussion should end here—the combination of RMDs meeting their own burden without refutation and Plaintiffs' failure to meet their corresponding burden dictates compelling arbitration. Moreover, counsel for Plaintiffs vigorously petitioned this Court to conduct arbitration discovery for the purpose of proving that the Loan Agreements are unconscionable. The Plaintiffs' complete silence on the matter in their Opposition is deafening. (Doc. 148). The complete lack of unconscionability will be addressed in a later section.

To begin, Plaintiffs' "objections" via Federal Rules of Evidence 602 and 901 are unsupported and contrary to both the rules themselves and the evidence presented. FRE 602 calls for the "Need for Personal Knowledge," which Mr. Odell has provided. "Evidence to prove personal knowledge may consist of the witness's own testimony." FRE 602. That is exactly what Mr. Odell has provided. Plaintiffs do not present any counter evidence, nor do they cite any law whatsoever to support Mr. Odell's lack of personal knowledge. Instead, they pose rhetorical questions and in an attempt to cast doubt without the support of competent facts. This is insufficient to deny binding arbitration. Consider Mr. Odell's testimony as compared to Plaintiffs' assertions:

| Plaintiffs' Opposition | Odell's Deposition Testimony |
|---|---|
| "[Mr. Odell" has no way of knowing what information was disclosed to Plaintiffs (i.e., terms of any arbitration provision) when they electronically signed the loan agreements." | "I can see the loan agreement template. I can see the words that are in it. I can see that that template was presented to this person on this day from this location. I can see the name that was typed into the field that signed the loan agreement. I can see the checked box or click of 'I accept' and I can see those recorded entries in the loan management system database, so, yes, I can see and I do validate that information." |
| Pg. 3, 9-12. | Doc. 148, Ex. 2, Odell Dep., 82:17-82:25. |

Mr. Odell testified to this fact under oath during his deposition. Plaintiffs' counsel challenges this assertion without a shred of support. Though it likely does not even apply here, if it does, Mr. Odell has also successfully authenticated the Loan Agreements pursuant to FRE 901. "**Examples.** The following are examples only—not a complete list—of evidence that satisfies the requirement: **(1) Testimony of a Witness with Knowledge.** Testimony that an item is what it is claimed to be." FRE 901(b) (bolding supplied).

Plaintiffs next challenge the authentication by stating that Mr. Odell's company is not itself a lender. This has no relevance to Mr. Odell's knowledge or ability to authenticate the Loan Agreements. Consider the analogy of a general contractor hiring subcontractors. Those subcontractors may also hire sub-subcontractors for specific work. The sub-subcontractors may never interact with the general contractor or the owner of the project, and yet the sub-subcontractor can clearly identify and work on the project started by the general contractor.

Plaintiffs proceed to mis-summarize and mischaracterize Mr. Odell's Deposition testimony for several pages of Plaintiffs' Opposition (Doc. 148). Some of the more egregious false summaries must be addressed. First, in an attempt to argue that Mr. Odell's testimony is biased—without actually arguing bias—Plaintiffs assert that Mr. Odell's company "was paid between $250,000 and $500,000" in 2013. However, Mr. Odell states that "Rare Moon Media is not one of our top customers," and that "they are a small, but good client in terms of revenue." Doc. 148, Ex. 2, Odell Dep., 58:1-58:2; 59:20:59-21. Further, Mr. Odell could lose Rare Moon Media as a client without much impact: "Losing a customer like Rare Moon would not be the first time that we've had something like that happen and I'm sure it won't be the last. That's the way the business works." Odell Dep., 147:8-147:11, attached hereto as Exhibit 8 and

-7-

incorporated by referenced herein. Next, in Plaintiffs' Paragraph 7, they make the assertion directly against Mr. Odell's testimony by stating that the Plaintiffs review the arbitration agreement during the loan application process without citing competent evidence in support of the same. In fact, it is the lending process, and not the application process, when the Plaintiffs see the arbitration provision:

> "The lending agreement is presented to the customer during the time of signature. And it is stored in the database along with time stamps of when that took place . . . It is presented with the same words and the same layout that you see here, as which I have already answered. This document is presented to the consumer through the website before they sign and accept the agreement. The details of that signature and acceptance are then recorded into the database and that is the information to which I have detailed, specified and confirmed."

Exhibit 8, Odell Dep., 91:4-91:16. Mr. Odell clearly testified about the difference between the loan application process, and the signing of the Loan Agreements.

Curiously, Plaintiffs again accuse Rare Moon Media of setting up "fake names" or "dummy companies" to "hide its involvement," in the lending operations. Plaintiffs' Opposition, pg. 7, Doc. 148. Plaintiffs argue that Rare Moon Media is the real lender. As will be discussed further below, this completely contradicts Plaintiffs' arguments that the RMDs cannot utilize the arbitration provision. Plaintiffs' competing scenarios cannot coexist. Plaintiffs cannot accuse RMDs of being the lenders while at the same time arguing that they are so far removed from the Loan Agreements that they cannot consider themselves third party affiliates or related parties.

Plaintiffs further argue that Mr. Odell is unfamiliar with the lenders' ordinary course of business, which somehow precludes his ability to authenticate the Loan Agreements. First, Plaintiffs do not cite any law for this proposition whatsoever. Second, Mr. Odell <u>is</u> familiar with the lenders' ordinary course of business as it relates to electronic loan agreement transactions. In describing how he is familiar, Mr. Odell stated:

> "Because I manage and maintain the software which lives in the real world and has limits and rules to how it operates and I know how that system works. So as it relates to the ordinary course of business in handling and preserving the electronic loan documents, I have been testifying to how that works for almost three hours now. . . . The full sentence [in my Declaration] says, 'I am familiar with VIP's, Action's and BD's ordinary course of business in handling and preserving these electronic loan agreements.' If you read the full sentence and

-8-

understand that I am not familiar with their entire business, I am familiar with their business as it relates to handling and preserving these electronic loan agreements. I am familiar with that because I administer the loan management system which is used to service these loans."

Exhibit 8, Odell Dep., 105:11-105:17; 106:6-106:15. Mr. Odell is familiar with the lenders' ordinary course of business to the extent necessary for him to authenticate the Loan Agreements containing the arbitration provision.

### C. RMDs have Standing to Compel Arbitration by Virtue of Third Party Beneficiaries, Alleged Agency, and Equitable Estoppel.

The RMDs may enforce the provisions of the binding arbitration agreement signed by Plaintiffs for at least three reasons. First, Plaintiffs themselves alleged an agency relationship (if not outright alter egos) as between RMDs and the lenders. Second, the RMDs are third party beneficiaries of the loan agreement. Third, the RMDs may enforce the arbitration agreement because Plaintiffs are suing RMDs based on the terms of the loan agreements, which allows RMDs to invoke the privileges of the loan agreements.

#### 1. The RMDs are Alleged Agents of the Lenders.

Plaintiffs have alleged that the RMDs are agents of the lenders or the lenders themselves on numerous occasions in multiple pleadings. Plaintiffs claim that the RMDs are not agents. As mentioned above, this is a direct contradiction to Plaintiffs' Opposition (Doc. 148) that declares the lenders as "dummy companies" set up by Rare Moon Media. It also contradicts Plaintiffs' First Amended Complaint ("FAC"; Doc. 41).

Plaintiffs' are incorrect that the provisions of the FAC do not allege an agency relationship. The most express allegation comes from the current FAC Paragraph 27, which alleges:

> "Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned **each of the Defendants, including all Defendants sued under fictitious names**, and each of the persons **who are not parties to this action but are identified by name or otherwise throughout this complaint**, was the alter ego of each of the remaining Defendants, was the successor in interest or predecessor in interest, and was the **agent** and employee of each of the remaining Defendants and in doing things herein alleged was **acting within the course and scope of this agency and employment**."

(Emphasis added). Plaintiffs are correct that the lenders are not named as defendants, but this

-9-

does not matter because the allegation expressly states that there is an agency relationship between all Defendants and those not named, but identified by name or otherwise throughout the Complaint. The lenders are specifically named and identified throughout the Complaint.

2. <u>The RMDs are Third Party Beneficiaries.</u>

As this Court is aware, third party beneficiaries may enforce arbitration agreements. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (internal quotes omitted). Plaintiffs do not dispute that the arbitration agreement applies to third parties or that third parties are allowed to invoke the provisions of the loan agreements. Rather, Plaintiffs mistakenly argue that the RMDs are not among those third party beneficiaries.

Plaintiffs previously attempted—but failed—to avoid arbitration by denying any affiliations between the RMDs and certain lenders. In the *Pham, supra*, action, in considering the exact same refutations of affiliation, the Court held that the RMDs could enforce the arbitration provision:

> "RMDs clearly fall within the definition of 'related third parties.' This is especially true when when [sic] this definition is read together with language defining the scope of the arbitration provision, 'the words "dispute" and "disputes" are given the broadest possible meaning, and include, without limitation . . . all claims, disputes or controversies arising from or relating directly or indirectly to the singing [sic] of this Agreement. . .' (Loan Agreement, paragraph 5(b).). Furthermore, the SAC includes 'agency' allegations (SAC, paragraph 32), and Plaintiffs' argument that RMDs must present evidence of their agency relationship before they can invoke the arbitration provision is neither supported by the authorities cited nor well taken."

Exhibit 9, *Pham* Order. It should be noted that the referenced SAC Paragraph 32 is identical to Paragraph 27 from Plaintiffs' current FAC before this Court and quoted above.

3. <u>RMDs May Enforce the Arbitration Agreements Based on Equitable Estoppel.</u>

Plaintiffs' claims are undoubtedly inextricably intertwined with the Loan Agreements that give rise to alleged unlicensed lending. In arguing against estoppel enforcement of the arbitration agreements, Plaintiffs take two illogical positions. First, they argue that there is no reliance on the terms of the Loan Agreement to impose liability on RMD. Second, they argue that RMDs liability is independent of the lenders' liability. Neither of these assertions is true.

Plaintiffs' claims are predicated on the alleged unlicensed lending, which has no separate existence from the Loan Agreements that set forth in writing the terms of the lending activity at issue. Thus, Plaintiffs cannot claim that their causes of action are not related to or intertwined with the Loan Agreements, which contain the subject arbitration provision.

### D. This Court Absolutely May and Should Strike the Class Allegations

Plaintiffs argue without support that this Court cannot determine whether the class allegations must be struck, but rather that it is a duty for the arbitrator. RMDs are happy to let Plaintiffs concede to arbitration to resolve this question, but the Court need not wait until that time. Plaintiffs' citation of *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 130 S.Ct. 2772 (2010) is a complete mischaracterization of the law and incorrectly places the burden on the wrong party. In *Jackson*, the Supreme Court held: "Held: Under the FAA, where an agreement to arbitrate includes an agreement that the arbitrator will determine the enforceability of the agreement, if a party challenges specifically the enforceability of that particular agreement, the district court considers the challenge, but if a party challenges the enforceability of the agreement as a whole, the challenge is for the arbitrator." *Id.* at 63. This does not stand for the proposition that Plaintiffs believe.

This argument was likewise rejected in the *Pham, supra,* case: "While there is currently a split of authority on whether questions regarding class or representative arbitrations should be addressed by the court or the arbitrator when the applicable arbitration provision does NOT include express waiver language, [citations] given the clear and comprehensive language waiving class and representative actions included in the arbitration provision at issue here, it is not clear to the court what purpose would be served by waiting for the arbitrator to rule on this issue. The waiver here is clearly enforceable." Exhibit 9, Pham Order.

This Court should also note that the *Jackson, supra,* case cited by Plaintiffs was decided prior to *AT&T Mobility, LLC v. Concepcion,* 131 S.Ct. 1740 (2011), which specifically dealt with class action waivers. This Court can compel arbitration and allow the arbitrator to decide on the issue of class waiver, or it can act within its authority to dismiss the class claims immediately.

-11-

Case No. 13-CV-01171-JSW    Reply in Support of Motion to Compel Arbitration

E.  **The Arbitration Provision is Not Unconscionable**

Plaintiffs vigorously argued the need for discovery, and specifically the deposition of David Odell, in order to allege unconscionability in an effort to defeat binding arbitration. "Plaintiffs will pursue similar information in a deposition of Mr. Odell as the circumstances under which the arbitration agreement was supposedly presented to the Plaintiffs will be relevant to an argument the agreement is procedurally unconscionable. . ." Joint Discovery Letter Brief, pg. 2, Doc. 137. Plaintiffs were unable to develop any evidence of procedural unconscionability as evidenced by their failure to assert the same.

Plaintiffs have completely abandoned this argument and now attempt to advance the misconception that they cannot argue unconscionability in opposition to the RMDs' motion to compel arbitration. Plaintiffs' position in their opposition that unconscionability is not ripe for this Court, flies in the face of Plaintiffs' prior position that they could raise unconscionability in opposition to the RMDs' motion to compel arbitration. Joint Discovery Letter Brief, pg. 2, Doc. 137; Plaintiffs' Opposition, pg. 15, Doc. 148. However, Plaintiffs failed to raise unconscionability—likely because the arbitration provision is not unconscionable.

In order for a court to find that an arbitration agreement is unconscionable, it must find that the agreement is both procedurally and substantively unconscionable. *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013 *en banc*); *see also Aermendariz v. Found. Health Psychcare Svcs., Inc.*, 24 Cal.4th 83, 99 (2000). Thus, Plaintiffs must successfully argue both procedural and substantive unconscionability, but have in fact argued neither.

The arbitration provision is not procedurally unconscionable. Procedural unconscionability requires a two-factor analysis, focusing on "oppression" and "surprise." *Newton v. American Debt Services, Inc.*, 854 F.Supp.2d 712, 722 (2012). There is neither oppression nor surprise. Mr. Odell's deposition testimony confirms this point. "[T]here is a template that is the contract that you see in front of you and that is the contract that you see in front of you and that is presented to [Plaintiffs] because that is the functionality of the loan management system." Doc. 148, Ex. 2, Odell Dep., 84:9-84:12.

The arbitration provision is likewise not substantively unconscionable. "Substantive unconscionability focuses on 'the effects of the contractual terms and whether they are overly harsh or one-sided.'" *Newton*, 854 F.Supp.2d at 724; *quoting Flores*, 93 Cal.App.4th at 853. Substantive unconscionability may also be found where the arbitration clause limits the types of remedies that would be available to the parties. *Id.* Nothing in the arbitration provision is one-sided in favor of the Lenders or the third parties.

Most, if not all, of the arbitration provision favor the individual Plaintiffs. First, regardless of which party seeks arbitration, the Plaintiffs can select the arbitration organization to administer the arbitration. *See* Doc. 136, Exs. 1 – 4, Loan Agreements, ¶ 5(e). Second, as previously mentioned, the Plaintiffs have the sole right to opt out of arbitration. *Id.* at ¶ 5(f). Third, the Plaintiffs have the expenses of the arbitration covered by the other party: ". . . we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees." Fourth, the arbitration would be held in the county of the individual Plaintiffs' residence, or within 30 miles from such county, or in the county in which the transaction under the Loan Agreement occurred, or wherever the arbitrator orders. *Id.* Finally, Plaintiffs could receive an award that far exceeds any purported damages. Consider the express language in the arbitration provision:

> "If, after finding in your favor in any respect on the merits of your claim, the arbitrator issues you an award that is greater than the value of Lender's last written settlement offer made before an arbitrator was selected, the Lender will: (a) pay you the amount of the award or $10,000 ("the alternative payment"), whichever is greater; and (b) pay your attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses (including expert witness fees and costs) that your attorney reasonably accrues for investigating, preparing and pursuing your claim in arbitration ("the attorney premium")."

*Id.* at ¶ (h). Accordingly, the arbitration provision is not substantively unconscionable.

### III. CONCLUSION

Defendants Rare Moon Media, LLC, Jeremy Shaffer, Brad Levene, Lindsey Coker, and Josh Mitchem may invoke the benefits of the arbitration provision found in all of the at-issue Loan Agreements. RMDs have sufficiently proven the existence and the terms of the Loan Agreements such that the arbitration provision may be enforced. Plaintiffs failed to present this

Court with any support as to why Mr. Odell cannot authenticate the Loan Agreements. Moreover, Plaintiffs have failed to meet their own burden in opposing arbitration. The RMDs have proper standing to compel arbitration because they are related third parties. This Court may enforce the class waiver provision because it is expressly written in the arbitration provision and is not vague or confusing. Finally, Plaintiffs failed to assert any form of unconscionability, which was their stated purpose for Mr. Odell's deposition.

WHEREFORE, for the foregoing reasons, RMDs respectfully request this Court to enter an Order dismissing the causes of action as against the RMDs, enforcing the class waiver and compelling arbitration. In the alternative, the RMDs respectfully request this Court to stay the proceedings pending the outcome of compelled arbitration and for such other and further relief that this Court deems just, proper, and equitable.

Dated: December 22, 2014

/S/ RALPH A. ZAPPALA
RALPH A. ZAPPALA, SB# 102052
E-Mail: rzappala@bzlawllp.com
251 Lafayette Circle
Suite 350
Lafayette, California 94549
Telephone: (925) 299-9600

PAUL CROKER KS #21627
E-Mail: pcroker@wallacesaunders.com
WALLACE SAUNDERS
10111 W. 87th Street
Overland Park, Kansas 66212
Telephone: 913.888.1000
Facsimile: 913.888.1065
Admitted Pro Hac Vice

Attorneys for Defendants Rare Moon Media, LLC, Jeremy Shaffer, Brad Levene, Lindsey Coker, and Josh Mitchems

-14-

Case No. 13-CV-01171-JSW  Reply in Support of Motion to Compel Arbitration