**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SEAN L GILBERT, et al.,

    Plaintiffs,

  v.

BANK OF AMERICA, et al.,

    Defendants.

No. C 13-01171 JSW

**ORDER GRANTING RENEWED MOTION TO COMPEL ARBITRATION BY RARE MOON DEFENDANTS AND DISMISSING CLAIMS IN FAVOR OF ARBITRATION**

**(Docket No. 136)**

This matter comes before the Court upon consideration of the renewed motion to compel arbitration filed by Defendants Rare Moon Media, LLC, Jeremy Shaffer, Brad Levene, Lindsey Coker, and Josh Mitchem (collectively "Rare Moon Defendants"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and the parties' arguments at the hearing on this motion. The Court HEREBY GRANTS the Rare Moon Defendants' motion.

## BACKGROUND

Plaintiffs Sean Gilbert ("Gilbert"), Keeya Malone ("Malone"), and Charmaine B. Aquino ("Aquino") (collectively "Plaintiffs") obtained "payday loans," which they contend were illegal because: (1) the lenders charged fees that exceed the fees permitted under California's Deferred Deposit Transaction Law (the "DDTL"); and (2) the lenders were not licensed under the DDTL to make such loans. (First Amended Complaint ("FAC") ¶¶ 46, 48-49, 53-59.) The Court shall refer to these entities as the "Unlicensed Lenders."

Plaintiffs have not sued the Unlicensed Lenders. Rather, and in brief, they allege that the

Rare Moon Defendants were not licensed under the DDTL but assisted the Unlicensed Lenders in various ways in the origination of the payday loans. (*See, e.g.,* FAC ¶¶ 60-118.) Plaintiffs bring a civil RICO claim and bring claims for alleged violations of the DDTL and California's Unfair Competition Law.

According to the Rare Moon Defendants, when the Plaintiffs obtained loans from the Unlicensed Lenders, they also agreed to arbitrate any claims that arose out of those agreements. The Rare Moon Defendants submit four documents entitled "Consumer Loan and Arbitration Agreement" (hereinafter "Loan Agreement"). (*See* Declaration of David Odell ("Odell Decl."), ¶ 9; Mot., Exs. 1-4.)[1] Those Loan Agreements contain a provision entitled "Arbitration Agreement and Waiver of Jury Trial" (the "Arbitration Clause"), which provides, in part, that:

> For purposes of this Agreement, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation, (I) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Agreement, the validity and scope of this Agreement and any claim or attempt to set aside the Agreement, (ii) all federal or state law claims, disputes or controversies arising from or relating directly or indirectly to this Agreement, the information you gave us before entering into the Agreement, including the Customer Application, and/or any past agreement or agreements between you and us; (iii) all counterclaims, cross-claims and third-party claims; (iv) all common law claims based upon contract, tort, fraud, or other intentional torts; (v) all claims based upon a violation of any state or federal constitution, statute, or regulation; (vi) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (vii) *all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company, or affiliated entities (hereinafter collectively referred to as "related third parties")*; (ix) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (x) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.
>
> By entering into this Agreement: (I) YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; (ii) YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL RESOLVE ANY DISPUTES ALLEGED AGAINST US OR RELATED THIRD PARTIES; and (iii) YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

---

[1] The Odell Declaration is attached as Exhibit 5 to the Rare Moon Defendants' motion.

> Except as provided in Paragraph 5(I) below, all disputes, including any Representative Claims, against us and/or related third parties, shall be resolved by binding arbitration only on an individual basis with you. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.

(*See, e.g.,* Mot., Ex. 1, Loan Agreement, ¶¶ 5(b)-(d) (emphasis in italics added, capitalization as in original).)

Two of these Loan Agreements are purported to have been signed by Gilbert: one with VIP PDL Services, LLC on December 12, 2012, and one with Action PDL Services, LLC, on November 16, 2012. (Mot., Exs. 1-2.) One is purported to have been signed by Aquino with VIP PDL Services, LLC on February 11, 2013. (*Id.*, Ex. 3.) The final Loan Agreement is purported to have been signed by Malone with Bottom Dollar Payday on November 29, 2012. (*Id.*, Ex. 4.) It is undisputed that the Rare Moon Defendants did not sign any of these Loan Agreements.

The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.  Legal Standards Applicable to Motions to Compel Arbitration.**

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton. Inc.*, 514

U.S. 52, 53-54 (1995). The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985) (quotations omitted).

Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion."). Thus, as with any contract an arbitration agreement is "subject to all defenses to enforcement that apply to contracts generally." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

**B.     The Rare Moon Defendants Have Met Their Burden to Show A Valid Arbitration Agreement Exists.**

The first issue the Court must resolve is whether the Plaintiffs entered into a valid arbitration agreement. *Prima Paint*, 385 U.S. at 400.[2]

**1.     The Rare Moon Defendants Have Shown Plaintiffs Agreed to Arbitration.**

In order to authenticate the Loan Agreements that contain the Arbitration Clauses, the Rare Moon Defendants rely on a declaration from David Odell, who is the President of Summit Computer Solutions, Inc. (Mot., Ex. 5, Declaration of David Odell ("Odell Decl."), ¶ 2.) Plaintiffs object to the Odell Declaration on the basis that he cannot, and has not, authenticated the Loan Agreements. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

Mr. Odell attests that his company "provides information technology services regarding the servers utilized with respect to the businesses of" VIP PDL Services, LLC, Action PDL Services, LLC and BD PDL Services.COM, LLC (collectively the "Lenders"), and that each of these Lenders use loan management software for each of the loans covered by the Loan

---

[2] Plaintiffs do not contest that the claims at issue would fall within the scope of the Arbitration Agreement.

4

Agreements. Mr. Odell further attests that he is familiar with how that software functions and with the Lenders' "ordinary course of business in handling and preserving ... electronic loan agreements." (Odell Decl., ¶¶ 4-5.) Finally, after describing how the loan management software functions, Mr. Odell attests that each of the Loan Agreements attached to the Rare Moon Defendants' motion was maintained on the servers utilized by the Lenders. (*Id.*, ¶¶ 6-13.)

The Court OVERRULES Plaintiffs' objections, and it finds that Mr. Odell's declaration is sufficient to establish that the Loan Agreements are what they purport to be.[3] Further, Gilbert, Aquino and Malone do not deny that they signed the Loan Agreements submitted by the Rare Moon Defendants. Accordingly, the Court concludes that the Rare Moon Defendants have met their burden to show that Gilbert, Aquino and Malone entered into Loan Agreements that contain an Arbitration Clause.

**2. The Rare Moon Defendants Have Met Their Burden to Show the Arbitration Clauses are Valid.**

The parties did not address the issue of unconscionability in the moving papers or the opposition brief and assumed that this issue was a matter for the arbitrator to resolve. However, the Rare Moon Defendants switched course in their reply brief. Accordingly, the Court heard argument on this issue at the hearing.[4] Unconscionability remains a basic contract defense that may be used to invalidate arbitration provisions. *AT & T Mobility LLC v. Concepcion*, – U.S. –, 131 S. Ct. 1740, 1746 (2011). "The party opposing arbitration has the burden of proving the arbitration provision is unconscionable." *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1171 (S.D. Cal. 2011) (quotation omitted).

---

[3] The Court also has considered Mr. Odell's deposition testimony, which Plaintiffs submitted with their opposition brief, and it does not alter the Court's ruling.

[4] The parties suggested that the Arbitration Clause delegated issues of validity to the arbitrator. Based on the Court's review of the Loan Agreements, it is not clear that the term "Agreement" was intended to apply solely to the Arbitration clause, rather than the Loan Agreement as a whole. Thus, the Court concludes the parties did not clearly and unmistakably delegate the issue of whether the Arbitration Clause is valid to the arbitrator. *See Rent-A-Center West., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010); *see also id.* (noting that "underlying contract itself is an arbitration agreement," rather than an arbitration agreement contained within a contract unrelated to arbitration).

5

1  At the hearing, Plaintiffs re-argued points raised in their objections to Mr. Odell's
2  declaration, *i.e.* that it is not clear what was presented to them when they entered into the Loan
3  Agreements. The Court has concluded that the Rare Moon Defendants have properly
4  authenticated the Loan Agreements. Further, as noted, Plaintiffs have not denied that they
5  signed the Loan Agreements. They also have not presented evidence to suggest that, when they
6  signed the Loan Agreements, they did not contain Arbitration Clauses or that the terms of those
7  clauses differed from what has been presented to the Court. Apart from these arguments,
8  Plaintiffs did not raise any challenge to the validity of the Arbitration Clause.

9  Accordingly, the Court concludes that the Rare Moon Defendants have met their burden
10 to show that Arbitration Clauses are valid, and Plaintiffs have not met their burden to show the
11 Arbitration Clauses are unconscionable or are otherwise invalid.

**C.  The Rare Moon Defendants Are Entitled to Enforce the Arbitration Clauses.**

Having determined that a valid agreement to arbitrate exists, the Court must consider whether the Rare Moon Defendants are entitled to enforce the Arbitration Clauses.[5] Although they are not signatories, the Rare Moon Defendants "'may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement.'" *Murphy v. DirectTV, Inc.,* 724 F.3d 1218, 1229 (9th Cir. 2013). Under California law, a third-party may invoke an arbitration agreement as an agent, a third-party beneficiary, or pursuant to principles of equitable estoppel.[6] *Id.* at 1229-34. The Rare Moon Defendants rely on all three theories. Because the Court finds that the Rare Moon Defendants can invoke the Arbitration Clauses as third-party beneficiaries, it does not address their alternative arguments.

---

[5] The Rare Moon Defendants also argued that the parties agreed to delegate this issue to the arbitrator. For the reasons set forth above with respect to the issue of unconscionability, the Court concludes that the parties did not clearly and unmistakably delegate this issue to the arbitrator.

[6] The Loan Agreements contain a governing law provision, which states that it "shall be governed by the law of Nevis [West Indies], without regard to its choice of law rule except that the arbitration provisions will be governed by the FAA." (*See, e.g.,* Mot., Ex. 1, Loan Agreement, ¶ 7.) However, neither the Rare Moon Defendants nor the Plaintiffs argue that any law but California law should be applied to determine whether the Rare Moon Defendants can enforce the Arbitration Clause.

6

The Rare Moon Defendants argue that they fall within the definition of "Related Third Parties." "A third party may only assert rights under a contract if the parties to the agreement intended the contract to benefit the third party[.]" *Murphy*, 724 F.3d at 1234. The term "Related Third Parties" is defined as "employees, agents, directors, officers, shareholders, governors, managers, members, parent company, or affiliated entities." (Mot., Ex. 1, Loan Agreement, ¶ 5(b).) Again, the Rare Moon Defendants rely solely on the allegations in the FAC and the terms of the Loan Agreements to support their argument.

The Loan Agreements use the term "affiliated" as an adjective to modify the noun "entities." The plain meaning of the term "affiliated" is to be "closely associated with another typically in a dependent or subordinate position. *Webster's New Collegiate Dictionary* at 20 (1979). However, when read in context, the phrase seems to imply a more formal business relationship between the Unlicensed Lenders and non-signatories to the Loan Agreements, *i.e.* a relationship beyond a client-vendor.

Although the Rare Moon Defendants rely solely on the allegations in the FAC, there is evidence in the record to support the existence of an affiliation between the Rare Moon Defendants and the Unlicensed Lenders. Specifically, when Plaintiffs submitted their opposition to the Rare Moon Defendants' motion to dismiss for lack of personal jurisdiction, or in the alternative, to compel arbitration, Plaintiffs submitted marketing contracts between defendant Partner Weekly and VIP PDL Services, Inc. (*See* Docket No. 106-8, Declaration of Jeffrey Wilens, ¶ 3, Ex. 2.) Based on the information contained in those marketing contracts, the Court is satisfied that the Rare Moon Defendants would fall within the definition of Related Third Parties and, therefore, are entitled to enforce the Arbitration Clauses.

**D.     The Court Shall Enforce the Class Action Waiver.**

The Rare Moon Defendants also ask the Court to enforce the class action waiver. Although the Plaintiffs argue that the arbitrator should make this decision, the Court has concluded that the Arbitration Clause does not contain a clear delegation provision. However, the terms of the Arbitration Clause do clearly and unmistakably waive the right to pursue class arbitration. The "central purpose of the [FAA is] to ensure that private agreements to arbitrate

7

are enforced according to their terms." *Mastrobuono*, 514 U.S. at 53-54. Accordingly, the Court shall enforce the class action waiver and shall require Plaintiffs to arbitrate the claims relating to the Loan Agreements attached to the Rare Moon Defendants' motion on an individual basis.

**E.     The Court Dismisses the Claims Against the Rare Moon Defendants.**

The Rare Moon Defendants also ask the Court to dismiss the claims Plaintiffs assert against them and, in the alternative, ask for a stay pending arbitration. Once a court has determined that it will compel arbitration, the FAA provides for a stay of the action. 9 U.S.C. § 3. The Ninth Circuit has held, however, that Section 3 "does not preclude summary judgment when all claims are barred by an arbitration clause," and, thus, does not limit a court's authority to dismiss, rather than stay a case. *See Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988).

This case has not yet been certified as a class action. Kimberly Bilbrew also is a named plaintiff. However, the Rare Moon Defendants did not submit a loan agreement that contained an arbitration provision as to Ms. Bilbrew. At the hearing, the Court inquired whether she would have any claims against the Rare Moon Defendants. Plaintiffs conceded that she would not, in light of the Court's ruling on the question of jurisdiction under the Civil RICO statutes, that there was insufficient evidence to support a nationwide RICO conspiracy. Therefore, the only Plaintiffs with claims against the Rare Moon Defendants are Gilbert, Malone, and Aquino. Although Gilbert and Aquino have claims against other named defendants, they have not shown they have other claims against the Rare Moon Defendants that would not be subject to arbitration.

Accordingly, because all of the claims against the Rare Moon Defendants are subject to arbitration, the Court exercises its discretion to dismiss the Rare Moon Defendants from this case, rather than stay the matter pending arbitration.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Rare Moon Defendant's motion to compel arbitration, and it DISMISSES all claims against them without prejudice to Gilbert,

Aquino, and Malone pursuing those claims by way of individual arbitrations pursuant to the terms of the Arbitration Clauses.

The Court shall not enter a partial judgment in favor of the Rare Moon Defendants at this time. However, the Court shall revisit that issue once it has resolved the motion to dismiss for lack of personal jurisdiction filed by the Cane Bay Defendants.

**IT IS SO ORDERED.**

Dated: January 12, 2015



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE