**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN L GILBERT, et al., | No. C 13-01171 JSW |
| Plaintiffs, | **ORDER GRANTING, IN PART, MOTION TO COMPEL ARBITRATION BY DAVID JOHNSON; STAYING CLAIMS PENDING ARBITRATION; AND ORDER TO SHOW CAUSE REGARDING KEEYA MALONE'S CLAIMS AGAINST JOHNSON** |
| v. | |
| BANK OF AMERICA, et al., | |
| Defendants. | |
| / | **(Docket No. 178)** |

This matter comes before the Court upon consideration of the motion to compel arbitration filed by Defendant David Johnson ("Johnson"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and the Court finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing set for April 17, 2015, and it HEREBY GRANTS Johnson's motion, in part. The case remains on calendar for the case management conference set for April 17, 2015 at 11:00 a.m.

**BACKGROUND**

Plaintiffs Sean Gilbert ("Gilbert") and Kimberly Bilbrew ("Bilbrew") (collectively "Plaintiffs") obtained "payday loans," which they now contend were illegal "for numerous reasons but most importantly because the lender was not licensed by the State of California to make a payday loan[.]" (Second Amended Complaint ("SAC") ¶¶ 40; *see also id.*, ¶¶ 37-54, 121-122.) The Court shall refer to these entities as the "Unlicensed Lenders."

Plaintiffs have not sued the Unlicensed Lenders. Rather, and in brief, they allege that Johnson was not licensed under the DDTL but that he assisted the Unlicensed Lenders in various ways in the origination of the payday loans. (*See, e.g.,* SAC ¶¶ 70-90.) Plaintiffs bring a civil RICO claim and bring claims for alleged violations of the DDTL and California's Unfair Competition Law.

According to Johnson, when Gilbert and Bilbrew obtained payday loans from Cash Yes, the allegedly Unlicensed Lender with which he is associated, they also agreed to arbitrate any claims that arose out of those agreements, including the scope and validity of the arbitration clause. In support, Johnson submits four "Loan Agreement & Disclosures," signed and dated by Gilbert on or about November 26, 2012, and signed and dated by Bilbrew on or about February 5, 2013, March 4, 2013, and March 26, 2013. (Declaration of Cherilyn Rodriguez ("Rodriguez Decl."), ¶¶ 26, 29-34, and Exs. D-G; Declaration of Jeffrey Wilens ("Wilens Decl."), ¶ 2, Ex. 6 (Loan Agreements).) It is undisputed that Johnson did not sign any of these Loan Agreements.

The Loan Agreements contain a provision entitled "Waiver of Jury Trial and Arbitration Provision" (the "Arbitration Provision"), which is located on the fourth or fifth page of each Loan Agreement. The Arbitration Provision provides, in part, as follows:

> Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve the dispute; and (b) agree, instead, to submit their dispute to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. We have a policy of arbitrating all disputes with customers; ***including the scope and validity of this Arbitration Provision[1]***, and to do so only with customers who are acting in their individual capacities, and not as representatives of a class.
>
> **THEREFORE**, **YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**
>
> 1. For purposes of this Waiver of Jury Trial and Arbitration Provision, the words "dispute" and "disputes" are given the broadest possible meaning

---

[1] The Court emphasized this text.

2

and include, without limitation: **(a)** all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, *the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision*[2]; **(b)** all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Agreement, the information you gave us before entering into the Agreement, including the customer information application, and/or any past agreement or agreements between you and us; **(c)** all counterclaims, cross-claims and third party claims; **(d)** all common law claims, based upon contract, tort, fraud, or other intentional torts; **(e)** all claims based on a violation of any state or federal constitution, statute or regulation; **(f)** all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities ("related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of person, or in any other representative capacity, against us and/or related third parties ("Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

...

Your right to file suit against us for any claim or dispute regarding this Agreement is limited by this **WAIVER OF JURY TRIAL AND ARBITRATION PROVISION**.

(*See, e.g.,* Rodriguez Decl., Ex. D at pp. 5-6 (emphasis in original, unless otherwise noted).)[3]

Charmaine Aquino ("Aquino") and Keeya Malone ("Malone") also are named Plaintiffs in this action. It is undisputed that Aquino did not obtain a loan from Cash Yes and, thus, her claims are not at issue in this motion. Johnson has not asked the Court to compel Malone to arbitrate her claims, but he does ask that her claims against him be dismissed. In support of his request, Johnson proffers Ms. Rodriguez' declaration. In that declaration, Ms. Rodriguez attests that Malone did not obtain a loan from Cash Yes. (Rodriguez Decl., ¶¶ 36-37.)

The Court shall address additional facts as necessary in the remainder of this Order.

//

//

---

[2]   The Court emphasized this text.

[3]   Plaintiffs agree that each of the Arbitration Provisions are "for all relevant purposes identical." (Docket No. 183, Opp. Br. at 1:18.)

//

## ANALYSIS

**A.    Legal Standards Applicable to Motions to Compel Arbitration.**

The Loan Agreements provide that the Arbitration Provisions are "governed by the Belize Arbitration Act, Chapter 125, and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, as adopted by the United Nations Conference on International Commercial Arbitration" (hereinafter "the Convention"). (Rodriguez Decl., Ex. D (Loan Agreement at 5).) "The Supreme Court has consistently recognized 'the emphatic federal policy in favor of arbitral dispute resolution, a policy that applies with special force in the field of international commerce.'" *Balen v. Holland America Line, Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985)); *see also* 9 U.S.C. § 202. Pursuant to Article II, section 3 of the Convention, "[t]he court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative, or incapable of being performed." 21 U.S.T. 2157, Art. II(3).

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton. Inc.*, 514 U.S. 52, 53-54 (1995). The "preeminent concern of Congress in passing the [FAA] was to enforce

4

private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp.*, 473 U.S. at 625-26 (quotations omitted). Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion.").

**B.      The Court Grants the Motion to Compel.**

Gilbert and Bilbrew do not dispute they signed the Loan Agreements that contain the Arbitration Provisions, that Johnson may enforce the Arbitration Provisions, and that, if valid, their claims would fall within the scope of the Arbitration Provisions. *See Prima Paint*, 385 U.S. at 400. Gilbert and Bilbrew also agree that the Arbitration Provisions contain delegation clauses. The issues the Court must decide are: (1) whether the Arbitration Provisions are governed by the Convention or by the FAA; (2) whether the delegation clauses should be enforced; and (3) if the delegation clauses should not be enforced, whether the Arbitration Provisions are unconscionable. Because the Court finds that the Arbitration Provisions are Governed by the Convention and that the delegation clauses are enforceable, it does not reach the question of whether the Arbitration Provisions are unconscionable.

**1.      The Arbitration Provisions are governed by the Convention.**

The Ninth Circuit has adopted a four part test to determine whether an arbitration agreement is governed by the Convention. *See Balen*, 583 F.3d at 654-55. The Court asks whether: "(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Id.* (quoting *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005).

Plaintiffs do not dispute that first or second prongs of the *Balen* test are satisfied. The Court also concludes they are satisfied. The Arbitration Provisions are in writing, and they

1    provide for arbitration in Belize.  Although Plaintiffs argue that the payday loans should not be
2    considered commercial transactions, the Court finds that argument unpersuasive and
3    unsupported by authority.  Plaintiffs final argument is that there is no foreign nexus because
4    Cash Yes is merely a dummy corporation.  However, Plaintiffs provide no evidence to support
5    that assertion or that Cash Yes was not operating in Belize.  In addition, the Arbitration
6    Provisions provide that they are "made pursuant to a transaction involving international
7    commerce."  (*See, e.g.,* Rodriguez Decl., Ex. D at p. 6 (Arbitration Clause § 9.)

8    Accordingly, the Court concludes that the Arbitration Provisions are governed by the
9    Convention.

### 2. The Court will enforce the delegation clauses.

Johnson argues that parties delegated the issue of whether the Arbitration Provisions are valid to the arbitrator.  In general, a court decides gateway issues of arbitrability.  Because arbitration is a matter of contract, the Supreme Court has held that parties may delegate those gateway issues to the arbitrator, if they do so "clearly and unmistakably."  *See Rent-A-Center West., Inc. v. Jackson*, 561 U.S. 63, 69-70 & n.1 (2010); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002).  The Arbitration Provisions expressly state the term "disputes" includes "all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision[.]"  (*See, e.g.,* Rodriguez Decl., Ex. D at pp. 5-6.)  The Arbitration Provisions also reference the fact that Cash Yes and its related third parties have a policy of arbitrating all disputes "including the scope and validity of this Arbitration Provision."[4]  The Court concludes that these portions of the Arbitration Provisions demonstrate that the parties clearly and unmistakably delegated the issue of validity of the Arbitration Provision to the arbitrator.

---

[4] The fact that these delegation clauses refer to the Arbitration Provision and not the "Agreement," which was clearly defined to mean the Loan Agreements, distinguish the Arbitration Provisions at issue here from the arbitration clauses at issue in the motion to compel filed by the Rare Moon Defendants.  (*See* Docket No. 160.)

6

In *Rent-A-Center West*, the Supreme Court held that delegation clauses are valid, "'save upon such grounds as exist at law or in equity for the revocation of any contract.'" 561 U.S. at 70 (quoting 9 U.S.C. § 2); *accord Malone v. Superior Court*, 226 Cal. App. 4th 1551, 1559-60 (2014). Applying that principle to the delegation clauses here, which are contained within Arbitration Provisions governed by the Convention, the Court would be required to determine whether they are null and void, inoperative, or incapable of being performed. Plaintiffs only argument against enforcement of the delegation clauses is that they are unconscionable, and the parties dispute whether that is a defense to enforcement under the Convention.

The Ninth Circuit has not addressed that issue. *See, e.g., Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1158 (9th Cir. 2008) (assuming, without deciding, that unconscionability could render an agreement null and void under the Convention, and finding that arbitration agreement at issue was not unconscionable).[5] The Court concludes that it need not resolve the question, because even if unconscionability is a defense under the Convention, the delegation clauses are not unconscionable. *See, e.g., Davis v. Cascade Tanks LLC*, 2014 WL 3695493, at *12-13 (D. Or. July 24, 2014) (noting that court need not decide whether unconscionability is a defense, because arbitration agreement at issue was not unconscionable); *Brookdale Inn and Spa v. Certain Underwriters at Lloyds, London*, 2014 WL 1162442, at *2 (N.D. Cal. Jan. 13, 2014) (finding it "appropriate to leave the question unsettled" on the basis that even if unconscionability was a defense, arbitration agreement was not unconscionable).

To show that the delegation clauses are unconscionable, Plaintiffs bear the burden to show they are procedurally and substantively unconscionable. *Armendariz v. Found. Health Psychare Serv., Inc.*, 24 Cal. 4th 83, 114-15 (2000); *see also Malone*, 226 Cal. App. 4th at 1561. The Court evaluates the presence of procedural and substantive unconscionability on a "sliding

---

[5] When courts have found that unconscionability is not a defense under the Convention, they have reasoned that the null and void clause was intended to be interpreted narrowly and to only encompass defenses such as "fraud, mistake, duress, and waiver," which "can be applied neutrally on an international scale." *Prograph, Int'l v. Barhydt*, 928 F. Supp. 983, 989 (N.D. Cal. 1996) (quoting *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 187 (1st Cir. 1982)); *see also Bautista v. Star Cruises,* 396 F.3d 1289, 1302 (11th Cir. 2005); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 959 (10th Cir. 1992); *Chloe Z. Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1258-59 (S.D. Cal. 2000).

7

scale." *Malone*, 226 Cal. App. 4th at 1561. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionablity is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114.

### a. Procedural Unconscionability.

Procedural unconscionability "concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. The element focuses on oppression or surprise." *Gatton v. T-Mobile, USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007) (quotations omitted). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Id*. (quotations omitted). "Surprise is defined as the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed term." *Id*. (quotations omitted).

Plaintiffs argue that the delegation provisions are procedurally unconscionable, because they had no opportunity to negotiate, *i.e.* the provisions were adhesive. *See Newton v. American Debt Services, Inc.*, 854 F. Supp. 2d 712, 723 (N.D. Cal. 2012) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)) (adhesion contract is a "standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms" ). However, adhesion only establishes a minimal degree of procedural unconscionability." *Gatton*, 152 Cal. App. 4th at 585; *see also Serpa v. California Surety Investigations*, 215 Cal. App. 4th 695, 704 (2013) ("adhesive aspect of agreement is not dispositive"). Plaintiffs' argument that the delegation clauses are hidden rests on their assumption that Section 11 of the Arbitration Provision is the delegation clause. That Section, however, refers to the Loan Agreement as a whole. In contrast, the delegation clauses are referenced in the preamble to and Section 1 of the Arbitration Provisions. These sections are in the same font and type size as the other provisions of the Arbitration Provision. The Court concludes that they are not hidden within the Arbitration Provisions.

Plaintiffs also argue that the delegation clauses are unconscionable, because the rules that govern the Arbitration Provisions are not attached. Some courts have held that the failure

to provide arbitration rules can support a finding of procedural unconscionability. *See, e.g.*, *Trivedi v. Curexco Technology Corp.*, 189 Cal. App. 4th 387, 393 (2010); *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406-07 (2003). However, more recent cases have held that procedural unconscionability can be avoided, if the arbitration rules are incorporated into the contract by reference, such incorporation is clear, and the rules are readily available. *See, e.g., Ulbrich v. Overstock.Com, Inc.*, 887 F. Supp. 2d 924, 932-33 (N.D. Cal. 2012); *see also Hodsdon v. DirecTV, LLC*, 2012 WL 5464615, *5 (N.D. Cal. Nov. 8, 2012). To the extent this argument relates specifically to the delegation clause, the Arbitration Provisions state which rules govern, although those rules are not expressly incorporated by reference and the Arbitration Provisions do not advise signatories where the rules may be obtained.

The Court concludes that Plaintiffs have shown a minimal amount of procedural unconscionability with respect to the delegation clauses.

### b. Substantive Unconscionability.

Because the Court concludes the delegation clauses are have a minimal degree of procedural unconscionability, Plaintiffs must show a greater degree of substantive unconscionability. Plaintiffs argue that the delegation clauses substantively unconscionable, because they are outside the reasonable expectations of the parties. That fact is one fact that a court may consider in evaluating whether a delegation provision is substantively unconscionable. *See Malone*, 226 Cal. App. 4th at 1570. In *Malone*, as here, the court found that there was "some evidence of procedural unconscionability," because the arbitration provision was adhesive. *Id.* However, it concluded the plaintiff had not established a "high showing" of substantive unconscionability, where her only evidence was that the delegation provision was outside the reasonable expectations of the parties. *Id.*

The Court also concludes that the delegation provision has a modicum of bilaterality, because it broadly covers both validity and scope and, thus, has not been drafted in way that would encompass disputes that would likely be raised only by Plaintiffs. *Compare Malone*, 226 Cal. App. 4th at 1562 (finding delegation clause mutual because "*all* issues of interpretation, applicability and enforceability" were delegated to arbitrator) (emphasis in original) *with*

9

1  *Murphy v. Check 'N Go of California, Inc.*, 156 Cal. App. 4th 138, 142 (2007) (delegation
2  clause facially mutual but because parties only delegated issue of unconscionability to
3  arbitrator, court concluded that clause lacked true mutuality).

4  Plaintiffs also argue that it is unlikely that the parties could find a "competent" and
5  neutral arbitrator who is versed in California law. This argument is akin to the plaintiffs'
6  argument in the *Malone* case that an arbitrator would have a vested interest in enforcing the
7  delegation provision. The *Malone* court found that such an argument was preempted by the
8  FAA, because it "was an expression of a judicial hostility to arbitration." 226 Cal. App. 4th at
9  1569. The Court finds that reasoning applies to Plaintiffs' argument here and, thus, cannot be
10 used to establish that the delegation provision is unconscionable.

11 Plaintiffs' final argument is that the delegation provision is substantively
12 unconscionable, because of the fees required to refer that dispute to arbitration. However, fee
13 splitting provisions are not *per se* substantively unconscionable. *Nagrampa v. MailCoups, Inc.*,
14 469 F.3d 1257, 1285 (9th Cir. 2006); *see also Brookdale Inn and Spa*, 2014 WL 116442 at *6
15 ("[R]equiring that the costs of arbitration be borne equally by the parties is not per se
16 substantively unconscionable, even if one party is in a better financial position.").[6] In addition,
17 the Arbitration Provisions provide that Cash Yes or a related third party will advance*, inter alia*,
18 any filing fees.

19 For these reasons, the Court concludes that the delegation provision is enforceable, and
20 it GRANTS Johnson's motion to compel Gilbert and Malone to arbitrate. Johnson also has
21 asked the Court to enforce the class action waiver. Although Plaintiffs do not respond to this
22 argument, in light of the Court's ruling on the delegation clauses, and the breadth of those
23 clauses, the Court concludes that this is an issue for the arbitrator to address.

24 //
25 //
26

---

27 [6] To the extent Plaintiffs suggest that the fee splitting provision is substantively
28 unconscionable because it impedes their ability to vindicate statutory rights, that argument pertains to broader question of whether the Arbitration Clauses are substantively unconscionable.

10

//

**D. The Court Stays the Claims Asserted by Gilbert and Bilbrew Against Johnson and Orders Malone to Show Cause Why Her Claims Against Johnson Should Not Be Dismissed.**

Johnson also asks the Court to dismiss the claims that Gilbert and Bilbrew assert against him and, in the alternative, asks for a stay pending arbitration. Once a court has determined that it will compel arbitration, the FAA provides for a stay of the action. 9 U.S.C. § 3. The Ninth Circuit has held, however, that Section 3 "does not preclude summary judgment when all claims are barred by an arbitration clause," and, thus, does not limit a court's authority to dismiss, rather than stay a case. *See Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988). Because the question of whether the Arbitration Provisions are enforceable is not yet resolved, the Court exercises its discretion to stay, rather than dismiss, Gilbert and Bilbrew's claims against Johnson.

As noted, Johnson put forth evidence that Malone did not obtain a loan from Cash Yes, and he asks the Court to dismiss the claims she asserts against him. Plaintiffs respond that this is a "disputed factual question" that "cannot be resolved in a motion to compel arbitration, instead of a motion for summary judgment." (Opp. Br. at 1 n.1.) However, Plaintiffs did not put forth any evidence to dispute the statements in the Rodriguez declaration, despite the fact that it would seem to be a fact about which Malone would have personal, and first-hand, knowledge. Accordingly, the Court HEREBY ORDERS Malone to show cause why the claims she asserts against Johnson, and any claims that rest upon the allegation that she obtained a loan from Cash Yes, should not be dismissed. Malone's response to this Order to Show Cause shall be due by no later than April 24, 2015.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Johnson's motion to compel arbitration, and it stays the claims asserted him by Gilbert and Bilbrew pending the outcome of the arbitration proceedings.

//

//

11

1  //

2  The Court FURTHER ORDERS that Johnson, Gilbert and Bilbrew shall file joint status
3  reports every 120 days to provide the Court with the status of the arbitration.

4  **IT IS SO ORDERED.**

5  Dated: April 8, 2015

   _____
   JEFFREY S. WHITE
   UNITED STATES DISTRICT JUDGE