EXHIBIT U

**LOAN AGREEMENT AND DISCLOSURES**
**Hamilton Liberty Inc. d/b/a BestChoice123.com**



Exhibit **37** for ID
Witness: _____
P._____ of _____ PP.
Lindsav Pinkham CSR 3716 CRR

Borrower's Name: charmaine aquino                                   Account#: 3923

In this Loan Agreement (hereinafter, the "Agreement") the words "you", "your" and "I" mean the borrower who has electronically signed it. The words "we", "us" and "our" mean Hamilton Liberty Inc. d/b/a BestChoice123.com ("Lender"), a lender registered and operating under the laws of St. Christopher and Nevis.

In order to complete your transaction with us, you must electronically sign this Agreement by (a) selecting a box below, (b) entering your name and social security number, and (c) clicking the "I Agree" button at the end of the Agreement, as well as any other "I Agree" buttons that may appear within the Agreement. We will then approve or deny the Agreement. If the Agreement is approved, it will be consummated as of 02/04/2013 (the "Disbursement Date"). We will use commercially reasonable efforts to effect a credit entry by depositing the proceeds from this Agreement into the bank account listed below in the Remotely Created Check/ACH Authorization Section (your "Bank Account") on the Disbursement Date. Unavoidable delays as a result of bank holidays, the processing schedule of your individual bank, the untimely receipt of pay stubs, if such pay stubs are required, inadvertent processing errors, "acts of God", and/or "acts of terror" may extend the time for the deposit. In the event that the disbursement is delayed, the Disbursement Date will automatically adjust to reflect the date when proceeds entered your Bank Account. You will have the option of rescinding the Agreement in accordance with the "RIGHT TO RESCIND" provision listed below, which describes, among other things, the time and manner within which notice of rescission must be given to be effective. Failure to give such notice as and when set out in the Right To Rescind provision will be deemed to constitute acceptance by you of the delayed Disbursement Date and the revised terms of the Agreement.

All terms of this Agreement remain in full force and effect until all amounts owed to us by you are paid in full, including those associated with any renewal transactions, as described below.

You promise to pay us the Total of Payments according to the terms of our disclosures set forth below on the date stated in the Payment Schedule below ("Payment Due Date"). You grant us a security interest in your Remotely Created Check/ACH Authorization in the amount of the Total of Payments (the "ECheck/ACH Authorization") which we may negotiate on the Payment Due Date or thereafter. You further promise to pay us all subsequent finance and other charges and other fees in accordance with this Agreement. No interest, fees or other charges are charged after the Payment Due Date except in the event of a "Renewal" as explained below. All payments will be applied first to interest then to fees or charges due us such as returned item charges, and then to principal. Both the amount of interest charged and rate thereof are set forth respectively in the Finance Charge and Annual Percentage Rate disclosures in this Agreement, which are subject to adjustment in the event of a delayed disbursement. Pursuant to the ECheck/ACH Authorization, you have directed us to initiate an ECheck/ACH debit entry from your Bank Account for the Total of Payments on the Payment Due Date or thereafter and for certain fees that may be assessed in the event of dishonor when presentment is made to your bank on your ECheck/ACH Authorization.

Hamilton Liberty Inc. d/b/a BestChoice123.com Loan Agreement and Disclosures          Page 2 of 13

The following disclosures are provided to you in order to allow you to compare the cost of your credit with credit provided under United States Law;

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit as a yearly rate.<br><br>995.45% | FINANCE CHARGE<br><br>The dollar amount the credit will cost you.<br><br>$210.00 | Amount Financed<br><br>The amount of credit provided to you or on your behalf.<br><br>$700.00 | Total of Payments<br><br>The amount you will have paid after you have made all payments as scheduled.<br><br>$910.00 |
|---|---|---|---|

**Security:** You are giving us a security interest in the ECheck/ACH Authorization.

**Payment Schedule:** Your Payment Schedule will be one (1) payment of $910.00 due on 02/15/2013 (your "Payment Due Date").

**Prepayment:** If you prepay your loan before the Payment Due Date, you will not be entitled to a refund of the unearned portion of the finance charge. See the terms of this Agreement for any additional information about nonpayment, prepayment refunds, and default.

**Itemization of Amount Financed:** Amount given to you directly: $700.00.

**Creditor: Hamilton Liberty Inc. d/b/a BestChoice123.com** is the creditor making these disclosures.

**(1) THIS LOAN IS DESIGNED AS A SHORT-TERM CASH FLOW SOLUTION AND NOT DESIGNED AS A SOLUTION FOR LONGER TERM FINANCIAL PROBLEMS. (2) ADDITIONAL FEES MAY ACCRUE IF THE LOAN IS RENEWED. (3) CREDIT COUNSELING SERVICES ARE AVAILABLE TO CONSUMERS WHO ARE EXPERIENCING FINANCIAL PROBLEMS.**

**CONSENT TO ELECTRONIC COMMUNICATIONS:** The following terms and conditions govern electronic communications in connection with this Agreement and the transaction evidenced hereby (the "Consent"). By electronically signing this Agreement, you agree that any notices we are required to make to you may be delivered to you electronically. You acknowledge and agree to the following terms and conditions of this Consent and that you have downloaded or printed a copy of this Consent for your records. You agree that;

- Any disclosure, notice, record or other type of information that is provided to you in connection with your transaction with us, including but not limited to, this Agreement, this Consent, the Loan Application, the Truth in Lending disclosures set forth in this Agreement, change-in-term notices, fee and transaction information, statements, delayed disbursement notices, notices of adverse action, state mandated brochures and disclosures, and transaction information ("Communications"), may be sent to you electronically by posting the information at our web site BestChoice123.com, or by sending it to you by e-mail.

- We will not be obligated to provide any Communication to you in paper form unless you specifically request us to do so.

- You may obtain a copy of any Communication by contacting us at cs@bestchoice123.com or by calling us at 800-528-8066. You also can withdraw your consent to ongoing electronic communications in the same manner, and ask that they be sent to you in paper or non-electronic form. If you choose to receive Communications in paper or non-electronic form, we may elect to terminate this Agreement and demand payment of the amount then due by the date of your withdrawal of consent, if any; or by the expiration of any minimum term mandated by law, whichever is later.

- You agree to provide us with your current e-mail address for notices at the e-mail address or phone number indicated above. If your e-mail address, telephone number(s), or residence address changes, you must send us a notice of the new address/telephone number(s) by writing to us or sending us an e-mail, using secure messaging, at least five (5) days before the change.

- In order to receive electronic communications in connection with this transaction, you will need a working connection to the Internet. Your browser must support the Secure Sockets Layer (SSL) protocol. SSL provides a secure channel to send and receive data over the Internet through HS encryption capabilities. Microsoft Internet Explorer 5.01+ and above support this feature. You will also need a printer connected to your computer to print disclosures/notices or have sufficient hard drive space available to save the information (e.g., 1 MB or greater). We do not provide ISP services. You must have your own Internet Service Provider.

- We may amend (add to, delete or change) the term of this Consent by providing you with advance notice.

**SECURITY:** As a courtesy to you, we have disclosed to you that our interest in the ECheck/ACH Authorization is a security interest because St. Christopher and Nevis law does not clearly address whether our interest in the ECheck/ACH Authorization is a "security interest."

**PAYMENT OPTIONS:** Your Total of Payments will be due on the Payment Due Date. You must confirm your intention to pay the Total of Payments on your Payment Due Date by contacting us at 800-528-8066 at least one (1) banking business day prior to your Payment Due Date. At that time, you may choose:

(a) Payment in Full: You may pay the Total of Payments shown above, plus any accrued fees, to satisfy your loan in full. When you contact us and choose this option, we will debit your Bank Account for the Total of Payments plus any accrued fees, in accordance with the ECheck/ACH Authorization below; OR

(b) Renewal: You may renew your loan (that is, extend the Payment Due Date of your loan until your next Pay Date¹) by authorizing us to debit your Bank Account for the amount of the Finance Charge, the underwriting fee, a principal payment of $20 and any accrued fees. You may also on the Payment Due Date, pay any amount over the Finance Charge, plus any accrued fees, to be paid towards the principal. If you choose this option, your new Payment Due Date will be your next Pay Date, and the rest of the terms of this agreement will continue to apply.

**RENEWALS:** If you fail to contact us to confirm your Payment Option as set forth above, we may automatically renew your loan as described under (b) above, and debit your Bank Account on the Payment Due Date or thereafter for the Finance Charge, the underwriting fee, a principal

payment of $20 and any accrued fees. Your new Payment Due Date will be your next Pay Date, and the rest of the terms of this Agreement will continue to apply. You must contact us at least one (1) banking business day prior to your new Payment Due Date to confirm your desired payment option for the Renewal Transaction if you do not wish to pay the Total of Payments. If you fail to contact us, or otherwise fail to pay the loan in full on your new Payment Due Date, we may at our discretion, automatically renew the loan until your next Pay Date All terms of this Agreement continue to apply to Renewal Transactions. All Renewals are made subject to our discretion. If you choose to renew your loan for any additional period after the Payment Due Date, you will be charged the Finance Charge and underwriting fee. Based upon the duration of the Renewal, the various loan period fee structures are: a 4-9 day term, a 10-27 day term, or a 28 to 38 day term. You will accrue new finance charges and underwriting fees with every Renewal of this loan.

**NOTICE:** YOU MUST CALL US AT LEAST ONE (1) BANKING BUSINESS DAY PRIOR TO YOUR PAYMENT DUE DATE AT 800-528-8066 TO FACILITATE THE PAYMENT OF YOUR LOAN IF YOU DO NOT WISH TO PAY THE TOTAL OF PAYMENTS.

**RETURNED ITEM FEE:** You agree to pay an insufficient funds fee of $30.00 if an item in payment of what you owe is returned unpaid, or if an ECheck/ACH debit entry, the authorization for which was not properly revoked by you, is rejected by your bank for any reason. If your payment is returned unpaid, you authorize us to make a one-time electronic funds transfer from your account to collect the returned item charge of $30.00.

**HOW INTEREST IS CHARGED:** Interest under this Agreement will be calculated on a simple interest basis and shall accrue at a daily rate of no more than 1/365 of the Annual Percentage Rate multiplied by the unpaid balance for each day that any amount remains due to Lender. Lower underwriting rates may be available for prior customers in good standing.

**BANKRUPTCY:** You certify to us that you are not a debtor under any proceeding in bankruptcy and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code.

**CONSUMER REPORTS:** You authorize us to obtain consumer reports about you prior to approving this Agreement and at any time that you owe us money under any Loan Agreement. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**CHECKS:** If you provide a check as a payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic funds transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

**REMOTELY CREATED CHECK/ACH AUTHORIZATION:** You hereby voluntarily authorize us, and our successors and assigns, including attorneys and third party collection agencies in the event of default, to initiate credit and debit entries via Automated Clearing House ("ACH"), remotely created check, electronic funds transfer or wire transfer to your Bank Account: Bank Routing Number: 322282001 and Bank Account Number: 400641199708, in accordance with this Agreement.

You agree that we will initiate a credit entry to your Bank Account for the Amount Financed on or about the Disbursement Date, either via ACH, remotely created check, electronic funds transfer, or

AQUINO004

wire transfer. You agree to be solely responsible for any charges incurred as a result of such incoming credit entry.

In the event that we utilize an ACH for payment on your loan, you authorize us to initiate an ACH debit entry to your Bank Account:

(a) for the Total of Payments plus any accrued fees on the Payment Due Date, or on any subsequent Renewal Payment Due Date, if you contact us and select Payment in Full (Payment Option (a) above);

(b) for the Finance Charge, a principal payment of $20, plus any accrued fees on the Payment Due Date, or on any subsequent Renewal Payment Due Date(s), if you contact us and select Renewal (Payment Option (b) above), or if you fail to contact us to confirm your payment option; and

(c) for any accrued Returned Payment charges, subject to this Agreement.

You agree that we may re-initiate a debit entry for the same or a lesser amount if the ACH debit entry is dishonored or payment is returned for any reason. The ECheck/ACH Authorizations set forth in this Agreement are to remain in full force and effect for this transaction until your indebtedness to us for the Total of Payments, plus any other charges or fees incurred and described in this Agreement, is fully satisfied. You may only revoke the above authorizations by contacting us directly at least three (3) business days prior to the Payment Due Date. If you revoke your authorization, you agree to provide us with another form of payment acceptable to us. Furthermore, your electronic signature on this Agreement reflects your intent to authenticate any demand drafts (also known as telechecks) created and deposited in connection with repayment of your loan. This authorization to create a demand draft or drafts on your behalf may NOT be revoked by you until such time as the loan is paid in full.

If any payment is returned unpaid, you authorize us to make a one-time electronic fund transfer from your account to collect a fee of $30.00. You voluntarily authorize us, and our successors and assigns, to initiate a debit entry to your Bank Account for payment of this fee. You further authorize us to initiate debit entries or create demand drafts as necessary to recoup the outstanding loan balance whenever an ACH transaction is returned to us for any reason. If your payment is returned to us by your financial institution due to insufficient funds or a closed account, you agree that we also may recover court costs and reasonable attorney's fees incurred by us.

You understand and agree that this ECheck/ACH Authorization is provided for your convenience, and that you have authorized repayment of your loan by ACH debits and/or demand drafts voluntarily. You agree that you may repay your indebtedness through other means, including by providing timely payment via money order directed to: BestChoice123.com P.O. Box 257, Main Street, Charlestown, Nevis or through the Credit/Debit Card Authorization provided below.

You authorize us to verify all of the information that you have provided, including past and/or current information. You agree that the ECheck/ACH Authorization herein is for repayment of a single payment loan, or for single payment of finance charges for Renewal transactions, and that these entries shall not recur at substantially regular intervals. If there is any missing or erroneous information in or with your loan application regarding your bank, bank routing and transit number, or account number, then you authorize us to verify and correct such information.

**CREDIT/DEBIT CARD AUTHORIZATION:** By signing this document below, you authorize us, and our successors or assigns, to charge any amounts owing under this Agreement to any credit/debit card that you provide to us for such purpose, in the event that any ACH debit entry, or

other payment method, is returned unpaid for any reason. This authorization will remain in full force and effect until either (1) all obligations under this Agreement have been satisfied or (2) it is cancelled, in writing, in such time as to give us and the card issuer reasonable opportunity to act upon it. Such cancellations shall be faxed to 877-752-5450 or e-mailed to cs@bestchoice123.com. If you choose to cancel this authorization, you agree to provide another payment method acceptable to us in our sole discretion.

**RIGHT TO RESCIND:** You may rescind this Agreement without cost or further obligation if you do so by 5:00 PM EST on the next business day following the Disbursement Date ("Rescission Deadline"). To rescind this Agreement, you must inform us in writing, by the Rescission Deadline, by either faxing notice to 877-752-5450 or e-mailing to cs@bestchoice123.com that you want to cancel this Agreement and that you authorize us to effect a debit entry to your Bank Account for the principal amount of the Agreement. In the event that we timely receive your written notice of rescission on or before the Rescission Deadline but before the loan proceeds have been credited to your Bank Account, we will not affect a debit entry to your Bank Account and both ours and your obligations under this Agreement will be rescinded. In the event that we timely receive your written notice of rescission on or before the Rescission Deadline but after the loan proceeds have been credited to your Bank Account, we will affect a debit to your Bank Account for the principal amount of the Agreement. If we receive payment of the principal amount via the debit, ours and your obligations under this Agreement will be rescinded. If we do not receive payment of the principal amount via the debit, then the Agreement will remain in full force and effect until all sums due and owing under this Agreement are repaid in full inclusive of interest and fees, if any.

**PREPAYMENT:** At any time after the Rescission Deadline defined above, you can prepay your obligations partially or in full before the Payment Due Date by contacting us at 800-528-8066, by sending us a fax to 877-752-5450 or sending an e-mail to cs@bestchoice123.com informing us that you want to make a prepayment and giving us authorization to effect a debit entry to your Bank Account for the prepayment. If we receive the prepayment via the debit, it will be applied first to fees and then to principal. Please be advised that by paying your loan off early you will not be entitled to a rebate of the unearned portion of your Finance Charge or underwriting fee.

**DEFAULT, GOVERNING LAW, ASSIGNMENT AND EXECUTION:** You will be in default under this Agreement if: (a) you provide false or misleading information about yourself, your employment, or your financial condition (including the bank account on which the electronic debit is drawn) prior to entering this Agreement; (b) you fail to make a payment by the Payment Due Date or if your payment is returned to us unpaid for any reason; or (c) any of the following things occur: appointment of a committee, receiver, or other custodian of any of your property, or the commencement of a case under the U.S. Federal Bankruptcy Laws by or against you as a debtor. This Agreement will be governed by the laws of St. Christopher and Nevis without regard to its choice of law rules, except that the arbitration provision is governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, as adopted by the United Nations Conference on International Commercial Arbitration. We may assign or transfer this Agreement or any of our rights hereunder. If this Agreement is consummated, then you agree that the electronically signed Agreement we receive from you will be considered the original executed Agreement, which is binding and enforceable as to both parties.

**WAIVER OF JURY TRIAL AND ARBITRATION PROVISION:** Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration

proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. We have a policy of arbitrating all disputes with customers, including the scope and validity of this Arbitration Provision and any right you may have to participate in an alleged class action. **THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

1. For purposes of this Waiver of Jury Trial and Arbitration Provision, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation: (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Agreement, the information you gave us before entering into the Agreement, including the customer information application, and/or any past agreement or agreements between you and us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

2. You acknowledge and agree that by entering into this Arbitration Provision:
(a) **YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;**
(b) **YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and**
(c) **YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.**

3. All disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. **THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.**

4. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: The International Chamber of Commerce (Telephone Number: 33-1-4953-2878)

http://www.iccwbo.org or The Jams Foundation (Telephone Number: 1-800-352-5267) http://www.jamsadr.com. The party receiving notice of arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You may obtain a copy of the rules and procedures by contacting the arbitration organizations listed above.

5. Regardless of who demands arbitration, at your request we will advance your portion of the arbitration expenses, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act, and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted by telephone via a toll-free conference line at a mutually convenient time, and Lender will pay the telephone costs for you. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence. If allowed by St. Christopher and Nevis statute or applicable St. Christopher and Nevis law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. If the arbitrator renders a decision or an award in your favor resolving the dispute, then you will not be responsible for reimbursing us for your portion of the Arbitration Fees, and we will reimburse you for any Arbitration Fees you have previously paid. If the arbitrator does not render a decision or an award in your favor resolving the dispute, then the arbitrator shall require you to reimburse us for the Arbitration Fees we have advanced, not to exceed the amount which would have been assessed as court costs if the dispute had been resolved by a St. Christopher and Nevis court with jurisdiction, less any Arbitration Fees you have previously paid. At the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award may be filed with any court having jurisdiction.

6. This Arbitration Provision is made pursuant to a transaction involving international commerce.

7. This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. This Arbitration Provision is binding upon and benefits us, our successors and assigns, and related third parties. This Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. This Arbitration Provision survives any cancellation, termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect.

8. The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim all or any part of this Agreement is void or voidable

9. You may opt-out of the Waiver of Jury Trial and Arbitration Provision within sixty (60) days of the date of this Agreement by contacting us in writing at P.O. Box 257, Main Street, Charlestown, Nevis, providing your name and loan number, and stating that you are opting out of the Waiver of Jury Trial and Arbitration Provision. Your letter must be received by us no later than sixty (60) days after the date of this Agreement. Your opt-out will only apply to this Agreement, and will not affect any other loans you have with us.

Your right to file suit against us for any claim or dispute regarding this Agreement is limited by the **WAIVER OF JURY TRIAL AND ARBITRATION PROVISION.**

**SMS STATEMENT NOTIFICATIONS DISCLOSURE:** This SMS Statement Notifications Disclosure ("Disclosure") applies to each account you have with Hamilton Liberty Inc. d/b/a BestChoice123.com for which you have elected to receive Short Message Service (SMS) messages.

As used in this Disclosure, "SMS Statement Notifications" means any SMS (text message) communications from us to you pertaining to your loan, sent to the phone numbers listed on your application and any other phone numbers you may supply to our customer service representatives, including but not limited to payment information, account information, due dates, delinquent accounts, program updates, promotions, coupons and other marketing messages.

1. How To Unsubscribe: You may withdraw your consent to receive SMS Statement Notifications by texting "STOP" to 800-528-8066 at any time. You may also withdraw your consent by changing you preferences on the Notification Settings page within BestChoice123.com. Alternatively, you may call us at 800-528-8066. At our option, we may treat your provision of an invalid mobile phone number, or the subsequent malfunction of a previously valid mobile phone number, as a withdrawal of your consent to receive SMS Statement Notifications. We will not impose any fee to process the withdrawal of your consent to receive SMS Statement Notifications. Any withdrawal of your consent to use SMS Statement Notifications will be effective only after we have a reasonable period of time to process your withdrawal.

2. To request additional information, contact us by telephone at 800-528-8066.

3. The services are available on the following carriers: AT&T, Verizon Wireless, T-Mobile, Sprint, Nextel, Dobson, U.S. Cellular, and Virgin Mobile. Additional carriers are added as they become available.

4. In order to access, view, and retain SMS Statement Notifications that we make available to you, you must have: (1) a SMS-capable mobile phone, (2) an active mobile phone account with a communication service provider; and (3) sufficient storage capacity on your mobile phone.

5. All SMS Statement Notifications in electronic format from us to you will be considered "in writing."

6. There is no service fee for SMS Statement Notifications but you are responsible for any and all charges, including but not limited to fees associated with text messaging, imposed by your communications service provider. Other charges may apply. Such charges may include those from your communications service provider. Please consult your mobile service carrier's pricing plan to determine the charges for sending and receiving text messages. These charges will appear on your phone bill. Message frequency depends on account settings.

7. Additionally, you agree that we may send any SMS Statement Notifications through your communication service provider in order to deliver them to you and that your communication services provider is acting as your agent in this capacity. You agree to provide a valid mobile phone number for these services so that we may send you certain information about your loan. Additionally, you agree to indemnify, defend and hold us harmless from and against any and all claims, losses, liability, cost and expenses (including reasonable attorneys' fees) arising from your provision of a mobile phone number that is not your own or your violation of applicable federal, state, or local law, regulation or ordinance.

Your obligation under this paragraph shall survive termination of this Agreement. SMS Statement Notifications are provided for your convenience only.

Receipt of each SMS Statement may be delayed or impacted by factor(s) pertaining to your communications service provider(s). We will not be liable for losses or damages arising from any disclosure of account information to third parties, non-delivery, delayed delivery, misdirected delivery or mishandling of, or inaccurate content in, the SMS Statement Notifications sent by us.

8. We may modify or terminate our text messaging services from time to time, for any reason, and without notice, including the right to terminate text messaging with or without notice, without liability to you, any other user or a third party. We reserve the right to modify these Terms of Use from time to time without notice. Please review these Terms of Use from time to time so that you are timely notified of any changes.

| FACTS | WHAT DOES Hamilton Liberty Inc. d/b/a BestChoice123.com DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| | |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also require us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and bank account information<br>• account balances and income<br>• payment history and credit history |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reason Hamilton Liberty Inc. d/b/a BestChoice123.com chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Hamilton Liberty Inc. d/b/a BestChoice123.com share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes - such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes - to offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | Yes | No |
| For our affiliates' everyday business purposes - information about your transactions and experiences | Yes | No |
| For our affiliates' everyday business purposes - information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

| To limit our sharing | • Call 800-528-8066<br><br>• Visit us on the web at BestChoice123.com<br><br>Please note:<br><br>If you are a new customer, we can begin sharing your information 30 days from the date you sent this notice. When you are no longer our customer, we continue to share your information as described in this notice. |
|---|---|

| | |
|---|---|
| **Questions?** | However, you can contact us at any time to limit our sharing. |
| | Call 800-528-8066 or go to BestChoice123.com. |

| **Who we are** | |
|---|---|
| Who is providing this notice? | Hamilton Liberty Inc. d/b/a BestChoice123.com is providing this privacy policy and it applies to all loans made by the company and all products and services offered in connection with such loans. |

| **What we do** | |
|---|---|
| How does Hamilton Liberty Inc. d/b/a BestChoice123.com protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| How does Hamilton Liberty Inc. d/b/a BestChoice123.com collect my personal information? | We collect your personal information, for example, when you<br><br>• Apply for a loan<br>• Give us your income information<br>• Tell us where to send the money<br>• Provide account information<br>• Provide employment information<br><br>We also collect your personal information from others, such as credit bureaus, affiliates or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only.<br><br>• sharing for affiliates' everyday business purposes - information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account. |

| **Definitions** | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• *Affiliates we share with can include other lenders.* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• *Nonaffiliates we share with can include other lenders and direct marketing companies.* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>• *Our joint marketing partners can include institutions such as other lenders or marketers.* |

| **Other important information** |
|---|
| **California residents** - California law requires financial institutions to obtain your consent prior to sharing information about you with non-affiliated third parties. Except as permitted by law, we will not share information we collect about you with non-affiliated third parties while you are a resident of California.<br>**Vermont residents** - Vermont law requires financial institutions to obtain consent prior to sharing personal, financial information about you with others. Except as permitted by law, we will not share information we collect about you with non-affiliated third parties or companies in our corporate family unless you call us at 800-528-8066 and authorize us to do so. |

Hamilton Liberty Inc. d/b/a BestChoice123.com Loan Agreement and Disclosures          Page 12 of 13

**Electronic Signature and Consents**

By signing below you acknowledge that this Agreement was filled in before you did so and that you have reviewed the entire document. You acknowledge that you have read, understand, and agree to all of the terms of this Agreement, including the provision entitled WAIVER OF JURY TRIAL AND ARBITRATION PROVISION and the PRIVACY POLICY. You agree to print or electronically save a copy of the completed Agreement for your records. You agree that the information you gave us prior to entering into this Agreement is accurate. You represent that you are not a debtor under any proceeding in bankruptcy.

By signing below you agree that your computer system meets the requirements set forth in the Consent to Electronic Communications above, and that you are able to access and print/save information presented at this website. You also agree to receive Communications from us electronically.

By signing below you agree that we will initiate ACH debits and credits to your Bank Account as described under the ECheck/ACH Authorization above. You agree that the debit entries authorized herein are for repayment of a single payment loan and shall not recur at substantially regular intervals. You agree that this ECheck/ACH Authorization is subject to our approval of the Agreement.

By signing below you agree that your loan may at our discretion be renewed as described under RENEWALS above, without additional notice to you. You authorize us to initiate debit entries to your Bank Account for Renewal transactions as described above. You agree that you may receive no prior notice of Renewal.

By signing below you agree that, in the event that any ACH debit entry or other payment is returned unpaid, we may charge any and all amounts owing under the terms of this Agreement to the Credit/Debit Card that you provide for such purpose, as described in the CREDIT/DEBIT CARD AUTHORIZATION section of this Agreement.

By signing below you acknowledge that you are not required to consent to receive funds or repay your loan by ACH transaction. If you authorize us to affect ACH debit and credit entries for this loan and for renewal transactions, you also agree that the ECheck/ACH and Credit Card Authorizations set forth in this Agreement are to remain in full force and effect for this transaction until your indebtedness to us for the Total of Payments, plus other fees or charges incurred, is fully satisfied. You may only revoke the above authorizations by contacting us directly. If you revoke the above authorizations, we will require you to satisfy your indebtedness through another means of payment acceptable to us.

By signing below you authorize us to verify all of the information that you have provided, including past and/or current information. You certify that you have made or will make all payments on any previous loans with Lender, and you agree that Lender may cancel this loan if any payment on previous loans is not made or is returned unpaid. You agree that we may obtain information about you and your Bank Account from your bank and/or consumer reporting agencies and other services until all amounts owing pursuant to this Agreement are paid in full. If there is any missing or erroneous information in or with your loan application regarding your bank, bank routing number, or account number, then you authorize us to verify and correct such information.

Hamilton Liberty Inc. d/b/a BestChoice123.com Loan Agreement and Disclosures          Page 13 of 13

U.S. Federal law provides important protections to active duty members of the Armed Forces and their dependents. To ensure that these protections are provided to eligible applicants, we require you to acknowledge ONE of the following statements:

⦿ **I AM NOT a member of the military or the spouse/dependent of a military member.** Specifically, I AM NOT, or I AM NOT the spouse or dependent of, a regular or reserve member of the Army, Navy, Marine Corps, Air Force, or Coast Guard, serving on active duty under a call or order that does not specify a period of 30 days or fewer, or serving on Active Guard and Reserve Duty. (Dependents include the member's spouse, child under the age of eighteen years old or any individual for whom the member provided more than one-half of their financial support for 180 days preceding today's date.)

**--OR--**

◯ **I am a member of the military or the spouse/dependent of a military member.** Specifically, I AM, or I AM the spouse or dependent of, a regular or reserve member of the Army, Navy, Marine Corps, Air Force, or Coast Guard, serving on active duty under a call or order that does not specify a period of 30 days or fewer, or serving on Active Guard and Reserve Duty. (Dependents include the member's spouse, child under the age of eighteen years old or any individual for whom the member provided more than one-half of their financial support for 180 days preceding today's date.)

By entering your name and social security number, and clicking the "I Agree" button below, you are electronically signing this document. You agree that this electronic signature has the full force and effect of your physical signature and that it binds you to this Agreement in the same manner a physical signature would do so.

**Borrower Name:**   Charmaine B. Aquino
**Borrower Social Security Number:** ██████████

1 The term "Pay Date" refers to the next time following the Payment Due Date that you receive regular wages or salary from your employer.

EXHIBIT V

# CONSUMER LOAN AND ARBITRATION AGREEMENT

**Exhibit 38** for ID

Witness: [handwritten] ___ of ___ PP
Lindsay Pinkham CSR 3716 CRR

| Lenders | VIP PDL Services, LLC | Borrower: | CHARMAINE AQUINO |
| | | | GARDENA, CA 90249 |
| Mailing Address | Apartado Postal 1459-1200 San Jose, Costa Rica | Borrower's Bank: | SCHOOLSFIRST FEDERAL CREDIT UNION |
| Telephone: | 8665981300 | Bank Account Number: | 4005411990708 |
| Fax Number: | 8664240877 | Loan Number: | 5479135 |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | Finance Charge The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total Of Payments The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 612.799% | $150.00 | $500.00 | $650.00 |

**PAYMENT SCHEDULE.** Your payment schedule will be one payment of $650.00 due on March 1, 2013 ("Payment Due Date"). On the due date, your loan will automatically be extended for an additional equal term unless you notify us that you decline such an extension. You must notify us that you decline such an extension by telephoning us, toll-free, at 8665981300, at least three business days prior to the maturity of your loan. If your loan is automatically extended, you will pay the finance charge of $150.00 only on March 1, 2013. You will accrue new finance charges with every extension of your loan. On your fifth extension and every extension thereafter, your loan principal must be paid down by 5% of the original principal. This means on your payment date your bank account will be debited by 5% of the original principal, plus the applicable finance charge.

**SECURITY.** This loan is unsecured.

**PREPAYMENT.** If you repay this loan early, you will not have to pay a penalty and you will not be entitled to a refund of any portion of the finance charge. See Agreement below for additional information about non-payment, default and any required repayment in full before the scheduled date.

You promise to pay to the order of Lender, in Charlestown, Nevis, West Indies, any and all sums due hereunder. In this Agreement, the terms "Lender," "we," "our" and "us" means VIP PDL Services, LLC. "You" and "your" mean the borrower specifically referenced in this Agreement. In consideration of our providing you a loan, you agree to all terms of this Agreement.

1. **AUTHORIZATION.** You represent that all account and other information provided by you are correct. You agree not to close the account on which payment is due. If your check, bank draft, EFT or ACH transaction is returned for insufficient funds, we will charge you an additional $25 each time it is returned. You authorize us or any collection agency which we designate to collect all amounts owing hereunder, including without limitation all collection agency fees, through the use of one or more checks, bank drafts, EFT or ACH transactions. You agree and consent to telephones contact by the lender, its agents and third-party collectors including the use of automatic telephone dialing systems or autodialers. This includes cellular, home and work telephone numbers, as well as any other telephone number you have provided in conjunction with this loan. You understand and agree that this right does not constitute a security interest. You may make different payment arrangements with us at the time you enter into this Agreement if you do not wish to use an EFT or ACH transaction. You authorize us to obtain your credit information from consumer credit reporting agencies. Collection and use of bank account information: If we extend credit to a consumer, we will consider the bank account information provided by the consumer as eligible for us to process payments against. In addition, as part of our collection collection process, we may detect additional bank accounts under the ownership of the consumer. We will consider these additional accounts to be part of the application process.

2. **FUNDS TRANSFER.** Lender makes loan proceeds available on the business day following the date of this transaction without additional charge. If, at your election made before 2:00 p.m. Eastern Time on a business day, you request that loan proceeds be made available on the same day, a wire transfer fee of up to $20, payable to Lender's U.S. administrator, will be imposed; this fee will be deducted from the loan proceeds.

3. **LOAN EXTENSION.** Upon any extension of the term of this loan, the new maturity date will be a date set by Lender which will be approximately two weeks following the previous maturity date. The finance charge for the extended term, and for and for any additional extended term thereafter, will be $30 per $100 of loan principal.

4. **RECISSION.** You have the right to rescind this Agreement without incurring any fee if the amount borrowed, in full, is returned to us on or before the close of business of the business day following the day on which such sum was delivered to you.

5. **ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL.** (a) Arbitration is a process in which persons with a dispute: (i) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (ii) agree, instead, to submit their disputes to a neutral third person (an arbitrator) for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision.

(b) YOU ACKNOWLEDGE AND AGREE AS FOLLOWS: For purposes of this Agreement, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (i) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Agreement, the validity and scope of this Agreement and any claim or attempt to set aside the Agreement; (ii) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Agreement, the information you gave us before entering into this Agreement, including the Customer Application, and/or any past agreement or agreements between you and us; (iii) all counterclaims, cross-claims and third-party claims; (iv) all common law claims based upon contract, tort, fraud, or other intentional torts; (v) all claims based upon a violation of any state or federal constitution, statute or regulation; (vi) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (vii) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (viii) all claims asserted on your behalf by another person; (ix) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (x) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

(c) By entering into this Agreement: (i) YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; (ii) YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and (iii) YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

(d) Except as provided in Paragraph 5(f) below, all disputes including any Representative Claims against us and/or related third parties, shall be resolved by binding arbitration only on an individual basis with you. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.

(e) Any party to a dispute, including related third parties, may send the other party written notice by certified or registered mail, return receipt requested, of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879, http://www.adr.org), or JAMS (1-800-352-5267, http://www.jamsadr.com). However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration will respond in writing by certified or registered mail, return receipt requested, within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or us demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitration organization. The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Agreement, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

(f) You (not us) have the sole and unfettered right to reject arbitration as a means of resolving disputes at any time within seven (7) days following your signature on this Agreement. You choose to not to be bound by it, then you can reject arbitration by giving notice of rejection of arbitration by certified or registered mail, return receipt requested, to Lender at its address for notices specified in this Agreement, postmarked within seven days following your signature hereon. No particular form of notice is required. You cannot reject arbitration after the seventh day following the date of your signature on this Agreement.

(g) If you demand arbitration, then at your request we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). If related third parties or we demand arbitration, then at your written request we will advance your portion of the Arbitration Fees. Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, or within 30 miles from such county, or in the county in which the transaction under this Agreement occurred, or in such other place as shall be ordered by the arbitrator. The arbitrator may decide with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration, the arbitrator shall not apply any federal or state rules of civil procedure or evidence. If the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award may be filed with any court having jurisdiction. If allowed by statute or applicable law, the arbitrator may award you statutory damages and/or your reasonable attorneys' fees and expenses. Regardless of whether the arbitrator renders a decision or an award in your favor resolving the dispute, you will not be responsible for reimbursing us for your portion of the Arbitration Fees.

(h) If, after finding in your favor in any respect on the merits of your claim, the arbitrator issues you an award that is greater than the value of Lender's last written settlement offer made before an arbitrator was selected, then Lender will: (a) pay you the amount of the award of $10,000 ("the alternative payment"), whichever is greater, and (b) pay your attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses (including expert witness fees and costs) that your attorney reasonably accrues for investigating, preparing and pursuing your claim in arbitration ("the attorney premium"). If Lender did not make a written offer to settle the dispute before an arbitrator was selected, you and your attorney will be entitled to receive both the alternative payment and the attorney premium if the arbitrator awards you any relief on the merits. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees, expenses, and the alternative payment and the attorney premium at any time during the proceeding and upon request from either party made within 14 days of the arbitrator's ruling on the merits. The right to attorneys' fees and expenses discussed in this paragraph supplements any right to attorneys' fees and expenses you may have under applicable law. Thus, if you would be entitled to a larger amount under the applicable law, this provision does not preclude the arbitrator from awarding you that amount. However, you may not recover under applicable law [illegible]

(i) All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute that cannot be adjudicated within the jurisdiction of a small claims tribunal shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

(j) This Agreement is made pursuant to a transaction involving commerce and shall be governed by the United States Federal Arbitration Act ("FAA"). If a final non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of Nevis, West Indies.

This Agreement is binding upon and benefits both parties respective heirs, successors and assigns. The arbitration and class action waiver provisions of this Agreement continue in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The arbitration and class action waiver provisions survive any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing.

6. Notices. Except as otherwise provided in the Agreement, you specifically agree that all notices required to be sent to you are effective when mailed or delivered to your last known mail or e-mail address as identified in our records. You agree that we may send or provide by electronic communication any notice, communication, disclosure amendment or replacement to the Agreement. All notices to us should be forwarded to VIP PDL Services, LLC, Apartado Postal 1459-1200, San Jose, Costa Rica, or faxed to (866) 424-0877.

7. Governing Law. This Agreement is made and accepted in Nevis, and shall be governed by the law of Nevis, without regard to its choice of law rules, except that the arbitration provisions will be governed by the FAA. This governing law provision applies no matter where you reside.

8. General. The parties do not intend the benefits of this Agreement to inure to any third party, and nothing contained herein shall be construed as creating any right, claim or cause of action in favor of any such third party. If any part of this Agreement is found invalid, the rest of the Agreement still remains valid and enforceable. You may not assign the Agreement to any other party. We may assign the Agreement or delegate any or all of our rights and duties under the Agreement to any third party without notifying you. No delay or omission by us in exercising any rights or remedies hereunder shall impair or waive such right or remedy.

9. Wireless Policy. By opting-in you are providing consent to use personal information to provide the services you've requested, including services that display customized content and advertising. Your provider's Msg & Data Rates may apply to our confirmation and all subsequent SMS messages. You may opt-out and remove your SMS information by sending "STOP", "END", "CANCEL", "UNSUBSCRIBE" or "QUIT" to the SMS text message you have received. If you remove your SMS information from our database, your number will no longer be used for secondary purposes, disclosed to third parties and used by us for third parties to send promotional correspondence to you.

Data obtained from you in connection with this SMS service may include your name, address, cell phone number, your provider's name, the date & time, and content of your messages. We will not be liable for any delays in the receipt of any SMS messages, as delivery is subject to effective transmission from your network operator SMS message services are provided on an AS IS basis. To view our Terms & Conditions visit www.iptoday.com/privacy.html or call our Toll-free 24-hour Opt-in Opt-out line 1-877-314-1139.

For help, email us at customerservice@theviploanshop.com or call 8665981100. Request help, get contact information or additional information regarding our texting services anytime from your mobile device by replying with the word "HELP" to the message you receive.

10. Entire Agreement. This Agreement constitutes the entire agreement between us and supersedes all prior agreements, understandings, statements or proposals, and representations, whether written or oral. This Agreement, including the provisions of this Section, may not be modified except by written amendment signed by both parties.

**BY SIGNING BELOW, YOU AGREE THAT YOU HAVE READ AND UNDERSTOOD ALL THE TERMS OF THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, THE AGREEMENT TO ARBITRATE ALL DISPUTES AND NOT TO PARTICIPATE IN CLASS ACTION.**

---

(step 1 of 3)
CHARMAINE AQUINO
CHARMAINE AQUINO (Signed: February 11, 2013)
Please wait while page refreshes after each signature.
Date: February 11, 2013          Contract: 5479133

---

**ACH AUTHORIZATION**

You authorize Lender to initiate credit and debit entries to the bank account indicated below for all amounts owing in connection with this Agreement in accordance with the section titled Authorization below, including without limitation all principal amounts, finance charges, service fees, returned item fees and collection agency fees. This authorization shall remain in full force and effect until Lender has received a written notice of termination from You in such time and manner as to afford Lender a reasonable opportunity to act upon it.

(step 2 of 3)

| Your ABA Number: 322282001 | Signature: CHARMAINE AQUINO |
| Your Account Number: 4000411199708 | CHARMAINE AQUINO (Signed: February 11, 2013) |
| | Date: February 11, 2013 |
| | Please wait while page refreshes after each signature |

(step 3 of 3)
Log into your account to see your loan information

---

EXHIBIT W



Witness: _____ Exhibit **39** for ID
P_____ of _____ PP.
Lindsay Pinkham CSR 3716 CRR

Consumer Loan Agreement # 000611543-00

Dollar Premier
c/o ABJT Funding, LLC
2150 South 1300 East, Suite 500
Salt Lake City, UT 84106

## PROMISSORY NOTE AND TRUTH IN LENDING DISCLOSURES

### Borrower's Information:

**Lender:** Dollar Premier

**Borrower's Name:** Charmaine Aquino

**Origination Date:**
2/13/2013

**Due Date:**
3/1/2013

**Borrower's SSN:**
████████

**Borrower's Address:**
██████████████
GARDENA, CA 90249

**Borrower's Bank:**
SCHOOLSFIRST FEDERAL CREDIT UNION

**Borrower's Checking Account Number:**
**********9708

**Borrower's Bank Routing Number:**
322282001

In this Consumer Loan Agreement ("Loan Agreement"), the words "I", "you" and "your" mean the borrower identified above. The words "we," "us", "our" and "Lender" mean Dollar Premier, licensed and regulated by the Utah Department of Banking.
Loan Description:

### Federal Truth-In-Lending Disclosures

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 684.375 % | $150.00 | $500.00 | $650.00 |

Effective Date: 2/13/2013     Today's date: 2/12/2013

PAYMENT SCHEDULE:
One payment of $650.00 on 3/1/2013
Security: You are giving a security interest in your ACH debit.
LATE CHARGE: If you do not make your payment as scheduled, we may continue to charge interest on the past due amount at the annual percentage rate noted in the Loan Description section of this agreement
PREPAYMENT: If you pay off early, you will be entitled to a refund of unearned interest.
See your Loan Agreement for any additional information about nonpayment, default and prepayment refunds.

Loan Description        $500.00
Itemization of Amount Financed of

(1) THIS LOAN IS DESIGNED AS A SHORT-TERM CASH FLOW SOLUTION AND NOT DESIGNED AS A SOLUTION FOR LONGER TERM FINANCIAL PROBLEMS.
(2) ADDITIONAL FEES MAY ACCRUE IF THE LOAN IS ROLLED OVER.
(3) CREDIT COUNSELING SERVICES ARE AVAILABLE TO CONSUMERS WHO ARE EXPERIENCING FINANCIAL PROBLEMS.
-----------------------------------------------------------------------------------------------------------
Thank you for your business.
Dollar Premier, the creditor is herein primarily referred to as the "Lender". This transaction will be deemed to have taken place in the State of Utah and governed by the statute of Utah in all aspects thereof, regardless of where you have viewed, accepted, and submitted the Loan Agreement. This contract is neither a guarantee of a loan nor approval of the same. Upon approval and at the time of funding, this contract becomes binding. If for any reason, your bank or financial institution refuses or dishonors your check, draft(s), or electronic debit(s), on or after the above listed "Due Date", there shall be a twenty dollar ($20.00) charge per check, draft or electronic debit. The borrower hereby agrees to be responsible for any cost of collection the Lender may incur as a result of dishonored check(s) draft(s), or electronic debit(s). This Loan Agreement is governed by Utah law, except where federal laws may apply. You hereby authorize the Lender to initiate electronic debit and credit entries into your bank account, in whole or in part, as indicated in the "Total of payments" box above. You also authorize the Lender to prepare and submit on your behalf a check (draft) drawn against your account in the amount of the payment due to the Lender.

The Lender will not grant a rollover unless the borrower requests it. You may be allowed rollovers or extensions of the term of a loan but in any event the loan may not be rolled over beyond the ten (10) week period from which the initial loan documents are executed. The loan must be paid in full prior to issuance of a new loan. Service of legal process can be made on VanCott, Bagley, Cornwall & McCarthy, c/o Tom Billings, 36

AQUINO045

of at least $5 on the principal ... it on the deferred deposit loan without incurring additional charges above the charges provided in the written contract and/or (2) may rescind the deferred deposit loan on or before 5 p.m. of the next business day without incurring any charges and/or (3) may be eligible to participate in an Extended Payment Plan with Lender.

If you choose to refinance your loan, you will incur a new finance charge. You may refinance your loan on its due date by (a) paying only the Finance Charge shown in the Federal Truth in Lending Disclosures, and (b) agreeing to pay the Total of Payments shown in the Federal Truth in Lending Disclosures on a date fourteen days after the due date shown in this Loan Agreement.

ACH AUTHORIZATION: You hereby voluntarily authorize us, and our successors and assigns, to initiate automatic credit and debit entries to your bank account listed above. You agree that we will ACH debit your bank account on the Due Date, for the Total of Payments or the Finance Charge if you are refinancing the loan, and debit for the same amount if the ACH entry is dishonored. If these are insufficient funds on deposit in your bank account on the Due Date, you agree to pay us a $20.00 NSF fee, and you hereby voluntarily authorize us, and our successors and assigns, to collect this fee, if it becomes due, by ACH/EFT debit entry to your bank account. You agree that we may electronically debit your account listed above on or after the due date until this loan is paid in full. You acknowledge that the origination of and ACH/EFT to your account must comply with state and federal laws. This ACH/EFT authorization is to remain in full force and effect until Lender has received written notification from you of its termination at the address at the top of the first page of this Loan Agreement, in such time as to afford Lender and the depository reasonable opportunity to act on it. Once you have revoked this ACH/EFT authorization, Lender will stop all future debit entries until you have executed a new authorization. If you revoke ACH/EFT authorization, such termination will not constitute an event of default under this Loan Agreement and will not adversely affect Lender's decision to extend credit to you in the future. You understand and agree that this ACH authorization is provided for your convenience and that you have authorized repayment of your loan by ACH/EFT debits voluntarily. You agree that you may repay your indebtedness through other means, including by providing timely payment via cashiers check directed to Lender at the above address.

ACH Authorizations to Collect Debt upon Default: You authorize us to withdraw from your bank account the amount you owe us according to this or any former Agreement. We may make this withdrawal by re-presenting your check electronically, and/or by using one or more in varied amounts paper or ACH/EFT debits not to exceed the amount owed to us. Your ACH/EFT debit authorization extends to the bank account listed on your original check or any other bank account maintained by you wherever located. If you provide us with a Visa or MasterCard check, debit or credit card (collectively the "Card") you also authorize us, denoted by your signature on this Agreement, to charge, submit and collect all amounts due to us. We may submit these charges to your Card one or more times until the total amount owed to us is paid in full. Your authorization to ACH/EFT and to charge your Card will remain in full force and effect until you terminate it by giving us written notice to the address listed on this Loan Agreement and until we have had a reasonable opportunity to act on your notice. We may require repayment of loans by preauthorized electronic transfers. You voluntarily authorize the above collection of the total of payments by electronic means from your bank account and Card. You may withdraw such voluntary consent by writing to us at our business address set forth above.

By electronically signing below, you are hereby acknowledging that you are providing your electronic signature and agreement to, and acknowledging that you have received, read, and understood the above two ACH AUTHORIZATIONS paragraphs.

## Charmaine Aquino

### Additional Terms:

This Loan Agreement is made after Lender's acceptance of its terms at Lender's offices in Utah, and upon Lender's funding of your loan from Lender's Utah bank account(s). Your loan is payable to Lender's bank account(s) in Utah. You certify that the information given in connection with this Loan Agreement is true and correct. You authorize us to verify the information in the Loan Agreement and hereby give Lender consent to obtain information on you from a consumer reporting agency or other means. You authorize Lender, its attorneys, and third parties to share information with respect to the application, processing, servicing and collection of the Loan Agreement in accordance with applicable law. You hereby grant Lender express written consent to communicate with you by any telephone (home, work or mobile), SMS text messages, automatic dialer, Email and any other electronic forms of communication.

DUE DATE: The Total of Payments set forth in the Federal Truth in Lending Disclosures is due in full in accordance with the Payment Schedule set forth in the Federal Truth in Lending Disclosures. You may have the option to refinance your loan before you must begin to pay down the principle. If you refinance, we will not debit your account for the Total of Payments, but will instead debit your account in the amount of the Finance Charge set forth in the Truth in Lending Disclosures. You will then owe the Total of Payments fourteen days later.

METHOD OF PAYMENT: You agree that we may electronically debit (ACH Debit) your account on or after the due date until paid in full if you have not paid us in cash or by cashier's check, money order, or other immediately available funds the amount of the Total of Payments on the due date. If payment is made prior to the electronic debit, we will cancel the scheduled repayment at the due date or you next pay period.

PREPAYMENT: In addition to your Right of Rescission (as defined below), you may prepay in full, at any time, the amount due and will not incur an additional charge, fee or penalty. The Finance Charge is earned on a daily basis from the Origination Date to the date of prepayment. The daily rate will be calculated by taking the original Finance Charge and dividing it by the number of days in the loan. No refund or credit of an amount less than $1.00 will be made.

EXTENDED PAYMENT PLAN: An extended payment plan ("EPP") may also be available to You upon your request. An EPP is available once in a 12 month period and must be entered into You and the Lender in a separate writing.

DEFAULT: You will be in default under this Loan Agreement if: (a) you provide false or misleading information about yourself, your employment, or your financial condition (including the account on which the electronic debit is drawn) prior to entering this Agreement, (b) a case is commenced under the Federal Bankruptcy Laws by or against you as a debtor; or (c) you fail to pay Lender any amount owed under this Loan Agreement.

EXCHANGE OF CREDIT INFORMATION: You authorize Lender to share information in connection with the application, processing, funding, servicing, repayment and collection of your loan.

CONSEQUENCES OF DEFAULT: If your electronic debit (not associated with a payment plan under Utah Code 7-23-403) is returned to Lender for any reason unpaid from your financial institution, we may collect a returned item fee not to exceed $20 per returned ACH transaction. Lender may re-present the item electronically until paid in full. Lender may pursue all legally available civil means to collect amounts owed to it under this Loan Agreement.

INTEREST AFTER MATURITY: If you do not make your payment as agreed, Lender may continue to charge interest on the past due amount at the annual percentage rate noted in the Loan Description section of this Agreement.

CUSTOMER'S BANK CHARGES: You will not hold Lender or its agents responsible for initiating any automatic debits to your bank account listed above, or for any fees you must pay as a result of any automatic debits being presented at your bank in connection with this Loan Agreement.

ELECTRONIC SIGNATURES: You acknowledge and agree that when you sign your name in this Loan Agreement or by electronically signing, you are providing your electronic signature on this document. By electronically signing this document, you are agreeing to all the terms and conditions set forth in the Agreement, and certifying that all information you have provided in connection with this transaction is complete and accurate. You agree that your electronic signature shall have the same force and effect, and shall bind you to this Loan Agreement in the same manner and to the same extent as a physical signature would do, in accordance with the Electronic Signatures in Global and National Commerce Act ("ESIGN"), applicable similar state law provisions and the Uniform Commercial Code ("UCC") to the extent applicable. You also agree that this Loan Agreement and all related documents are electronic records and that, as such, they may be transferred, authenticated, stored, and transmitted by electronic means.

GOVERNING LAW: This Loan Agreement is accepted by Lender upon Lender's funding of your loan from Lender's bank account(s) in the State of Utah, and all actions taken by Lender in relation to the loan are taken at Lender's office(s) in the State of Utah. Accordingly, the laws of the State of Utah shall apply to this transaction regardless of where you may be viewing or accessing this site and/or document, except that the Waiver of Jury Trial and Arbitration Agreement shall

be governed by the Federal Arbitration Act (Title 9 of the U.S Code)

ARBITRATION: All disputes of whatever nature in connection with this agreement, including all issues of arbitrability except for the purposes of collections, shall be settled by binding arbitration under the rules and auspices of the American Arbitration Association, or such other arbitration association regulated to do business in Utah upon which the parties mutually agree in writing. The arbitration decision shall be final and binding and shall not be subject to trial. Judgment on the arbitration decision may be entered in any court of competent jurisdiction. Unless otherwise requested by both parties in writing, all arbitration proceedings shall take place in Utah and shall be presided over by a single arbitrator. The arbitration shall be authorized and empowered to award Injunctive and non-monetary relief, and to award punitive damages as provided by Utah law allowing such damages in court decisions. Statutes of limitation, estoppels, waiver, laches and similar doctrines, whether raised in court or arbitration shall be binding on the parties. "Commencement" occurs on the date of notice of demand for arbitration is served upon the other party. This arbitration provision constitutes a voluntary arbitration agreement under the Utah Uniform Arbitration Act (Title 78B, Chapter 11) intended to exempt the parties from mandatory court referred proceedings. This arbitration provision continues in full force and effect, even if your obligations have been paid, or discharged through bankruptcy and survives rescission, termination, amendment, expiration or performance of any transaction between you and us.

**You acknowledge and agree that by entering into this Arbitration Provision:**
(1) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;
(2) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE AGAINST US OR RELATED THIRD PARTIES; AND,
(3) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

By electronically signing below, you are hereby acknowledging that you are providing your electronic signature and agreement to, and acknowledging that you have received, read, and understood the above ARBITRATION paragraph and three points stated above.
        Charmaine Aquino

Your Right of RESCISSION. We will rebate and refund to you the fee we have earned if at any time prior to 5:00pm on the business day immediately following the date of the execution of this Loan Agreement, you prepay to us in cash the Amount Financed as stated above in full satisfaction of your obligations under this Loan Agreement. Thereby, you may rescind this transaction by 5:00pm of the following business day of the execution of this Loan Agreement at no cost

OUR PRIVACY POLICY: We do not sell or share identifiable personal information with entities outside our circle of companies and associates. We have posted policies regarding the security and privacy of your personal and financial information. You do not have to do anything to prevent sharing of your nonpublic personal information. Our employees and associates sign confidentiality statements protecting your personal information. We collect information to service your account and grant credit to you. We contract with various outside consumer-reporting services to verify the information you have given us when permitted by law. These companies assist us in fulfilling your service request/ processing your transaction and sending us account information and status. If we extend credit to you, we will consider the bank account information provided by the consumer as eligible for us to process payments against. In addition, as part of our information collection process, we may detect additional bank accounts under your ownership. We will consider these additional accounts to be part of the application process. We may provide information to credit bureaus, subpoenas and state and federal audits and the sale of your account to another financial institution as provided by law. If you find that your account information is out of date, inaccurate or incomplete, please call, write, or send an e-mail to us and we will promptly update or correct your erroneous information

**Federal law provides important protections to active duty members of the Armed Forces and their dependents. To ensure that these protections are provided to eligible applicants, we require you to certify the statement below if it is applicable to you:**

I am currently NOT a regular or reserve member of the Army, Navy, Marine Corps, Air Force, or Coast Guard, ("Armed Forces") serving on active duty under a call to order that does not specify a period of 30 days or fewer or a dependent of a member of the Armed forces on active duty. A dependent of a member of the Armed Forces on active duty as described above is the member's spouse, the member's child under the age of eighteen years old; or an individual for whom the member provided more than one half of his/her financial support for 180 days immediately preceding today's date.

☑ **By checking this box I hereby certify that the above statement is true and I am not in the Armed Forces as described above.** *[NOTE: If you do not agree with above statement, do not check the box and do not sign or submit the agreement]*

Warning: It is important to fill out this form accurately. Knowingly making a false statement on a credit application is a crime

*By electronically signing this Loan Agreement you acknowledge that you have read, understand, and agree to all of the terms and conditions of this Loan Agreement, specifically including but not limited to, the ACH AUTHORIZATIONS AND ARBITRATION SECTIONS ABOVE. You further acknowledge that this Loan Agreement contains all of the terms of the Loan Agreement and that no representations or promises other than those contained in this Loan Agreement have been made. You also further acknowledge that this Loan Agreement was filled in before you signed it, and that you have received a completed copy of it.*

SIGNATURE

Your Full Name:                                                    Date:

Charmaine Aquino                                                  2/12/2013

**Dollar Premier**
**Office: 800-355-6382**
**Fax: 866-735-3413**

This contract only becomes binding upon approval and funding.
We will attempt to redeem your direct deposit by 10am on your due date.
Please call us if other arrangements need to be made. We want to work with you.
However, to do so you must call us the day before your due date.

# EXHIBIT X



Terms and Conditions

# Advance Me Today - Terms and Conditions

## GENERAL

Remember this is a short term loan designed to help with your immediate cash needs. It will not solve your long term needs and refinancing will result in additional charges. Advance Me Today encourages you to (1) borrow only what you need and can repay on your next payday, (2) refinance your loan only after you have reduced the principal as much as possible, and (3) shop the marketplace until you are convinced that you have found the best possible solution. You may choose to consult a consumer credit counseling service for other options.

You acknowledge and agree payments must be received by lender on or before the Payment Due Date.

Unless you notify the Lender a payment has been mailed, or you have made alternate payment arrangements, Lender must initiate an ACH debit entry to your Bank Account for the scheduled payment the business day prior to the Payment Due Date in order for the funds to be received by Lender on the Payment Due Date.

If you make a payment by mail, and the payment has not been credited to your loan by Lender prior to 2:00 Central time on the business day prior to your Payment Due Date, you should notify the Lender to avoid Lender processing an ACH debit entry and receiving amounts owed in the mail for the same scheduled payment.

If Lender receives a payment sent in the mail after the ACH debit entry has been processed, Lender will retain the payment received in the mail until the ACH debit entry has cleared your Bank Account.

## PRIVACY

This loan application shall be governed by the Advance Me Today Privacy Policy.

## GOVERNING LAW

The transactions related to your loan shall be deemed to have taken place in the offices of Advance Me Today in the country of Costa Rica, and the laws of the Costa Rica shall apply to these transactions regardless of where you may be viewing or accessing this site.

## APPLICATION VERIFICATION

You give Advance Me Today ("Lender," "Advance Me Today") and Payday Service (the "Service")) consent to obtain information on you from a consumer reporting agency or other means available including, but not limited to Tele Track and Accurint. You agree to and authorize such a search. You understand that Advance Me Today may not fund your loan if it cannot successfully verify all of your application information.

## AGREEMENT

You certify that the information supplied by you on this website to be true and correct. You authorize Advance Me Today, its representatives, servicers, and/or assignees to verify the information by contacting any of the persons or firms listed by you. You fully release all parties from claims or damage that may arise out of or relate to any such contacts. Any false information submitted on this website shall be sufficient reason for denial of your request.

## NOTIFICATIONS

1.0 Notification - Every licensee shall furnish to every applicant, a copy of this regulation at the time when such application is made. Posting of this regulation in the office of the licensee in a place both prominent and easily visible to all potential applicants shall satisfy this requirement. An explanation as to the contents and limitations contained herein shall satisfy this requirement when transactions occur telephonically. An informational screen containing these limitations with an affirmative acknowledgement by the consumer, prior to application, shall satisfy this requirement for internet transactions.

2.0 Interest

2.1 A lender may charge and collect interest in respect to a revolving credit plan or closed end loan at such daily, weekly, monthly, annual, or other periodic percentage rate or rates as the agreement governing the plan or loan provides, or as established in the manner provided in such agreement. Periodic interest may be calculated on a revolving credit plan using any balance computation method provided for in the agreement governing the plan. Periodic interest may be calculated on a closed end loan by way of simple interest or such other method as the agreement governing the loan provides.

2.2 If the agreement governing the revolving credit plan or closed end loan so provides, the periodic percentage rate or rates of interest may vary in accordance with a schedule or formula. Such periodic percentage rate or rates may vary from time to time as the rate determined in accordance with such schedule or formula varies and such periodic percentage rate or rates, as so varied, may be made applicable to all or any part of the outstanding unpaid indebtedness or outstanding unpaid amounts. In the case of revolving

AQUINO-0044

credit, such rate shall become applicable on or after the first day of the billing cycle that contains the effective date of such variation. In the case of closed end loan transactions, such rate may be made applicable to all or any part of the outstanding unpaid amounts on or after the effective date of such variation. Without limitation, a permissible schedule or formula hereunder may include provisions in the agreement governing the revolving credit plan or closed end loan agreement for a change in the periodic percentage rate or rates of interest applicable to all or any part of outstanding unpaid indebtedness or outstanding unpaid amounts, whether a variation of the then applicable periodic percentage rate or rates of interest, variation of an index or margin or otherwise, contingent upon the happening of any event or circumstance specified in the plan or agreement, which event or circumstance may include the failure of the borrower to perform in accordance with the terms of the revolving credit plan or loan agreement.

3.0 Additional Fees and Charges; Limitations. If the agreement governing the plan or loan so provides, in addition to, or in lieu of, interest at a periodic percentage rate or rates permitted by Chapter 22, Title 5 of the **Delaware Code**, the licensee may charge and collect the following fees and charges, subject to the limitations provided below, in respect to revolving credit plans or closed end loans.

3.1 Revolving Credit - with respect to a borrower no lender may charge, collect or receive one or more of the following fees and charges under plans subject to the provisions of Subchapter II, Chapter 22, Title 5 of the **Delaware Code**

3.1.1 periodic charges - a daily, weekly, monthly, annual or other periodic charge in such amount or amounts as the agreement may provide for the privileges made available to the borrower under the plan;

3.1.2 transaction charges - a transaction charge or charges in such amount or amounts as the agreement may provide for each separate purchase or loan under the plan;

3.1.3 minimum charges - a minimum charge in such amount or amounts as the agreement may provide for each daily, weekly, monthly, annual or other scheduled billing period under the plan during any portion of which there is an outstanding unpaid indebtedness under the plan;

3.1.4 fees for services rendered or reimbursement of expenses - reasonable fees for services rendered or for reimbursement of expenses incurred in good faith by the licensee or its agent in connection with such loan, including without limitation, commitment fees, official fees and taxes, premiums or other charges for any guarantee or insurance protecting the licensee against the borrower's default or other credit loss, or costs incurred by reason of examination of title, inspection, recording and other formal acts necessary or appropriate to the security of the loan, filing fees, attorney's fees and travel expenses. In the event a borrower defaults under the terms of a plan, the licensee may, if the borrower's account is referred to any attorney (not a regularly salaried employee of the licensee) or to a third party for collection and in the agreement governing the revolving credit plan so provides, charge and collect from the borrower a reasonable attorney's fee. In addition, following a borrower's default, the licensee may, if the agreement governing the plan so provides, recover from the borrower all court, alternative dispute resolution or other collection costs (including, without limitation, fees and charges of collection agencies) actually incurred by the licensee;

3.1.5 overlimit charges - a charge in such amount or amounts as the agreement may provide, for each daily, weekly, monthly, annual or other scheduled billing period under the plan during any portion of which the total outstanding indebtedness exceeds the credit limit established under the plan;

3.1.6 delinquency charges - a late or delinquency charge upon any outstanding unpaid installment payments or portions thereof under the plan which are in default; provided, however, that no more than 1 such late or delinquency charge may be imposed in respect of any single such installment payment or portion thereof regardless of the period during which it remains in default; and provided further, however, that for the purpose only of the preceding provision all payments by the borrower shall be deemed to be applied to satisfaction of installment payments in the order in which they become due;

3.1.7 returned check charges - a returned check charge may be assessed to consumers, in such amount or amounts as the agreement may provide, provided the amount(s) of such charges are customary and reasonable for checks that are returned unpaid;

3.1.8 termination fees - a charge in such amount or amounts as the agreement may provide to terminate a revolving credit plan;

3.1.9 charges incurred in connection with real estate secured transactions - in the case of revolving credit secured by real estate such additional charges as outlined in item 3.3 of this regulation may also be collected within the limitations stated therein.

3.2 Closed End Credit - with respect to a borrower, a lender may charge, collect, or receive one or more of the following fees and charges for loans subject to the provisions of Subchapter III, Chapter 22, Title 5 of the **Delaware Code**

3.2.1 fees for services rendered or reimbursement of expenses - reasonable fees for services rendered or for

reimbursement of expenses incurred in good faith by the licensee or its agent in connection with such loan including without limitation, commitment fees, official fees and taxes, premiums or other charges for any guarantee or insurance protecting the licensee against the borrower's default or other credit loss, or costs incurred by reason of examination of title, inspection, recording and other formal acts necessary or appropriate to the security of the loan, filing fees, attorney's fees and travel expenses. In the event a borrower defaults under the terms of the loan, the licensee may, if the borrower's account is referred to an attorney (not a regularly salaried employee of the licensee) or to a third party for collection and if the agreement governing, or the bond, note or other evidence of, the loan so provides, charge and collect from the borrower a reasonable attorney's fee. In addition, following a borrower's default, the licensee may, if the agreement governing, or the bond, note or other evidence of, the loan so provides, recover from the borrower all court, alternative dispute resolution or other collection costs (including, without limitation, fees and charges of collection agencies) actually incurred by the licensee;

3.2.2 deferral charges - a deferral charge may be assessed to a borrower in accordance with an agreement to permit the borrower to defer installment payments of a loan;

3.2.3 delinquency charges - if the agreement governing the loan so provides, a late or delinquency charge may be imposed upon any outstanding unpaid installment payment or portions thereof under the loan agreement which are in default; provided, however, that no more than 1 such delinquency charge may be imposed in respect of any single such installment payment or portion thereof regardless of the period during which it remains in default; and provided further that no such delinquency charge may exceed 5% of the amount of any such installment or portion thereof in default;

3.2.4 returned check charges - if the agreement governing the loan so provides, a returned check charge may be assessed to consumers for checks that are returned unpaid provided the amount(s) of such charges are customary and reasonable;

3.2.5 charges incurred in connection with real estate secured transactions - in the case of closed end credit secured by real estate such additional charges as outlined in item (3)(c) of this regulation may also be collected within the limitations stated therein.

3.3 Real Estate Secured Transactions - with respect to a borrower, a lender may charge, collect, or receive one or more of the following fees and charges subject to the limitations herein, for loans subject to the provisions of Subchapters II (Revolving Credit) and III (Closed End Credit), Chapter 22, Title 5 of the **Delaware Code** when such loans are secured by real estate:

3.3.1 loan origination points - points charged to the borrower on the lender's behalf for any purpose other than to reduce the periodic interest rate applicable to the mortgage loan may not exceed 10% of the principal amount of the loan. Such points may be deducted from the gross proceeds of the loan. For purposes of this regulation 'gross proceeds' is the amount financed as defined in Federal Reserve Regulation Z;

3.3.2 loan discount points - points charged to the borrower as a function of rate for the purpose of reducing the periodic interest rate applicable to the mortgage loan. Such points may be deducted from the gross proceeds of the loan;

3.3.3 property appraisal fees - property appraisal fees shall be limited to the amount paid to a third party for such appraisal and shall be limited to those amounts that are customary and reasonable;

3.3.4 credit report fees - credit report fees shall be limited to the actual cost of the report if paid to a third party, not an employee of the lender or affiliate. Such amounts shall be customary and reasonable;

3.3.5 mortgage loan broker compensation fees - mortgage loan broker compensation may be deducted from the gross proceeds of the loan. Such amounts shall reasonably reflect the value of the goods, services and facilities provided;

3.3.6 tax certification and service fees - fees for agreements to provide certification of the current tax status of the property as well as fees for ongoing monitoring and notice to the lender of all tax and improvement lien payments as they become due shall be limited to those amounts actually expended for such purposes. Such amounts shall be customary and reasonable;

3.3.7 flood hazard certification or determination fees - determination fees may be charged for determining whether the property is or will be located in a special flood hazard area. This fee may also include the cost of life-of-loan monitoring. Such amounts shall be customary and reasonable;

3.3.8 title abstract/search/examination and title insurance premiums - title insurance and/or cost of a title certificate, search, examination and binder shall be limited to those amounts actually expended for such purposes. Such amounts shall be customary and reasonable and may, at the borrower's discretion, include owner's coverage in addition to lender's coverage;

3.3.9 legal fees - legal fees incurred in securing or closing a loan shall be limited to amounts actually paid to

AQUINO 046

an attorney not in the employ of the lender, its parent, or affiliate, and such charges shall not exceed those which are customary and reasonable.

3.3.10 recording/satisfaction fees - recording/satisfaction fees shall be limited to those actually expended by the lender to any governmental authority for protection of interest in collateral tendered. The State Bank Commissioner may approve the payment of alternative fees for this purpose, provided the amount of said fee (payable by the borrower) shall not exceed the amount which would be payable to any governmental authority for protection of interest in collateral tendered.

3.3.11 property survey fees - property survey fees to obtain a drawing that delineates the exact boundaries of a property, including lot lines and placement of improvements on the property, shall be limited to those amounts actually expended for such purposes. Such amounts shall be customary and reasonable.

3.3.12 pest inspection fees - pest inspection fees to cover inspections for termites or other pest infestation on the property shall be limited to those amounts actually expended for such purposes. Such amounts shall be customary and reasonable.

3.3.13 fees incidental to loan closing - other fees and charges including but not limited to odd days interest, hazard and mortgage insurance premiums, escrow reserves, lender's inspection fees, mortgage insurance application fees, assumption fees, underwriting fees, document preparation fees, settlement or closing fees, notary fees, funding fees, fees for lead based paint or other inspections and overnight mail fees may be charged and such amounts shall be customary and reasonable.

3.3.14 prepayment penalties - a charge in such amount or amounts as the agreement so provides, imposed in connection with the payoff and termination of a revolving credit plan or closed end loan secured by real estate.

3.3.15 notwithstanding the provisions of Item 3.3 of this regulation, Licensed Lenders who are making mortgage loans pursuant to the rules, regulations, guidelines and/or loan forms established by the State of Delaware or federal governmental or quasi-governmental entity (including without limitation, the Federal Housing Administration, the Department of Veterans Affairs, the Farmers Home Administration, the Government National Mortgage Association, the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation) shall be permitted to charge and collect any fees, charges or sums prescribed to be charged and collected in connection with a mortgage loan originated pursuant to a lending program conducted or supervised by any such entity.

## ELECTRONIC AGREEMENT

By accepting the Terms and Conditions, you consent to electronic delivery of the Disclosures as described above and confirm that you have the software and computer equipment that satisfies the requirements above and that you will download or print the Disclosures you receive for your records.

**You understand that Advance Me Today will retain this application whether or not it is approved.**

© 2005 - 2013   [illegible]   Contact Webmaster (✉)



EXHIBIT Y

**Loan Agreement, Promissory Note and Disclosure**
**Loan Number: 282107**

Witness: _____ Exhibit **41** for ID
P _____ of _____ PP
Lindsay Pinkham CSR 3716 CRR

### Lenders International, Ltd t/a AdvanceMeToday.com

**Borrower's Information:**

Borrower's Name:
Charmaine Aquino

Borrower's Address:
1820 W. 153rd Street
Gardena, CA 90249

Origination Date:
12/7/2012

**A. PARTIES:** In this Loan Agreement, Promissory Note and Disclosure ("Note"), "You" and "Your" mean the Borrower named above. "We", "Our" and "Us" mean Lenders International Limited t/a AdvanceMeToday.com and any assignee When You electronically sign below, You are agreeing to be bound by the terms of this Note, including the Arbitration Provision. The Disclosure of Credit Terms box below is part of this Note. You may save and/or print a copy of this Note at any time, whether or not You sign it.

**B. DISCLOSURE OF CREDIT TERMS:**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to You or on Your behalf | Total of Payments |
|---|---|---|---|
| 1095.00% | $150.00 | $500.00 | $650.00 |

YOUR PAYMENT SCHEDULE WILL BE: One payment of $650.00 on 12/20/2012 (the "Due Date").

PREPAYMENT: If You pay off early, You will be entitled to a refund of all or part of the Finance Charge.

SECURITY: Your Payment Authorization and Election (Exhibit A) secures this loan.

See the further provisions of this Note below for any additional information about nonpayment, default, any required repayment in full before the Due Date and prepayment refunds and penalties.

**C. ITEMIZATION OF AMOUNT FINANCED; DISBURSAL:** The Amount Financed is itemized as follows: Amount given to You directly: $500.00; Amount paid on Your account: $500.00. **If the Amount Financed is paid to You, You authorize Us to disburse the Amount Financed by making an electronic fund transfer ("EFT") to the bank account ("Account") identified on the Payment Authorization attached to this Note as Exhibit A (the "Payment Authorization"). THE "FUNDING DATE" FOR YOUR LOAN IS THE ORIGINATION DATE SHOWN ABOVE IF THE AMOUNT FINANCED IS PAID ON YOUR ACCOUNT OR THE NEXT BUSINESS DAY IF THE AMOUNT FINANCED IS PAID TO YOU. IF WE CANNOT FUND YOUR LOAN ON THE FUNDING DATE FOR ANY REASON, NEW DOCUMENTS WILL NEED TO BE PREPARED AND EXECUTED**

**D. INTEREST:** Your Finance Charge (interest) equals 30% of the Amount Financed.

**E. PROMISE TO PAY; PAYMENT AUTHORIZATION:** You agree to pay Us on the Due Date the Total of Payments (which equals the Amount Financed plus the Finance Charge). To arrange for and secure payment, You must complete and electronically sign the Payment Authorization and Election attached as Exhibit A (the "Payment Authorization") immediately after signing this Note. We will initiate payment on the Due Date in accordance with the Payment Authorization

**F. RIGHT TO CANCEL: YOU MAY CANCEL YOUR LOAN WITHOUT COST OR FURTHER OBLIGATION IF YOU ACT BY THE CLOSE OF BUSINESS ON THE SECOND BUSINESS DAY AFTER THE FUNDING DATE. TO CANCEL, YOU MUST CONTACT US AT 888-408-4394 AND FAX US THE CANCELLATION FORM ATTACHED AS EXHIBIT B TO THIS NOTE. WE WILL THEN ATTEMPT TO INITIATE A PAYMENT OF THE AMOUNT FINANCED FROM THE ACCOUNT PURSUANT TO THE PAYMENT AUTHORIZATION. IF YOUR REPAYMENT OF THE AMOUNT FINANCED IS RETURNED, YOUR LOAN WILL NOT BE CANCELED.**

**G. PREPAYMENT:** In addition to Your right to cancel Your loan by repaying Us the entire Amount Financed, You may prepay Your loan after the cancellation period but before the Due Date. If You do, We will give You a credit against Your interest charges. The credit will equal the Finance Charge shown above times a fraction. The fraction is the number of days You pay before the Due Date divided by the number of days from the Funding Date through the Due Date. To arrange to prepay Your loan in whole or in part, You must go online at www.advancemetoday.com or call Us at 888-408-4394 to alert Us of Your intention to make a prepayment and then follow Our instructions.

**H. AMENDMENT:** You and We may agree to modify this Note at any time. For example, We may (but need not) give You the right to extend the Due Date until Your next payday by paying Us the Finance Charge shown above on the Due Date instead of paying Us the entire Total of Payments. **We are not required to offer any amendment and You are not required to accept any amendment We offer.** We are not bound by any amendment that is not set forth by Us online or in writing. However, You may agree online or by email, text message, fax or phone to any amendment We propose online or in writing.

**I. EXTENDED PAYMENT NOTE**: We may (but need not) give You the option to refinance Your loan by paying the Finance Charge set forth above (instead of the entire Total of Payments) and at the same time agreeing to an Extended Payment Note. The Extended Payment Note, if any, We expect to offer is attached to this Note as Exhibit C. **If You want the Extended Payment Note to apply, You must take affirmative action. You may exercise any option We give You with regard to an Extended Payment Note online or by email, text message, fax or phone.** For example, if You reply REFI to a text message We send You advising You of the date and amount of Your loan payment and You reply REFI, You will thereby: (1) agree to pay the Finance Charge on the Due Date; and (2) sign the Extended Payment Note.

**J. DEFAULT**: Time is of the essence, and You will be in default under this Note (as it may be amended) if You do not make any payment when due. Upon default, We may, without notice or demand, declare the entire amount then unpaid immediately due and payable. If We elect to do so, We may offer You the opportunity to pay the entire amount due, plus a $75 payment plan fee, without interest in installments

**K. BUSINESS DAYS**: Business Days do not include Saturdays, Sundays or Legal Holidays.

**L. PAYMENT CHARGES**: If any payment You make is returned, We will charge You a $30 returned payment charge. For any payment You make with Our assistance and not pursuant to the Payment Authorization, We may charge You a convenience fee up to $5

**M. PAYMENT APPLICATION**: All payments are applied first to accrued interest, then to any fees and costs You owe and finally to unpaid principal.

**N. OUR POLICY REGARDING FINANCIAL PRIVACY**: We collect nonpublic personal information about You from the following sources: (1) Information We receive from You on applications or other forms; (2) Information about Your transactions with Us, Our affiliates, or others; and (3) Information We receive from consumer reporting agencies. We restrict access to nonpublic personal information about You to employees who need to know that information to provide products or services to You. We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard Your nonpublic personal information. We do not disclose any nonpublic personal information about Our customers or former customers to anyone, except as required or permitted by law

**O. GOVERNING LAW**: This Note (other than the Arbitration Provision) is governed by the laws of St. Vincent and the Grenadines regarding credit transactions between St. Vincentian corporations and citizens of other countries, except to the extent that the General Agreement on Trade in Services, to which the United States and St. Vincent and the Grenadines are signatories, requires compliance with U.S. federal laws. The Arbitration Provision is subject to the Federal Arbitration Act.

**P. VERIFICATION AND REPORTING**: You authorize Us to verify the information You provided in Your loan application and to obtain reports bearing on Your creditworthiness. These reports may include reports from sub-prime credit reporting agencies such as Teletrack and DP Bureau. In addition, You authorize Us to report information obtained in the course of servicing Your loan to credit reporting agencies. Late payments, missed payments, or other defaults may be reflected in Your credit report.

**Q. ASSIGNMENT**: We may assign or transfer this Note or any of Our rights under this Note.

**R. ELECTRONIC SIGNING AND NOTICES**: To the full extent permitted by law, any document You or We sign electronically, including this Note, the Payment Authorization and any notice or election, will be considered an original executed document, binding and enforceable as to each electronic signer as if signed in writing.

**S. CREDIT DISPUTES; IDENTITY THEFT**: If You believe that any information about Your loan that We have furnished to a consumer reporting agency is inaccurate, or if You believe that You have been the victim of identity theft in connection with any loan made by Us, write to Us at PO Box 1124-1007 San Jose, Costa Rica 10102. In Your letter (i) provide Your name and loan number, (ii) identify the specific information that is being disputed, (iii) explain the basis for the dispute and (iv) provide any supporting documentation You have that substantiates the basis of the dispute. If You believe that You have been the victim of identity theft, submit an identity theft affidavit or identity theft report

**T. TELEPHONE CALLS; TEXTS**: You agree that We may monitor and/or record any of Your phone conversations with any of Our representatives. We may use automated telephone dialing, text messaging systems and electronic mail to provide messages to You about payment due dates, missed payments, options to amend this Note and other important information. The telephone messages are played by a machine automatically when the telephone is answered, whether answered by You or someone else. These messages may also be recorded by Your answering machine. You give Us Your permission to call or send a text message to any telephone number You have given Us and to play pre-recorded messages or send text messages with information about Your loan over the phone. You also give Us permission to communicate such information to You via e-mail. You agree that We will not be liable to You for any such calls or e-mails. You understand that, when You receive such calls or text messages, You may incur a charge from the company that provides You with telecommunications, wireless and/or Internet services. You agree that We have no liability for such charges.

**U. BANKRUPTCY**: You promise that You are not currently a debtor in any bankruptcy proceeding, You are not contemplating bankruptcy and You have not consulted with an attorney regarding a potential bankruptcy filing in the past six months. You must provide any notice(s) of any future bankruptcy petition and all subsequent filings, motions, orders or correspondence to Us at PO Box 1124-1007 San Jose, Costa Rica 10102. You agree that any other written or oral communication concerning a bankruptcy is null and void and of no effect.

**V. OTHER TERMS**: All of Our rights and all of Your obligations under this Note are limited to the extent permitted by law. Except as otherwise provided in the Arbitration Provision, if any part of this Note is found to be unenforceable, that part will be deemed severed from this Note, and the remaining provisions will be enforced to the fullest extent allowed by law. You confirm all the statements on Your loan application. We may from time to time delay or refrain from enforcing any of Our rights under this Note and will not lose any of Our rights by doing so

**W. WAIVER OF JURY TRIAL AND ARBITRATION PROVISION**: Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. We have a policy of arbitrating all disputes with customers which cannot be resolved in a small claims tribunal, including the scope and validity of this Arbitration Provision and any right You may have to participate in an alleged class action.

**THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

1. For purposes of this Waiver of Jury Trial and Arbitration Provision, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Loan Agreement, the information You gave Us before entering into the Loan Agreement, including the customer information application, and/or any past agreement or agreements between You and Us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by Us against You, including claims for money damages to collect any sum We claim You owe Us; (g) all claims asserted by You individually against Us and/or any of Our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on Your behalf by another person; (i) all claims asserted by You as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against Us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by Us or related third parties of any non-public personal information about You.

2. You acknowledge and agree that by entering into this Arbitration Provision: (a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; (b) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES, and (c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

3. Except as provided in Paragraph 6 below, all disputes including any Representative Claims against Us and/or related third parties shall be resolved by binding arbitration only on an individual basis with You. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION. NOTWITHSTANDING ANY CONTRARY RULE OF PROCEDURE OF THE ARBITRATION FORUM SELECTED BY YOU OR US, WE AGREE TO WAIVE ANY SUCH RULE AND AGREE THAT ANY CAUSE OF ACTION HEREUNDER MAY NOT BE JOINED WITH ANY OTHER ACTIONS PENDING, NOR MAY ANY ACTION BE JOINTLY PROSECUTED OR DEFENDED WITHOUT THE EXPRESS WRITTEN CONSENT OF THE PARTY OR PARTIES TO THE ACTION YOU OR WE SEEK TO JOIN.

4. You and We agree that any and all claims, disputes or controversies between You and Us, any claim by either of Us against the other (or the employees, officers, directors, agents, or assigns of the other), and any claim arising from or relating to Your application for this Loan, or any other loan You previously or may later obtain from Us, this Loan Note., the collection of the loan, alleging fraud or misrepresentation, whether under the common law or pursuant to federal, state or local statute, regulation or otherwise, or any term or condition of this or any other Agreement between You and Lenders International, Ltd., shall be resolved by binding arbitration by and under the Code of Procedure of the American Arbitration Association ("AAA") in effect at the time the claim is filed. This agreement to arbitrate all disputes shall apply no matter by whom or against whom the claim is filed. Rules and forms of the AAA may be obtained and all claims shall be filed at any AAA office, on the World Wide Web at www.adr.org, by telephone at 800-778-7879, or at "American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019".

**NOTICE:** YOU AND WE WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND HAVE A JUDGE OR JURY DECIDE THE DISPUTES BUT HAVE AGREED INSTEAD TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION.

5. Regardless of who demands arbitration, at Your request We will advance Your portion of the arbitration expenses, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the FAA, and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of Your residence. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence. If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. If the arbitrator renders a decision or an award in Your favor resolving the dispute, then You will not be responsible for reimbursing Us for Your portion of the Arbitration Fees, and We will reimburse You for any Arbitration Fees You have previously paid. If the arbitrator does not render a decision or an award in Your favor resolving the dispute, then the arbitrator shall require You to reimburse Us for the Arbitration Fees We have advanced, not to exceed the amount which would have been assessed as court costs if the dispute had been resolved by a state court with jurisdiction, less any Arbitration Fees You have previously paid. At the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award may be filed with any court having jurisdiction.

6. All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal in the county of Your residence for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

7. This Arbitration Provision is made pursuant to a transaction involving international commerce and shall be governed by the FAA and applicable international treaties. If a final non- appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA and/or applicable international treaties do not apply to this transaction, then Our agreement to arbitrate shall be governed by the arbitration law of St. Vincent and the Grenadines.

8. This Arbitration Provision is binding upon and benefits You, Your respective heirs, successors and assigns. This Arbitration Provision is binding upon and benefits Us, Our successors and assigns, and related third parties. This Arbitration Provision continues in full force and effect, even if Your obligations have been paid or discharged through bankruptcy. This Arbitration Provision survives any cancellation, termination, amendment, expiration or performance of any transaction between You and Us and continues in full force and effect unless You and We otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect.

9. OPT-OUT PROCESS. You may choose to opt out of the Arbitration Provision, but only by following the process set-forth below. If You do not wish to be subject to this Arbitration Provision, then You must notify Us in writing within thirty (30) calendar days of the date of this Arbitration Provision by e-mail or by such other means as Lender may agree to accept. Your written notice must include Your name, address, account number or social security number, the date of this Arbitration Provision, and a statement that You wish to opt out of this Arbitration Provision. If You choose to opt out, then Your choice will apply only to this Application, Loan Agreement, ACH Authorization, and Arbitration Provisions submitted by You in this transaction.

**X. ELECTRONIC SIGNATURE:** By entering Your name and clicking the "I Agree" button below, You are electronically signing and agreeing to all the terms of the Loan Agreement, the Arbitration Provision, and the ACH Authorization ("the Loan Documents") and providing or confirming Your electronic signature on all of the Loan Documents. You agree that Your electronic signature has the full force and effect of Your physical signature and that it binds You to the Loan Documents in the same manner a physical signature would do so.

BY TYPING "I AGREE" BELOW, YOU AGREE TO ALL THE TERMS OF THIS NOTE, INCLUDING THE ARBITRATION PROVISION. YOU ALSO ACKNOWLEDGE A RECEIPT OF A FULLY COMPLETED COPY OF THIS NOTE.

| **Your Full Name:** | **Type 'I Agree':** | **Date:** |
|---|---|---|
| Charmaine Aquino | I Agree | 12/7/2012 |

# EXHIBIT A - Payment Authorization and Election

**1. Definitions.** For purposes of this Payment Authorization and Election ("Payment Authorization"), "You" and "Your" mean the Borrower named below. "We," "Our" and "Us" mean Lenders International Limited t/a AdvanceMeToday.com and any assignee. "Note" means the Loan Agreement, Promissory Note and Disclosure to which this Payment Authorization is attached as Exhibit A and any subsequent promissory note or similar document evidencing a loan from Us to You. "Card" means the credit, debit or stored value card, if any, identified below, or any substitute or replacement card, and "Account" means the bank account identified below, or any substitute or replacement account.

**Account**

Bank Name: SCHOOLS FIRST FEDERAL CREDIT UNION
ABA Number: 322282001
Account Number: ***\*\****9708

**2. Basic Payment Authorization.** Unless a Payment Authorization from a prior loan remains in effect, You must sign this Payment Authorization to receive a loan. By signing below, You authorize and direct Us to initiate an electronic fund transfer ("EFT") from the Account for each required payment under this Note (including any returned payment charge or convenience fee, which may be combined with any other payment due to Us hereunder). However, You may notify Us by phone at 888-408-4394 at least three (3) business days before any payment is due that You intend to make such payment by check or money order. If You give this notice and make such payment on a timely basis, We will not initiate an EFT for such payment. If Your payment is not received in a timely manner, You understand and expressly agree that We may then initiate the EFT. You may cancel the payment authorization in this Paragraph 2 at any time by calling Us at 888-408-4394. Your cancellation will be effective as soon as We can reasonably act on it.

**3. Additional Payment Authorizations.** In the event that We make an error in processing an EFT, You authorize Us to initiate an EFT to or from the Account to correct the error. Additionally, instead of or in addition to any authorized EFT from the Account, You authorize Us to initiate any EFT that You subsequently confirm by phone, text message or email.

**4. General.** (a) Unless terminated by You, this Payment Authorization applies to any Extended Payment Note you subsequently execute. You do not need to sign a new Payment Authorization in connection with the Extended Payment Note.

AQUINO038

(b) If any payment cannot be obtained by EFT from the Account, You remain responsible for such payment and any resulting fees, including any fees Your bank may charge for a dishonored EFT. You agree that We may resubmit any returned EFT as permitted by law and network rules. We are not responsible for any bank charges You may incur as a result of Our submission or re-submission of any EFT authorized hereby.

(c) IF REQUESTED, YOU AGREE TO PROVIDE US WITH A BLANK CHECK FROM YOUR ACCOUNT, MARKED "VOID". YOU AUTHORIZE US TO CORRECT ANY MISSING OR ERRONEOUS INFORMATION PROVIDED BY YOU OR CONTAINED ON THE CHECK. A CUSTOMER SERVICE REPRESENTATIVE WILL CONTACT YOU IF THIS IS NECESSARY

BY TYPING "I AGREE" BELOW, YOU AGREE TO THE TERMS OF THIS PAYMENT AUTHORIZATION. YOU ALSO ACKNOWLEDGE A RECEIPT OF A FULLY COMPLETED COPY OF THIS PAYMENT AUTHORIZATION. IF THIS FORM HAS BEEN FAXED TO YOU, YOU MUST PRINT YOUR NAME, PRINT THE DATE, SIGN AND FAX THIS FORM, TOGETHER WITH THE SIGNED NOTE, TO 888-660-2984.

| Name: | Type 'I Agree': | Date: |
|---|---|---|
| Charmaine Aquino | I Agree | 12/7/2012 |

## EXHIBIT B - Cancellation Form

RIGHT TO CANCEL: YOU MAY CANCEL THIS LOAN WITHOUT COST OR FURTHER OBLIGATION TO US IF YOU DO SO BY THE END OF BUSINESS ON THE SECOND BUSINESS DAY AFTER YOU RECEIVE THE LOAN PROCEEDS. To cancel, You must call Us at 888-408-4394 to alert Us of Your intention to cancel. You must also sign and fax this Cancellation Form to Us at 888-660-2984. By doing so, You direct Us to reverse the electronic payment We made to disburse Your loan proceeds. If You follow these procedures but there are insufficient funds available in Your bank account to enable Us to reverse the transfer of loan proceeds, Your cancellation will not be effective and You will be required to pay the loan, including principal, interest and other charges (which will include a $30 returned payment charge) in accordance with the terms of Your Note.

## STOP! Sign here <u>only if You wish to cancel</u> this loan:

Loan Number: 282107

Amount Financed: $500.00

Borrower: Charmaine Aquino

Signature: _____   Date: _____

## EXHIBIT C - EXTENDED PAYMENT NOTE
### Extended Payment Loan Agreement, Promissory Note and Disclosure
### Loan Number: 282107

### Lenders International, Ltd t/a AdvanceMeToday.com

### Borrower's Information:

| Borrower's Name: | Borrower's Address: |
|---|---|
| Charmaine Aquino | |
| | Gardena, CA 90249 |

**Origination Date:**
12/7/2012

**PARTIES:** In this Loan Agreement, Promissory Note and Disclosure ("Note"), "You" and "Your" mean the Borrower named above. "We", "Our" and "Us" mean Lenders International Limited t/a AdvanceMeToday.com and any assignee When You electronically sign below, You are agreeing to be bound by the terms of this Note, including the Arbitration Provision. The Disclosure of Credit Terms box below is part of this Note. You may save and/or print a copy of this Note at any time, whether or not You sign it.

**DISCLOSURE OF CREDIT TERMS:**

| ANNUAL | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|

| PERCENTAGE RATE | | | |
|---|---|---|---|
| 845.40% | $1,425.00 | $500.00 | $1,925.00 |

YOUR PAYMENT SCHEDULE WILL BE:

| Payment Date | Amount |
|---|---|
| 12/20/2012 | $150.00 |
| 1/3/2013 | $150.00 |
| 1/17/2013 | $150.00 |
| 1/31/2013 | $150.00 |
| 2/14/2013 | $200.00 |
| 2/28/2013 | $185.00 |
| 3/14/2013 | $170.00 |
| 3/28/2013 | $155.00 |
| 4/11/2013 | $140.00 |
| 4/25/2013 | $125.00 |
| 5/9/2013 | $110.00 |
| 5/23/2013 | $95.00 |
| 6/6/2013 | $80.00 |
| 6/20/2013 | $65.00 |

PREPAYMENT: If You pay off early, You will be entitled to a refund of all or part of the Finance Charge

SECURITY: The Payment Authorization and Election You executed in connection with this loan or a loan refinanced by this loan ("Payment Authorization") secures this loan.

See the further provisions of this Note below for any additional information about nonpayment, default, any required repayment in full before the maturity date and prepayment refunds and penalties

**ITEMIZATION OF AMOUNT FINANCED; DISBURSAL:** The Amount Financed is itemized as follows: Amount given to You directly: ; Amount paid on Your account:  **If the Amount Financed is paid to You, You authorize Us to disburse the Amount Financed by making an electronic fund transfer ("EFT") to the bank account ("Account") identified in the Payment Authorization. THE "FUNDING DATE" FOR YOUR LOAN IS THE ORIGINATION DATE SHOWN ABOVE IF THE AMOUNT FINANCED IS PAID ON YOUR ACCOUNT OR THE NEXT BUSINESS DAY IF THE AMOUNT FINANCED IS PAID TO YOU. IF WE CANNOT FUND YOUR LOAN ON THE FUNDING DATE FOR ANY REASON, NEW DOCUMENTS WILL NEED TO BE PREPARED AND EXECUTED.**

**PROMISE TO PAY; PAYMENT AUTHORIZATION:** You agree to pay the amounts due under this Note on the dates ("Payment Dates") and in the amounts shown on the Payment Schedule above. To arrange for and secure payment, You have previously completed and signed or must complete and sign a Payment Authorization. Each payment will be initiated pursuant to the Payment Authorization.

**RIGHT TO CANCEL:** YOU MAY CANCEL YOUR LOAN WITHOUT COST OR FURTHER OBLIGATION IF YOU ACT BY THE CLOSE OF BUSINESS ON THE SECOND BUSINESS DAY AFTER THE FUNDING DATE. TO CANCEL, YOU MUST CONTACT US AT 888-408-4394 AND FAX US THE CANCELLATION FORM ATTACHED AS EXHIBIT A TO THIS NOTE. WE WILL THEN ATTEMPT TO INITIATE A PAYMENT OF THE AMOUNT FINANCED FROM THE ACCOUNT PURSUANT TO THE PAYMENT AUTHORIZATION. IF YOUR REPAYMENT OF THE AMOUNT FINANCED IS RETURNED, YOUR LOAN WILL NOT BE CANCELED.

**PREPAYMENT:** (a) In addition to Your right to cancel, You may prepay Your loan in full at any time. Upon request, We will advise You of the amount You must pay. This amount will equal the total of all amounts then owing under this Note, plus all future scheduled payments under this Note, less the "Prepayment Credit." The Prepayment Credit equals the amount of interest that would have accrued on this Note after the prepayment date, based on an interest charge for each "Payment Period" (the period between Payment Dates or the period from the Funding Date through the first Payment Date) equal to 30% of the scheduled unpaid principal balance at the beginning of the Payment Period and an interest charge for each day in each Payment Period equal to the interest charge for the Payment Period divided by the number of days in the Payment Period

(b) You may also prepay Your loan in part on any Payment Date. If You do so, We will adjust Your payment schedule so that payments under the new schedule will repay Your loan in full over the original term of the loan, once again based on interest for each Payment Period equal to 30% of the scheduled unpaid principal balance at the beginning of the Payment Period.

(c) To arrange to prepay Your loan in whole or in part, You must go online at www.advancemetoday.com or call Us at 888-408-4394 to alert Us of Your intention to make a prepayment and then follow Our instructions.

(d) All payments are applied first to accrued interest, then to any fees and costs You owe and finally to unpaid principal

**AMENDMENT:** You and We may agree to modify this Note at any time. We are not bound by any amendment that is not set forth by Us online or in writing. However, You may agree online or by email, text message, fax or phone to any amendment We propose online or in writing.

**DEFAULT:** Time is of the essence, and You will be in default under this Note (as it may be amended) if You do not make any payment when due. Upon default, We may, without notice or demand, declare the entire amount then unpaid immediately due and payable. If We elect to do so, We may offer You the

opportunity to pay the entire amount due, plus a $75 payment plan fee, without interest in installments.

**BUSINESS DAYS**: Days do not include Saturdays, Sundays or Legal Holidays.

**PAYMENT CHARGES**: If any payment You make is returned, We will charge You a $30 returned payment charge. For any payment You make with Our assistance and not pursuant to the Payment Authorization, We may charge You a convenience fee up to $5.

**OUR POLICY REGARDING FINANCIAL PRIVACY**: We collect nonpublic personal information about You from the following sources: (1) Information We receive from You on applications or other forms; (2) Information about Your transactions with Us, Our affiliates, or others; and (3) Information We receive from consumer reporting agencies. We restrict access to nonpublic personal information about You to employees who need to know that information to provide products or services to You. We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard Your nonpublic personal information. We do not disclose any nonpublic personal information about Our customers or former customers to anyone, except as required or permitted by law

**GOVERNING LAW**: This Note (other than the Arbitration Provision) is governed by the laws of St Vincent and the Grenadines regarding credit transactions between St. Vincentian corporations and citizens of other countries, except to the extent that the General Agreement on Trade in Services, to which the United States and St. Vincent and the Grenadines are signatories, requires compliance with U.S. federal laws. The Arbitration Provision is subject to the Federal Arbitration Act

**VERIFICATION AND REPORTING**: You authorize Us to verify the information You provided in Your loan application and to obtain reports bearing on Your creditworthiness. These reports may include reports from sub-prime credit reporting agencies such as Teletrack and DP Bureau. In addition, You authorize Us to report information obtained in the course of servicing Your loan to credit reporting agencies. Late payments, missed payments, or other defaults may be reflected in Your credit report.

**ASSIGNMENT**: We may assign or transfer this Note or any of Our rights under this Note

**ELECTRONIC SIGNING AND NOTICES**: To the full extent permitted by law, any document You or We sign electronically, including this Note, the Payment Authorization and any notice or election, will be considered an original executed document, binding and enforceable as to each electronic signer as if signed in writing

**CREDIT DISPUTES; IDENTITY THEFT**: If You believe that any information about Your loan that We have furnished to a consumer reporting agency is inaccurate, or if You believe that You have been the victim of identity theft in connection with any loan made by Us, write to Us at PO Box 1124-1007 San Jose, Costa Rica 10102. In Your letter (i) provide Your name and loan number, (ii) identify the specific information that is being disputed, (iii) explain the basis for the dispute and (iv) provide any supporting documentation You have that substantiates the basis of the dispute. If You believe that You have been the victim of identity theft, submit an identity theft affidavit or identity theft report.

**TELEPHONE CALLS**: You agree that We may monitor and/or record any of Your phone conversations with any of Our representatives. We may use automated telephone dialing, text messaging systems and electronic mail to provide messages to You about payment due dates, missed payments, options to amend this Note and other important information. The telephone messages are played by a machine automatically when the telephone is answered, whether answered by You or someone else. These messages may also be recorded by Your answering machine. You give Us Your permission to call or send a text message to any telephone number You have given Us and to play pre-recorded messages or send text messages with information about Your loan over the phone. You also give Us permission to communicate such information to You via e-mail. You agree that We will not be liable to You for any such calls or e-mails. You understand that, when You receive such calls or text messages, You may incur a charge from the company that provides You with telecommunications, wireless and/or Internet services You agree that We have no liability for such charges.

**BANKRUPTCY**: You promise that You are not currently a debtor in any bankruptcy proceeding, You are not contemplating bankruptcy and You have not consulted with an attorney regarding a potential bankruptcy filing in the past six months. You must provide any notice(s) of any future bankruptcy petition and all subsequent filings, motions, orders or correspondence to Us at PO Box 1124-1007 San Jose, Costa Rica 10102. You agree that any other written or oral communication concerning a bankruptcy is null and void and of no effect.

**OTHER TERMS**: All of Our rights and all of Your obligations under this Note are limited to the extent permitted by law. Except as otherwise provided in the Arbitration Provision, if any part of this Note is found to be unenforceable, that part will be deemed severed from this Note, and the remaining provisions will be enforced to the fullest extent allowed by law. You confirm all the statements on Your loan application. We may from time to time delay or refrain from enforcing any of Our rights under this Note and will not lose any of Our rights by doing so.

**WAIVER OF JURY TRIAL AND ARBITRATION PROVISION**: Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. We have a policy of arbitrating all disputes with customers which cannot be resolved in a small claims tribunal, including the scope and validity of this Arbitration Provision and any right You may have to participate in an alleged class action

**THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

1. For purposes of this Waiver of Jury Trial and Arbitration Provision, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the

validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Loan Agreement, the information You gave Us before entering into the Loan Agreement, including the customer information application, and/or any past agreement or agreements between You and Us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by Us against You, including claims for money damages to collect any sum We claim You owe Us; (g) all claims asserted by You individually against Us and/or any of Our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on Your behalf by another person; (i) all claims asserted by You as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against Us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by Us or related third parties of any non public personal information about You.

2. You acknowledge and agree that by entering into this Arbitration Provision: (a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; (b) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and (c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES

3. Except as provided in Paragraph 6 below, all disputes including any Representative Claims against Us and/or related third parties shall be resolved by binding arbitration only on an individual basis with You THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION. NOTWITHSTANDING ANY CONTRARY RULE OR PROCEDURE OF THE ARBITRATION FORUM SELECTED BY YOU OR US, WE AGREE TO WAIVE ANY SUCH RULE AND AGREE THAT ANY CAUSE OF ACTION HEREUNDER MAY NOT BE JOINED WITH ANY OTHER ACTIONS PENDING, NOR MAY ANY ACTION BE JOINTLY PROSECUTED OR DEFENDED WITHOUT THE EXPRESS WRITTEN CONSENT OF THE PARTY OR PARTIES TO THE ACTION YOU OR WE SEEK TO JOIN

4. You and We agree that any and all claims, disputes or controversies between You and Us, any claim by either of Us against the other (or the employees, officers, directors, agents, or assigns of the other), and any claim arising from or relating to Your application for this Loan, or any other loan You previously or may later obtain from Us, this Loan Note, , the collection of the loan, alleging fraud or misrepresentation, whether under the common law or pursuant to federal, state or local statute, regulation or otherwise, or any term or condition of this or any other Agreement between You and Lenders International, Ltd., shall be resolved by binding arbitration by and under the Code of Procedure of the American Arbitration Association ("AAA") in effect at the time the claim is filed. This agreement to arbitrate all disputes shall apply no matter by whom or against whom the claim is filed. Rules and forms of the AAA may be obtained and all claims shall be filed at any AAA office, on the World Wide Web at www.adr.org, by telephone at 800-778-7879, or at "American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019".

**NOTICE:** YOU AND WE WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND HAVE A JUDGE OR JURY DECIDE THE DISPUTES BUT HAVE AGREED INSTEAD TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION.

5. Regardless of who demands arbitration, at Your request We will advance Your portion of the arbitration expenses, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the FAA, and applicable statutes of limitation, and shall honor claims of privilege recognized at law The arbitration hearing will be conducted in the county of Your residence. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence. If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. If the arbitrator renders a decision or an award in Your favor resolving the dispute, then You will not be responsible for reimbursing Us for Your portion of the Arbitration Fees, and We will reimburse You for any Arbitration Fees You have previously paid. If the arbitrator does not render a decision or an award in Your favor resolving the dispute, then the arbitrator shall require You to reimburse Us for the Arbitration Fees We have advanced, not to exceed the amount which would have been assessed as court costs if the dispute had been resolved by a state court with jurisdiction, less any Arbitration Fees You have previously paid  At the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award may be filed with any court having jurisdiction.

6. All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal in the county of Your residence for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

7. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA and applicable international treaties. If a final non- appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA and/or applicable international treaties do not apply to this transaction, then Our agreement to arbitrate shall be governed by the arbitration law of St. Vincent and the Grenadines.

8. This Arbitration Provision is binding upon and benefits You, Your respective heirs, successors and assigns. This Arbitration Provision is binding upon and benefits Us, Our successors and assigns, and related third parties. This Arbitration Provision continues in full force and effect, even if Your obligations have been paid or discharged through bankruptcy. This Arbitration Provision survives any cancellation,

termination, amendment, expiration or performance of any transaction between You and Us and continues in full force and effect unless You and We otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect.

9. OPT-OUT PROCESS. You may choose to opt out of the Arbitration Provision, but only by following the process set-forth below. If You do not wish to be subject to this Arbitration Provision, then You must notify Us in writing within thirty (30) calendar days of the date of this Arbitration Provision by e-mail or by such other means as Lender may agree to accept. Your written notice must include Your name, address, account number or social security number, the date of this Arbitration Provision, and a statement that You wish to opt out of this Arbitration Provision. If You choose to opt out, then Your choice will apply only to the Application, Loan Agreement, ACH Authorization, and Arbitration Provisions submitted by You in this transaction.

By entering Your name and clicking the "I Agree" button below, You are electronically signing and agreeing to all the terms of the Loan Agreement, the Arbitration Provision, and the ACH Authorization ("the Loan Documents") and providing or confirming Your electronic signature on all of the Loan Documents. You agree that Your electronic signature has the full force and effect of Your physical signature and that it binds You to the Loan Documents in the same manner a physical signature would do so.

BY TYPING "I AGREE" BELOW, YOU AGREE TO ALL THE TERMS OF THIS NOTE, INCLUDING THE ARBITRATION PROVISION. YOU ALSO ACKNOWLEDGE A RECEIPT OF A FULLY COMPLETED COPY OF THIS NOTE.

| Your Full Name: | Type 'I Agree': | Date: |
|---|---|---|
| Charmaine Aquino | I Agree | 12/7/2012 |

EXHIBIT Z

SchoolsFirst FCU eStatement

Page 1 of 4



P.O. Box 11547
Santa Ana, CA 92711-1547
714/258-4000
www.SchoolsFirstfcu.org



Witness:_____ Exhibit **43** for ID
P._____of_____PP
Lindsay Pinkham CSR 3716 CRR

CHARMAINE B AQUINO
████████████
GARDENA CA 90249-4206

Account Number: 0000641199

Date: 01/01/13 - 01/31/13

PAGE: 1



| Posting Date | Eff. Date | Transaction Description | Pymt. or Credit | Credit | Finance Charges | Fee or Charges | Trans. Amount | Balance |
|---|---|---|---|---|---|---|---|---|

SchoolsFirst FCU eStatement

Page 2 of 4



P.O. Box 11547
Santa Ana, CA 92711-1547
714/258-4000
www.SchoolsFirstfcu.org

CHARMAINE B AQUINO
████████-4206

Account Number: 0000641199

Date: 01/01/13 - 01/31/13

PAGE: 2



| Posting Date | Eff. Date | Transaction Description | Pymt. or Credit | Credit Charges | Finance Charges | Fee or Charges | Trans. Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| 01/03 | | ATM SCHIST ORANGE CA 5007/101 THE CITY DRY Withdrawal ACH 8884084394AMTPD TYPE: 8884084394 ID: 6331220046 CO: 8884084394AMTPD | | | | | 150.00- | 452.50 |
| 01/03 | | | | | | | | 415.07 |
| 01/03 | | | | | | | | 410.75 |
| 01/03 | | | | | | | | 400.08 |
| 01/03 | | | | | | | .00- | 385.08 |
| 01/03 | | | | | | | 87.00- | 298.08 |
| 01/04 | | | | | | | 214.68- | 83.40 |
| 01/04 | | | | | | | 32.61- | 50.79 |
| 01/07 | | | | | | | 22.63- | 28.16 |
| 01/07 | | | | | | | 20.00- | 8.16 |
| 01/08 | | | | | | | 13.32- | 5.16- |
| 01/08 | | | | | | | 31.84- | 37.00- |
| 01/09 | | | | | | | 37.00 | 0.00 |
| 01/14 | | | | | | | 225.00- | 225.00- |
| 01/14 | | Fee | | | | | 20.00- | 245.00- |
| 01/15 | | | | | | | 245.00 | 0.00 |
| 01/16 | | | | | | | 212.10- | 212.10- |
| 01/16 | | | | | | | 20.00- | 232.10- |
| 01/16 | | | | | | | 883.80 | 647.90 |
| 01/16 | | GARDENA CA 1722 | | | | | 260.00- | 387.90 |
| 01/17 | | Withdrawal ACH 8884084394AMTPD TYPE: 8884084394 ID: 6331220046 CO: 8884084394AMTPD | | | | | 150.00- | 237.90 |
| 01/17 | | Withdrawal Debit Card | | | | | 4.35- | 233.55 |
| 01/17 | | Draft 000681 | | | | | 20.00- | 213.55 |

--- Continued on following page ---



P.O. Box 11547
Santa Ana, CA 92711-1547
714/258-4000
www.SchoolsFirstfcu.org

CHARMAINE B AQUINO

GARDENA CA 90249-4206

Account Number: 0000641199

Date: 01/01/13 – 01/31/13

PAGE: 3



| Posting Date | Eff. Date | Transaction Description | Pymt. Credit or Credit | Finance Charges | Fee or Charges | Trans. Amount | Balance |
|---|---|---|---|---|---|---|---|
| 01/17 | | Withdrawal Overdraft Fee | | | | 20.00- | 193.55 |
| 01/17 | | Draft 000608 | | | | 60.00- | 133.55 |
| 01/17 | | Withdrawal Overdraft Fee | | | | 20.00- | 113.55 |
| 01/16 | | Withdrawal Debit Card | | | | 214.68- | 101.13- |
| | | 01/16 01282411 DOLLAR LOAN CENTER LONG BEACH CA 2004 XIME | | | | | |
| 01/29 | | Deposit Online Banking Transfer From Share 20 | | | | 220.00 | 118.87 |
| 01/30 | | Withdrawal at ATM #006897 | | | | 20.00- | 98.87 |
| | | ATM KINECTA FEDERAL CREDIT GARDENA CA 172Z | | | | | |
| 01/30 | | Deposit ACH UnitedCashLoans | | | | 400.00 | 498.87 |
| | | TYPE: CREDIT ID: 9180289179 | | | | | |
| | | CO: UnitedCashLoans | | | | | |
| 01/30 | | Deposit | | | | 425.00 | 923.87 |
| 01/30 | | Withdrawal Debit Card | | | | 21.75- | 902.12 |
| | | 01/29 87570277 PHO CONSOMME GARDENA CA 1850 W Redondo Bea | | | | | |
| 01/30 | | Draft 000597 | | | | 225.00- | 677.12 |
| 01/31 | | Draft 000609 | | | | 15.23- | 661.89 |
| | | Processed Check - TARGET T0290 | | | | | |
| | | TYPE: PURCHASE ID: M911925808 | | | | | |
| 01/31 | | Withdrawal ACH 8884084394AMTPD | | | | ■■■■ | 511.89 |
| | | TYPE: 8884084394 ID: 6331220046 | | | | | |
| | | CO: 8884084394AMTPD | | | | | |
| 01/31 | | | | | | ■■■■ | 299.79 |
| 01/31 | | | | | | ■■■■ | 274.79 |
| 01/31 | | | | | | ■■■■ | 257.20 |
| 01/31 | | | | | | | |
| 01/31 | | | | | | | |
| 01/31 | | | | | | 0.00 | 257.20 |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Total NSF Fees | 0.00 | 0.00 |
| Total Overdraft Fees | 140.00 | 140.00 |

--- Continued on following page ---