**LAKESHORE LAW CENTER**
Jeffrey Wilens, Esq. (State Bar No. 120371)
18340 Yorba Linda Blvd., Suite 107-610
Yorba Linda, CA 92886
714-854-7205
714-854-7206 (fax)
jeff@lakeshorelaw.org

**THE SPENCER LAW FIRM**
Jeffrey P. Spencer, Esq. (State Bar No. 182440)
903 Calle Amanecer, Suite 220
San Clemente, CA 92673
949-240-8595
949-240-8515 (fax)
jps@spencerlaw.net

**Attorneys for Plaintiffs**

# UNITED STATES DISTRICT COURT,

## NORTHERN DISTRICT OF CALIFORNIA,

### OAKLAND DIVISION

| | |
|---|---|
| SEAN L. GILBERT, et. al. | ) Case No. CV-13-01171-JSW |
| | ) Complaint filed February 11, 2013 |
| | ) Trial Date: |
| | ) Pre-Trial Date: |
| Plaintiffs, | ) Discovery Cut-Off: |
| | ) |
| v. | ) **Class Action** |
| | ) **PLAINTIFFS' REPLY TO** |
| BANK OF AMERICA, N.A., et. al., | ) **OPPOSITION TO MOTION TO** |
| | ) **FILE FIFTH AMENDED** |
| | ) **COMPLAINT** |
| | ) Hearing Date: January 8, 2016, 9:00 am |
| | ) Department 5 |
| Defendants. | ) Hon. Jeffrey S. White, District Judge |

TO EACH PARTY AND THEIR ATTORNEY OF RECORD:

Plaintiffs Sean L. Gilbert, Keeya Malone, Kimberly Bilbrew and Charmaine B.

1  Aquino respectfully submits these further points and authorities and argument in reply
2  to Defendants' opposition to motion for leave to file a Fifth Amended Complaint.
3  DATED: December 28, 2015

　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　By　　_/s/_Jeffrey Wilens_____
　　　　　　　　　　　JEFFREY WILENS
　　　　　　　　　　　Attorney for Plaintiffs

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO FILE FIFTH AMENDED COMPLAINT—CV-13-01171-JSW

I. **THERE IS GOOD CAUSE TO ALLOW THE AMENDMENT SO THE CLASS DEFINITION CAN CONFORM TO THE EVIDENCE AND THE DEFINITION ALLEGED IN THE MOTION FOR CLASS CERTIFICATION.**

Defendants raise three arguments against granting leave to amend. First, they complain the amendment greatly expands the class to include persons whose information was never accepted by a lender (i.e., the corresponding lead was not acquired). Secondly, Defendants argue the deadline to amend has passed. Third, Defendants argue the redefined class cannot possibly state a legal claim. All of these arguments should be rejected.

A. **THE EXPANDED CLASS IS LIMITED TO THOSE PERSONS WHOSE "APPLICATION" WAS ACCEPTED BY A LENDER EVEN IF NO LOAN RESULTED.**

Defendants have overstated the "expansion" of the class as alleged in the Fifth Amended Complaint. Previously, the class was limited to persons who <u>obtained</u> payday loans through a Selling Source website (including moneymutual.com). Now it includes persons who <u>applied</u> for a loan through a Selling Source affiliated website <u>but only if the lead was acquired by a lender</u>. The term "applied" was not intended to refer to persons who filled out information on the Selling Source website but the loan application was never acquired by any lender. Because Defendants appear to be confused on this distinction, the following language clarifies the definition of the Main Class:

> All California residents listed in a spreadsheet produced by Defendants **that specifies the corresponding lead was "completed"** and **who applied for a payday loan** from an UNLICENSED LENDER on or after February 11, 2009 using any website affiliated with or in response to an email from Selling Source, LLC or one of its subsidiaries. Any lender owned by an American Indian tribe during the entire Class Period is excluded. (emphasis added)

In their opposition, Defendants state "Plaintiffs have greatly multiplied the scope of the class, as the majority of leads offered by Selling Source or its affiliates are not acquired by

1

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO FILE FIFTH AMENDED COMPLAINT—CV-13-01171-JSW

a lender." (Doc. 232, p. 2:7-9.) <u>That expansion is not what Plaintiffs want to do</u>. Plaintiffs are <u>not</u> seeking to include person in the class merely because they filled out a loan application and their information was "offered" to lenders. That <u>would</u> greatly increase the size of the class, but that is <u>not</u> what the newly defined Class is doing.

Similarly, Defendants state in their opposition, "Plaintiffs have long known that there would be persons that applied for payday loans but whose leads were never purchased by lenders, or which leads never resulted in a consummated loan." (Doc. 232, p. 5:3-5.) The first assertion that Plaintiffs knew there were persons whose leads were never purchased is true but such persons were never part of the putative class and even after this amendment still are not part of it. However, the second assertion is not true. Plaintiffs did not long know that even after an application met the lender's requirements and therefore the lead (or loan application) was purchased by a lender, the process still did not result in a consummated loan.

Thus Defendants' statement that "most leads" they offered are not successfully acquired by lenders is misleading. (Doc. 232, p. 5:5-6.) It may be true that most leads offered do not meet the requirements of any lender and therefore are not acquired, but that has no bearing of the proposed class. The new class definition does not encompass those leads. Defendants do <u>not</u> claim that most leads that do meet at least one lender's requirements and which therefore are acquired, never become consummated leads. In fact, that would be counter-intuitive. If lenders routinely purchased leads but never even made loans to the subjects in question, they would stop buying the leads in short order. That is not what happened.

Defendants' confusion is similarly evident in their statement that this amendment was not previously proposed because Plaintiff realized the transactions "did not generate income for Selling Source or its affiliates because their leads were not acquired by lenders." (Doc. 232, p. 5:13-16.) That's correct. Plaintiffs did not previously include

2

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO FILE FIFTH AMENDED
COMPLAINT—CV-13-01171-JSW

transactions where leads were not acquired by the lenders and Selling Source was not paid and still does not intend to do so.

To see why this amendment is necessary, we turn to Defendants' officer, Tim Madsen, who presents a concise explanation of how Defendants market payday loans to consumers. (Doc. 233-16, ¶¶ 2-10.) Defendants obtain leads which consist of the personal information for payday loan borrowers. Defendants then offer the leads to "screened lenders" who have contracted with Defendants. Lenders who are offered a lead but do not accept it are required to delete the consumer's personal information. Defendants maintain an electronic database of "all leads which have been offered since September, 2009 to contracting lenders." Reports from this database are the spreadsheets that were provided to Plaintiffs in discovery. The spreadsheets identify the potential borrower's name, address, phone number and email address. They also identify the date and time the lead is generated and the source of the lead. Most significantly for our purposes, the database indicates whether the lead "FAILED,"' meaning that it was not acquired by any lender to whom the lead was circulated, or was "COMPLETED," meaning the lead was acquired by a lender to whom it was circulated and, if so, the identity of the contracting lender.

To be clear, the proposed Main Class is only comprised of those borrowers whose loan applications correspond to the leads that were marked as "Completed" and not the greater number of leads that "Failed."

**B. ALTHOUGH THE COURT'S DEADLINE FOR AMENDMENTS HAS PASSED, THERE HAVE BEEN SUBSEQUENT AMENDMENTS AND THERE IS NO PREJUDICE TO DEFENDANTS IN ALLOWING THIS FURTHER REVISION.**

Although the Court did set a deadline to amend the complaint, it did not set a full schedule including discovery cutoff dates, pre-trial conference and trial dates. Moreover, as pointed out in the moving papers, amendments occurred after the deadline in response

3
PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO FILE FIFTH AMENDED COMPLAINT—CV-13-01171-JSW

to legal challenges asserted by Defendants. Defendants have requested a number of continuances over time, including of the briefing schedule on the motion for class certification, and the Court has been flexible in extending deadlines. There is no reason for that flexibility to change now.

Defendants complain they would be prejudiced by permitting the amendment because the size of the class would be greatly expanded. As explained above, this belief is misguided because it is premised on the faulty assumption that the new proposed class is includes consumers tied to "failed" leads, which it does not. It was always assumed that everyone listed in the database as being a person whose loan application was accepted by a lender would be a class member entitled to full relief. However, during the recent course of this litigation, it became clear that there were some isolated circumstances where an applicant met the lender's requirements and therefore the lender paid Defendants for the referral but no loan actually was consummated. These are the persons to be included in the new separate class which seeks only limited relief.

Defendants concede the amendment adds no new cause of action and adds no new remedy. The only change is to expand the class to include readily identifiable persons whose loan applications were "completed," but did not result in a loan being consummated. Defendants do not deny that they were paid money for these completed applications. Disgorgement of revenue from selling the leads was sought in prior versions of the complaint as noted in the moving papers as part of the remedy for borrowers who received loans. (Doc. 176, ¶¶ 1115, 128, Prayer for Relief ¶ 6.) Now it will also be the only remedy for those whose leads were acquired but they did not receive a loan. Defendants do not claim the amendment would trigger a need to conduct any additional discovery or cause any delay in the proceedings.

Finally, Defendants do not dispute that their records show Cash Yes purchased a lead from Defendants that was tied to Plaintiff Malone's loan application or that during

4

PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO FILE FIFTH AMENDED COMPLAINT—CV-13-01171-JSW

the course of this litigation Cash Yes presented evidence that the loan was never consummated.  Therefore, Malone could represent the proposed Main Class.

### C.  THE EXPANDED CLASS CAN STATE A LEGAL CLAIM.

Defendants' primary argument is that the amendment should be denied because the newly defined Main Class cannot state a legal claim.  Defendants discuss the second, third and fourth causes of action but there is no need to discuss those as Plaintiffs do not seek relief on those claims on behalf of the Main Class members.  The Main Class Members only seek relief under the CDDTL, the first cause of action.

Financial Code § 23005 (a) provides:

> A person shall not **offer**, originate, or make a deferred deposit transaction, arrange a deferred deposit transaction for a deferred deposit originator, **act as an agent for a deferred deposit originator**, or **assist a deferred deposit originator** in the origination of a deferred deposit transaction without first obtaining a license from the commissioner and complying with the provisions of this division. (emphasis added)

Financial Code § 23064 provides:

> Any person who is **injured by any violation** of this division may bring an action for the recovery of damages, an equity proceeding to restrain and enjoin those violations, or both. The amount awarded may be up to three times the damages actually incurred, but in no event less than the amount paid by the aggrieved consumer to a person subject to this section. If the plaintiff prevails, the plaintiff shall be awarded reasonable attorney's fees and costs. If a court determines by clear and convincing evidence that a breach or violation was willful, the court, in its discretion, may award punitive damages in addition to the amounts set forth above. Upon application, **the court may also grant** any equitable relief that it deems proper, including, but not limited to, a claim for restitution and **disgorgement**. (emphasis added)

The foregoing makes it clear that it is illegal (and a violation of the CDDTL) to offer a payday loan without a license (or assist the lender in offering the loan), even if the loan is

5
PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO FILE FIFTH AMENDED COMPLAINT—CV-13-01171-JSW

never consummated.  In fact it is not just illegal but a criminal offense.  (Financial Code § 23065.)

Defendants argue the amendment is futile because the proposed Main Class cannot allege a plausible way in which it was "injured" by a violation of the CDDTL.  Defendants insist "injured" must mean "lost money" on the loan because § 23064 provides that in no event can recoverable damages be less than the amount paid by the consumers on the loans.  However, the statute does not limit remedies to those found in a damages action.  The statute also provides relief even in the absence of financial damages.  Upon a showing of injury (which for that reason cannot be equated to "damages"), a consumer can bring "an equity proceeding" as an alternative to a claim for damages.  An equity action does not require Plaintiffs to plead financial loss.

Defendants do not otherwise discuss the injury requirement.  In particular, they offer no discussion of Article III standing.  For that reason alone, the Court should permit the amendment and Defendants can later bring a motion to dismiss and more fully brief the question whether the proposed Main Class members can obtain any form of relief under Financial Code § 23064 or whether Article III standing concerns are triggered.

Nevertheless, if the Court is expecting a fuller showing at this time that the Main Class can ultimately prevail on the CDDTL claim, Plaintiffs offer the following.  The CDDTL does not define the term "injured" to require a loss of money.  Since it is illegal for unlicensed lenders and their agents to offer a payday loan, persons to whom the illegal loans were offered fall within the universe of consumers intended to be protected by the statute.  The fact the statute allows consumers to recover "any" form of equitable relief, even absent any financial loss, further supports a broad construction of "injury."

Further support for a broad construction of "injury" is found in the fact nonrestitutionary disgorgement is an authorized remedy, even if it is the only remedy sought. In <u>Korea Supply Co</u>. v. <u>Lockheed Martin Corp</u>. (2003) 29 Cal.4th 1134, 1149-1152,

6
PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO FILE FIFTH AMENDED COMPLAINT—CV-13-01171-JSW

the California Supreme Court distinguished between restitution or restitutionary disgorgement on the one hand and nonrestitutionary disgorgement on the other hand. When the plaintiff seeks return of money that was in his possession or in which he has a vested interest, that is restitution. When the plaintiff seeks an order that a wrongdoer disgorge profits it illegally made from a transaction related to the plaintiff, that is nonrestitutionary disgorgement. While nonrestitutionary disgorgement is not available under the Unfair Competition Law, it is explicitly available under the CDDTL. (See also, Frieman v. San Rafael Rock Quarry, Inc. (2004) 116 Cal.App.4th 29, 36.)

As explained in Feitelberg v. Credit Suisse First Boston, LLC (2005) 134 Cal.App.4th 997, 1013, "with nonrestitutionary disgorgement, the focus is on the defendant's gain from the unfair practice; the plaintiff need not have suffered a loss." Along the same lines, the court in County of San Bernardino v. Walsh (2007) 158 Cal.App.4th 533, 542 explained that public policy does not allow a wrongdoer to profit from his own wrong, regardless of whether the other party suffered actual damages. "In particular, a person acting in conscious disregard of the rights of another should be required to disgorge all profit because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again." (Id.) This concept fits Selling Source's conduct in promoting illegal payday loans in exchange for commissions from the lenders.

Since the Legislature sought to protect consumers from even being "offered" illegal loans, and since disgorgement of profits made by the marketing or offering of illegal loans is a listed remedy, it follows that the Legislature intended "injury" to be defined broadly to include certain persons who were offered illegal payday loans.

At this point an argument could be made that the Legislature could not have intended to confer standing on all persons who were offered a payday loan. This Court need not expound on the universe of persons who might have standing to make a CDDTL

7
PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO FILE FIFTH AMENDED COMPLAINT—CV-13-01171-JSW

claim since there is a concrete, objective standard that can be used to distinguish the class members from other persons who might have only seen an advertisement for an illegal loan.

Each of the class members were not only exposed to an illegal loan offer, but completed the online application on the websites maintained or affiliated with Selling Source and was required to provide highly personal information including his name, address, wage information, bank account number, social security number, date of birth, etc. Further, the applications at issue met the criteria of the lender so the applications (or leads) were acquired by and thus seen by the lenders. Even if a consumer later backed out of the loan somehow, or the lender was unable to verify the consumer's employment, or the loan fell through for some other reason, the consumer's highly sensitive personal information was still disseminated to criminal lending operations (based overseas typically).

This leads to two sources of injury. First, Class Members were put at grave risk their sensitive information would be misused. They do not have to prove their information was actually misused because they do not seek damages for misuse, but they have sustained injury nonetheless. In a discussion of Article III standing, the Ninth Circuit has recognized that future risk of identity theft or misuse of personal information is sufficient to plead injury-in-fact for Article III standing. (Krottner v. Starbucks Corp. (9th Cir. 2010) 628 F.3d 1139, 1142 (holding a Plaintiff has standing where he alleges his personal information was wrongfully disseminated thereby increasing the risk of harm, regardless of whether the actual harm had yet occurred); see also, Antman v. Uber Techs., Inc. (N.D.Cal. Oct. 19, 2015, No. 3:15-cv-01175-LB) 2015 U.S. Dist. LEXIS 141945, at *28; In re Adobe Sys. Privacy Litig. (N.D.Cal. 2014) 66 F. Supp. 3d 1197, 1211; In re Sony Gaming Networks & Customer Data Sec. Breach Litig. (S.D. Cal. Jan. 21, 2014) 996 F. Supp. 2d. 942, 959-962.) Here, through the violation of the CDDTL the class members'

8
PLAINTIFFS' REPLY TO OPPOSITION TO MOTION TO FILE FIFTH AMENDED COMPLAINT—CV-13-01171-JSW

highly personal information was gathered via Selling Source's websites and then disseminated to the illegal lenders. The injury is not speculative. The information was given to criminals thereby meeting the requirements for showing "injury."

Second, consumers spent time (and money if their internet usage was metered or not unlimited) to type out their information on the online applications created by Selling Source Defendants. They may not have bothered to do that if they knew the lenders were illegal and criminal. Therefore, they wasted time and possibly money pursuing illegal loans which they would not have done absent Defendants' marketing of the illegal payday loans. Again, there is no need to attempt to place a value on this time or internet usage costs because damages are not being pursue for these Class Members (unless they also qualify for one of the other damages classes). They are only seeking disgorgement of Defendants' profits, an amount of money easily established from Defendants' own records.

## CONCLUSION

For the above stated reasons, Plaintiffs respectfully urge the Court to grant the motion to file the Fifth Amended Complaint.

DATED: December 28, 2015

        Respectfully submitted,

By *Jeffrey Wilens*
JEFFREY WILENS
Attorney for Plaintiff