**LAKESHORE LAW CENTER**
Jeffrey Wilens, Esq. (State Bar No. 120371)
18340 Yorba Linda Blvd., Suite 107-610
Yorba Linda, CA 92886
714-854-7205
714-854-7206 (fax)
**jeff@lakeshorelaw.org**

**THE SPENCER LAW FIRM**
Jeffrey P. Spencer, Esq. (State Bar No. 182440)
903 Calle Amanecer, Suite 220
San Clemente, CA 92673
949-240-8595
949-240-8515 (fax)
**jps@spencerlaw.net**

**Attorneys for Plaintiffs**

# UNITED STATES DISTRICT COURT,

## NORTHERN DISTRICT OF CALIFORNIA,

### OAKLAND DIVISION

| | |
|---|---|
| SEAN L. GILBERT, et. al. | ) Case No. CV-13-01171-JSW |
| | ) Complaint filed February 11, 2013 |
| | ) Trial Date: |
| | ) Pre-Trial Date: |
| Plaintiffs, | ) Discovery Cut-Off: |
| | ) |
| v. | ) **Class Action** |
| | ) **PLAINTIFFS' OPPOSITION TO** |
| BANK OF AMERICA, N.A., et. al., | ) **DEFENDANTS' ADMINISTRATIVE** |
| | ) **MOTION TO SEAL DOCUMENTS** |
| | ) Hearing Date: |
| | ) Department 5 |
| Defendants. | ) Hon. Jeffrey S. White, District Judge |

TO EACH PARTY AND THEIR ATTORNEY OF RECORD:

    Plaintiffs Sean L. Gilbert, Keeya Malone, Kimberly Bilbrew and Charmaine B. Aquino respectfully submits these points and authorities and argument in opposition to

1

Defendants' administrative motion to seal certain documents. (Doc. 245.) Plaintiffs refer to the MoneyMutual Defendants as "Selling Source."

Defendants seek to seal Docs. 228-2, 228-5, 228-6 and 237-2. The motion should be denied because none of these records contain material that is so confidential or proprietary that public access should be denied. Local Rule 79-5 (d) (1) (A) provides that the existence of a "stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Instead, Defendants must establish good cause to seal these documents. As Defendants put it, they are required to make a "particularized showing" under the "good cause" standard of Rule 26(c). (Doc. 245-3, p. 3:3-5.)

Defendants claim the documents contain "commercially sensitive information, which if generally known would harm the MoneyMutual Defendants' business." Defendants also claim the information could be used by Defendants' competitors to approach Defendants' customers and undercut the prices to gain a competitive advantage. Defendants also claim disclosure could damage customer relationships if one customer felt it was getting less favorable consideration than another customer. However, the evidence to support these contentions is conclusory and lacking any substance.

The Madsen declaration (Doc. 245-2) offered by Defendants does not identify any "competitors" or even establish that such exists. The declaration does not establish that any of the lenders disclosed in the documents exist anymore either. In fact, there is no evidence in the declaration that Defendants even continue to do business with <u>these</u> lenders, all of whom are illegal. All of these lenders have been shown (in the moving papers for class certification) to be unlicensed (Doc. 227-1, ¶ 2) Therefore, these unidentified competitors would not be able to approach these lenders which do not exist

anymore and undercut any pricing. Moreover, even if a lender still existed, it would be able to approach a competing lead service and disclose Defendants' pricing in order to strike a better deal. Defendants do not cite any authority that a supplier's pricing structure, which is readily disclosed to actual or potential buyers and which can thereafter be shared with anyone, is something confidential.

**Doc. 228-2** is a redacted printout of a spreadsheet that states information about class members' loan applications including the date the class member filled out an online loan application on a Selling Source affiliated website (including Moneymutual as reflected in column 6), the name of the lender or lender related company that purchased the lead, a code that identifies the marketing program but which would be meaningless to the public, a number which is how much money the lender paid for the lead, a five digit number that is also meaningless to the public, the website where the class member applied for the loan, and the name of the company that owns or controls the website.

None of this information is sensitive or confidential. Each class member would know the date he applied for a loan, as well as the website where he applied. The name of the company associated with the website is not a trade secret or confidential and could be obtained by a class member through conventional research on the Internet. The amount of money paid for the leads (or at least the price range) is something already in the public record. (Doc. 176, ¶ 115; Doc 227, p. 8:14-18.) Moreover, the document only reflects transactions that happened on March 6, 2012, almost four years ago. There is no evidence such stale information would be of any use to competitors of Selling Source, if they even exist.

**Doc. 228-5 and 228-6** are examples of the lead purchase insertion orders, which are the agreements by which lenders purchased completed loan applications (i.e., leads)

3
PLAINTIFFS' OPPOSITION TO ADMINISTRATIVE MOTION TO SEAL—CV-13-0171-JSW

from Selling Source. While the most recent agreement is dated March 5, 2014, most of the agreements date back to 2011-2013 and one dates back to December 2009. Thus, none of the information is "current" or even close to current. The documents include contact information for Selling Source employees (business addresses) and the lender's employees or agents (again apparently business addresses). There is nothing confidential about that information. The documents also reflect the "qualifications" to make the leads suitable for the lenders, including in which states potential borrowers must or must not reside.

To some extent, this "targeting data" might be considered sensitive information by the lenders, but the lenders are not making the motion to seal. Moreover, there is no evidence in the form of a declaration from any lender claiming the information is sensitive. In fact, as stated above, there is no evidence the lenders even exist anymore. Finally, as stated above, since all of these lenders have been shown to be unlicensed and therefore illegal, there is no public interest in keeping the identity of the illegal lenders confidential. It should be noted that some of the owners of these lenders were previously Defendants this lawsuit (until arbitration was compelled) and they never argued in this Court that the lenders were licensed or the loans were legal under California law. Nor have the Selling Source Defendants made such an argument. Finally, these documents do disclose the price paid per lead, but as stated earlier that information is already in the public record.

**Doc. 237-2** is a spreadsheet showing Plaintiff Malone's attempts to procure a loan using Selling Source websites. The information includes her name, email address, city, state and zip code of residence, and the IP address of the computer or device she used to access the Internet. None of that is sensitive information and, in any event, it was

disclosed by Ms. Malone. The rest of the document is the name of the company that owns the website she visited, and a notation whether the loan was "completed" or "failed." Malone already knew these things before the documents were disclosed so they cannot be considered to be confidential.

In summary, the documents do contain confidential or sensitive information in light of these facts: some of the information is already in the public record, some of the information is comprised of names and business addresses for witnesses and participants, and some of the information is quite old and therefore stale. Finally, there is no showing by Defendants that they are currently doing business with any of the illegal lenders so there is no "on-going" business that would be undermined if the documents were not sealed.

DATED: January 12, 2016

      Respectfully submitted,

      By _/s/_Jeffrey Wilens_____

      JEFFREY WILENS
      Attorney for Plaintiffs