DONALD J. PUTTERMAN (BAR NO. 90822)
MICHELLE L. LANDRY (BAR NO. 190080)
TOBIAS G. SNYDER (BAR NO.289095)
PUTTERMAN LOGAN LLP
One Maritime Plaza
300 Clay Street, Suite 1925
San Francisco, CA 94111
Tel:        (415) 839-8779
Fax:       (415) 376-0956
E-mail:   dputterman@plglawyers.com
              mlandry@plglawyers.com
              tsnyder@plglawyers.com

Attorneys for Defendants
MoneyMutual, LLC, SellingSource, LLC, Montel Brian Anthony Williams, Glenn McKay, PartnerWeekly, LLC, John Hashman, Brian Rauch, Samuel W. Humphreys, Douglas Tulley, and Alton F. Irby III

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# (OAKLAND DIVISION)

| | |
|---|---|
| SEAN L. GILBERT, KEEYA MALONE, KIMBERLY BILBREW, CHARMAINE B. AQUINO, on behalf of themselves and all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>Defendants. | Case No. 4:13-cv-01171-JSW<br><br>**MONEYMUTUAL DEFENDANTS' AND MONTEL WILLIAMS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO FILE FIFTH AMENDED COMPLAINT**<br><br>Date: February 5, 2016<br>Time: 9:00 A.M.<br>Dept. 5<br>Hon.   Jeffrey S. White, District Judge |

I.      INTRODUCTION AND SUMMARY OF ARGUMENT

On January 19, 2016, the Court ordered further briefing on Plaintiffs' motion to certify class and motion for leave to file a Fifth Amended Complaint. Specifically, the Court noted that in their reply briefs, Plaintiffs "make clear that the Main Class will only seek relief on the claim for violations of California Deferred Deposit Transactions Law ('CDDTL Claim')," and ordered the MoneyMutual Defendants to file sur-replies "limited specifically to the impact of the clarified definition of the Main Class and the fact that this class will only seek relief on the CDDTL claim." Doc. 248.

Plaintiffs' so-called clarification – which is really a new class theory and not a clarification -- has no impact on the issues raised in Defendants' opposition briefing. It is simply a new attempt at an end-run around the indisputable fact that Plaintiffs have no basis to actually ascertain the class of consumers who suffered a cognizable CDDTL injury, because the database lists produced by the MoneyMutual Defendants during discovery go no further than to identify those persons whose *leads* were acquired by payday lenders – they contain no information at all allowing Plaintiffs to determine the identities of consumers who *actually entered into loan agreements with payday lenders and therefore allegedly suffered damages recoupable pursuant to the CDDTL*. To surmount this dispositive obstacle to class certification, Plaintiffs urge – without any support whatever – that no actual damages must be suffered for a private person to bring a CDDTL claim, in order to justify certification of a class which Plaintiffs *know* includes some non-ascertainable number of persons who, despite having had their leads purchased nonetheless did not complete loan agreements and therefore did not pay anything to anybody, suffered no damages cognizable under the CDDTL and have no standing to sue.

That there are many such persons is confirmed by Plaintiffs' own testimony, the contents of the database excerpts used at their depositions, and the Declaration of Tim Madsen, all of which accompanied Defendants' opposition papers. Thus the new proposed Main Class remains far too overbroad. It is merely another attempt by Plaintiffs to avoid the expense and effort of taking third-party discovery from lenders to obtain information concerning the identities of those persons appearing in the MoneyMutual Defendants' databases who (a) actually entered into loan agreements

1  with unlicensed lenders and (b) actually paid money (as opposed to, for example, outright defaulting)
2  in connection with any such loans.

3        Because the Proposed Fifth Amended Complaint still seeks to expand the class solely to
4  encompass individuals whose claims are futile, leave to file the complaint should be denied.

## II. ARGUMENT

### A. Plaintiffs Have Changed Their Class on Reply

Plaintiffs' claim to be merely "clarifying" the scope of the Main Class on reply because of Defendants' alleged "confusion," is egregious and disingenuous. Plaintiffs' original Main Class definition began, "All California residents listed in a spreadsheet produced by Defendants as being persons **who applied for a payday loan** from an UNLICENSED LENDER . . . ." *See* Doc. 226-1 (Prop. 5AC) at ¶ 23. It now reads, "All California residents listed in a spreadsheet produced by Defendants **that specifies the corresponding lead was 'completed'** as being persons **who applied for a payday loan** from an UNLICENSED LENDER . . . ." *See* Doc. 236 (Reply Br.) at 1. On their face, these two definitions are radically different, as demonstrated even by Plaintiffs' own allegations that consistently use the term "apply" to refer to the consumers' act of entering information into a form. *See* Doc. 226-2 (Prop. 5AC) at ¶ 121 ("In reliance on [Defendants' representations] . . . Plaintiffs applied for loans through the MoneyMutual website. After *they submitted their applications*, they were notified of the name or names of lenders who were willing to make loans to them) (emphasis added); Doc. 227-5 (Aquino Decl.) at ¶ 2 ("I applied for payday loans on the Internet"); Doc. 227-3 (Gilbert Decl.) at ¶ 2 ("On or about November 26, 2012 I submitted an online application for a payday loan through the MoneyMutual.com website"); Doc. 227-6 (Malone Decl.) at ¶ 2 ("On or about November 29, 2012 I submitted an online application for a payday loan through the MoneyMutual.com website.").

We recognize that some authority exists stating that the Court "may consider proposals to change a class definition first raised in a plaintiff's reply." *Rojas v. Marko Zaninovich, Inc.*, No. 1:09–cv–00705 AWI JLT, 2012 WL 1232273 (E.D. Cal. Apr. 12, 2012), *citing Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 161 (C.D.Cal.2002). We

respectfully submit, however, that this does not warrant unprincipled changes intended to find a class, any class, sufficiently significant to make the litigation economically worthwhile for Plaintiffs' counsel. Plaintiffs have made this change without any cognizable rationale, especially since the Defendants are suffering from no confusion whatever. The true rationale for Plaintiffs' latest version of its proposed Main Class is that they are unwilling to take the necessary discovery needed to establish an ascertainable class.

### B. Plaintiffs Still Seek to Bring Futile Claims By Adding Class Members Who Paid No Money to Anybody and Have No Cognizable Damages Caused by Any Alleged Violation of the CDDTL

Plaintiffs acknowledge that the original Main Class definition proffered in Plaintiffs' Proposed Fifth Amended Complaint would "greatly increase the size of the class" over that in the currently operative Fourth Amended Complaint. Doc. 236 (Reply Br.) at 2. However, it is unknown the extent to which the "clarified" definition expands the class, because neither the MoneyMutual Defendants nor, apparently, the Plaintiffs have any information on whether individual "Completed" lead were funded or not. Although Plaintiffs imply that only a relatively small number of "Completed" leads are not funded (Doc. 236 (Reply Br.) at 2), this suggestion is pure speculation. Even looking at the testimony of and MoneyMutual Defendants' database records pertaining to just the four named Plaintiffs show that significant numbers of acquired leads may nonetheless not result in actual loan agreements. For example, in their opposition to their motion for class certification, Plaintiffs discuss a "Completed" but unfunded loan for Plaintiff Keeya Malone, the details of which are only available because of discovery received from Cash Yes. Doc. 237 at 4. As discussed in the MoneyMutual Defendants' and Mr. William's opposition brief, Plaintiffs had significant trouble recalling whether loans were funded, even when presented with the database spreadsheets to be relied on by Plaintiffs (Doc. 233 (Op. Br.) at 11); Plaintiff Gilbert flatly denied even applying for loans that appeared in the database and for which, as the Madsen Declaration shows, he most certainly did apply (*see* Doc. 233-4 (Putterman Decl.), Ex. D (Gilbert Decl.) at 73:14-77:22; Doc. 233-16 (Madsen Decl.) ¶ 17, Ex. E).

The plain language of Financial Code § 23064, grants a private right of action to "[a]ny person who is injured by any violation of" the CDDTL. Plaintiffs, however, argue the opposite: that a private cause of action does not require actual injury! Unfortunately, they confuse the rights of a private person with those of the Commissioner of Business Oversight. The CDDTL provision authorizing enforcement actions by the Commissioner of Business Oversight separates out the provisions allowing the Commissioner to seek equitable relief, monetary relief, and civil penalties: the CDDTL *does not* contain an injury requirement for equitable actions and for civil damages, but states that the Commissioner may seek restitution, disgorgement, or damages "on behalf of the persons *injured*." Fin. Code § 23051 (emphasis added). This is different than the provision creating a private right of action, which includes an injury requirement for *both* monetary and equitable relief, and does not authorize civil penalties. *Id.* at § 23064. In that sense, it mirrors California's Unfair Competition Law, which gives a right to restitutionary and equitable relief, but only if a private plaintiff has suffered actual injury cognizable under the UCL. *See In re Tobacco II Cases*, 46 Cal.4th 298, 331-334 (2009). Plaintiffs' argument that because the statute allows private plaintiffs to also seek equitable relief, it somehow eliminates the injury requirement is just plain wrong. Doc. 236 (Reply Br.) at 6.[1]

The cases cited by Plaintiffs in their discussion of disgorgement are not relevant because none of them address the real issue before the Court, which is not what form of relief may be obtained by a private party who has suffered injury and therefore has standing to sue, but the foundational issue that proposed class members who have *not* suffered injury cognizable under the CDDTL do *not* have standing to assert any CDDTL cause of action and therefore *cannot* be included in the proposed class. Each of the Plaintiffs' cited cases involved plaintiffs who were able to allege actual injury. *See Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal.4th 1134, 1140 (2003) (alleging unfair competition that resulted in loss of prospective business advantage); *Frieman v. San Rafael Rock Quarry, Inc.* 116 Cal.App.4th 29, 39 (2004) (alleging unfair competition and public nuisance

---

[1] Plaintiffs also natter on about the distinction between restitutionary and non-restitutionary disgorgement, but totally miss the point at issue here: what form of disgorgement a private plaintiff might be entitled to recover pursuant to the CDDTL *if they actually suffered injury and had standing to sue* is completely irrelevant when in fact they entered into no loan agreement, paid nothing, therefore suffered no injury and simply do not have standing to sue.

1  resulting in "annoyance, inconvenience, and discomfort"); *Feitelberg v. Credit Suisse First Boston, LLC* 134 Cal.App.4th 997, 1005 (2005) (alleging unfair competition in the form of biased stock reports, which injured stock holders by preventing them from receiving "'a sound basis for evaluating' their investments"; sufficiency of injury not reached due to failure to allege recoverable damages); *County of San Bernardino v. Walsh* 158 Cal.App.4th 533, 538-539 (2007) (county injured by officials' bribery scheme that led to inflated contract for waste management services). And, of course, not one of these cases involved the CDDTL, while Plaintiffs have disavowed any reliance on the UCL in support of their purported Main Class, Mark II.

Nonetheless, Plaintiffs assert that "[s]ince the Legislature sought to protect consumers from even being 'offered' illegal loans, and since disgorgement of profits made by the marketing of offering of illegal loans is a listed remedy, it follows that the Legislature intended 'injury' to be defined broadly to include certain persons who were offered illegal payday loans." Doc. 236 (Reply Br.) at 7. Plaintiffs' conclusion most certainly does *not* follow: indeed, if the courts were to adopt Plaintiffs' view that a claim for disgorgement under the CDDTL could be brought without any actual injury, merely by being "offered" a loan, that statute would be left in the same place as the UCL prior to Proposition 64, when "a plaintiff could bring suit without standing and without any claim that he had suffered any injury because of the statutory violation he was attacking," which "served as a gateway for diligent protectors of consumer rights as well as the unscrupulous." *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1136 (C.D. Cal. 2005). Indeed, the potential for abuse would be even more enticing, given the greater reach of nonrestitutionary disgorgement.

C. **Plaintiffs' Fail to Demonstrate that Class Plaintiffs Have been Injured Under the CDDTL in a Manner Other than Paying Loan Fees**

As a default from the absurdity of their argument that the CDDTL grants every person in California the right to sue even in the absence of actual injury, Plaintiffs offer two suggestions as to the "injury" suffered by Plaintiffs. First, Plaintiffs allege that "Class Members were put at grave risk their sensitive information would be misused." Doc. 236 (Reply. Br.) at 8. Second, "consumers spent time (and money if their internet usage was metered or not unlimited) to type out their information on the online applications created by SellingSource Defendants." *Id*. at 9.

At the outset, these alleged injuries are irrelevant, because neither has anything to do with the CDDTL violations alleged by Plaintiffs. Financial Code § 23064 grants a private right of action to "[a]ny person who is *injured by any violation of*" the CDDTL (emphasis added). Where a statute provides standing to persons "injured by a violation" of a particular law, the plaintiff's injury must have actually resulted from the claimed violation. *See, e.g., Boorstein v. Men's Journal LLC*, No. CV 12–771 DSF (Ex), 2012 WL 2152815, *2-3 (C.D. Cal. Jun. 14, 2012) (plaintiff lacked standing to sue under California's "Shine the Light" law, which granted standing to consumers "injured by a violation of this title"; "Because the violation alleged by Plaintiff was not the cause of the purported economic injury, this theory does not provide Plaintiff with statutory standing to sue."); *Miller v. Hearst Comm'ns, Inc.*, No. CV 12–0733–GHK (PLAx), 2012 WL 3205241 (C.D. Cal. Aug. 3, 2012) (same); *c.f., Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F.Supp.2d 1166, 1195 (N.D. Cal. 2009) (to bring private action under Federal antitrust laws, "the antitrust violation need not be the sole cause of the injury, though it must be a material and a substantial cause of the injury"); *Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 799 (9th Cir. 1996) (where Hawaii statute gave private right to sue for injury caused by violation of statute, "[t]he mere existence of a violation is not sufficient ipso facto to support the action; forbidden acts cannot be relevant unless they cause private damage").

Here, Plaintiffs do not even attempt to connect the MoneyMutual Defendants' alleged violation of the CDDTL to either of the two "injuries" identified above. For good reason: none of the named Plaintiffs could identify any evidence proximately linking their submission of information to MoneyMutual to any alleged unlawful dissemination of their private information. *See* Doc. 233-4 (Putterman Decl.), Ex. A (Malone Dep.) at 23:16-24:17; 26:21-27:15; 105:13-17 (Plaintiff Malone had no knowledge of information being sold by a MoneyMutual Defendant or a lender); *id.*, Ex. C (Bilbrew Dep.) at 48:12-51:13; 54:10-12; 61:11-62:25; 81:4-85:21 (Plaintiff Bilbrew could not identify any specific reason to believe that MoneyMutual had disseminated her personal information); *id.*, Ex. B (Aquino Dep.) at 28:3-37:3, 77:1-13 (Plaintiff Aquino had no knowledge of how specifically third parties might have received her information). Moreover, Plaintiffs likewise make no allegations and present no evidence suggesting that the licensing status of lenders in the

SellingSource network has any connection to the alleged misuse of their private information – let alone that any failure to license in California could have *caused* the improper dissemination of personal information. Not surprisingly, therefore, none of the cases cited by Plaintiffs imply that a plaintiff would be able to use this form of injury to bring suit regarding statutory violations with no factual or proximate causal relationship to the misuse of private information. *See Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1140 (9th Cir. 2010) (alleging Starbucks was negligent in failing to prevent theft of laptop containing personal information for 97,000 Starbucks employees); *Antman v. Uber Techs., Inc.*, No. 3:15-cv-01175-LB, 2015 WL 6123054, at *1 (N.D.Cal. Oct. 19, 2015) (alleging Uber violated California statutes by failing to maintain reasonable security procedures to protect drivers' personal information and promptly notify affected drivers); *In re Sony Gaming Networks and Customer Data Security Breach Litigation,* MDL No. 11md2258 AJB (MDD), 996 F.Supp.2d 942, (S.D. Cal. Jan. 21, 2014) (dismissing all causes of action except for consumer protection claims alleging misrepresentations regarding Sony's data security). [2]

      Moreover, in their Proposed Fifth Amended Complaint, Plaintiffs' allegations regarding the possible sharing of personal information – which as discussed above they cannot and will not be able to prove since they are unwilling to take discovery – relate only to their UCL claim that lenders violated the Code of Lender Conduct, and thus that the MoneyMutual Defendants' representations regarding the Code were misleading. *See* Doc. 226-2 (Prop. 5AC) at ¶¶ 104, 123. These allegations have nothing to do with their CDDTL claim. Since Plaintiffs have disavowed certification of the new Main Class for the purpose of pursuing their UCL claims, it is too late for a flip-flop.

      Plaintiffs likewise fail to allege or produce any evidence indicating consumers' spending of "time" on online applications had any connection to the licensing status of lenders. More to the

---

[2] In Plaintiffs' reply brief, they claim that "Defendants do not otherwise discuss the injury requirement. In particular, they offer no discussion of Article III standing. For that reason alone, the Court should permit the amendment . . . ." Doc. 236 (Reply Br.) at 6. The MoneyMutual Defendants are unclear how Plaintiffs can imply that they do not discuss standing, when in the preceding paragraph Plaintiffs themselves cite the opposition argument that Plaintiffs who did not pay fees lack standing to sue under the CDDTL. Regardless, Plaintiffs put the cart before the horse. Article III standing requires "injury, causation, and redressability." *Edwards v. First American Corp.*, 610 F.3d 514, 517 (9th Cir. 2010). The MoneyMutual Defendants assert that Plaintiffs who paid no fees suffered no injury, and would fail to satisfy this standard. However, even if these plaintiffs *did* have Article III standing, it would be irrelevant if they failed to satisfy California's requirement to bring a CDDTL claim in the first place.

point, it can be safely assumed that no potential class member spent time filling out an Internet form *because* a lender was unlicensed. At this point, Plaintiffs are grasping at straws – if an individual received a paper cut from a letter sent by an unlicensed lender, would plaintiffs argue that this was a sufficient "injury" under Section 23064? Arguments of this type are nothing more than arguments that there should be no standing requirement at all because some sort of *de minimis* injury can always be alleged. *De minimus non curat lex* – the law does not concern itself with trifles. *See Harris v. Time, Inc.*, 191 Cal. App. 3d 449, 459 (1987) (affirming dismissal where "plaintiffs' real complaint is that they were tricked into opening a piece of junk mail").

### III. CONCLUSION

Plaintiffs' "clarification" of the scope of the Main Class has no impact on the fact that even individuals leads that were "Completed" by being acquired by a lender, cannot be assumed to have entered into loan agreements or to have paid any money to anybody, in which case they suffered no injury and have no standing to sue under the CDDTL, and for that reason Plaintiffs' motion for leave to file the Fifth Amended Complaint proposing a new Main Class should be denied.

Dated: January 25, 2016                    PUTTERMAN LOGAN LLP

                                           By:    /S/ *Donald J. Putterman*
                                                  Donald J. Putterman

                                           Attorneys for Defendants MoneyMutual, LLC, SellingSource, LLC, Montel Brian Anthony Williams, Glenn McKay, PartnerWeekly, LLC, John Hashman, Brian Rauch, Samuel W. Humphreys, Douglas Tulley, and Alton F. Irby III