DONALD J. PUTTERMAN (BAR NO. 90822)
MICHELLE L. LANDRY (BAR NO. 190080)
TOBIAS G. SNYDER (BAR NO.289095)
PUTTERMAN LOGAN LLP
One Maritime Plaza
300 Clay Street, Suite 1925
San Francisco, CA 94111
Tel:        (415) 839-8779
Fax:       (415) 376-0956
E-mail:   dputterman@plglawyers.com
             mlandry@plglawyers.com
             tsnyder@plglawyers.com

Attorneys for Defendants
MoneyMutual, LLC, SellingSource, LLC, Montel Brian Anthony
Williams, Glenn McKay, PartnerWeekly, LLC, John Hashman,
Brian Rauch, Samuel W. Humphreys, Douglas Tulley, and
Alton F. Irby III

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (OAKLAND DIVISION)

| | |
|---|---|
| SEAN L. GILBERT, KEEYA MALONE, KIMBERLY BILBREW, CHARMAINE B. AQUINO, on behalf of themselves and all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>Defendants. | Case No. 4:13-cv-01171-JSW<br><br>**THE MONEYMUTUAL DEFENDANTS' AND MONTEL WILLIAMS' SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY CLASSES**<br><br>Date: February 5, 2016<br>Time: 9:00 A.M.<br>Dept. 5<br>Hon.  Jeffrey S. White, District Judge |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

On January 19, 2016, the Court ordered further briefing on Plaintiffs' motion to certify class and motion for leave to file a Fifth Amended Complaint. Specifically, the Court noted that in their reply briefs, Plaintiffs "make clear that the Main Class will only seek relief on the claim for violations of California Deferred Deposit Transactions Law ('CDDTL Claim')," and ordered the MoneyMutual Defendants to file sur-replies "limited specifically to the impact of the clarified definition of the Main Class and the fact that this class will only seek relief on the CDDTL claim." Doc. 248.

Plaintiffs' so-called clarification is really a new class theory which, however, has no impact on the issues raised in Defendants' opposition briefing. It is a futile effort to evade the indisputable fact that Plaintiffs have no basis to actually ascertain the class of consumers who suffered a cognizable CDDTL injury, because the database lists produced by the MoneyMutual Defendants during discovery go no further than to identify those persons whose *leads* were acquired by payday lenders – but provide no information at all allowing Plaintiffs to determine the identities of consumers who *actually entered into loan agreements with payday lenders and therefore allegedly suffered damages recoupable pursuant to the CDDTL.* Because the main class would include both these individuals who suffered no injury *and* individuals who paid loan fees, and thus have a stronger claim to injury, common issues do not predominate. To surmount this dispositive obstacle to class certification, Plaintiffs urge – without any support whatsoever – that no actual damages must be suffered for a private person to bring a CDDTL claim, in order to justify certification of a class which Plaintiffs *know* includes some non-ascertainable number of persons who, despite having had their leads purchased nonetheless did not complete loan agreements and therefore did not pay anything to anybody, suffered no damages cognizable under the CDDTL and have no standing to sue.

That there are very many such persons is confirmed by Plaintiffs' own testimony, the contents of the database excerpts used at their depositions, and the Declaration of Tim Madsen, all of which accompanied Defendants' opposition papers. Thus the new proposed Main Class remains far too overbroad, and is simply another attempt by Plaintiffs to avoid the expense and effort of taking third-party discovery from lenders to obtain information concerning the identities of those persons

appearing in the MoneyMutual Defendants' databases who (a) actually entered into loan agreements with unlicensed lenders and (b) actually paid money (as opposed to, for example, outright defaulting) in connection with any such loans.

In Plaintiffs' reply in support of their motion to certify class, they look to confuse this issue by somehow arguing that the Main Class is entirely separate and apart from the two putative subclasses. How is that possible? Not only is it inconsistent with their own pleading, but if the subclasses are not subclasses of the Main Class, then of what are they subclasses? It is plain that Plaintiffs are now tendering a Main Class, with subclasses, which is hopelessly tangled up by including persons with no conceivable claim under the CDDTL and with radically different legal and factual issues.

Because Plaintiffs' Main Class is still impossibly cleaved between those whose claims are futile, and those who have an *argument* that they can bring a claim under the CDDTL, the motion for class certifications should be denied.

**II.    ARGUMENT**

**A.    Plaintiffs' Misrepresent the Structure of Their Class Definitions[1]**

Before discussing why Plaintiffs' restriction of the Main Class to their CDDTL Claim has no impact on the MoneyMutual Defendants' arguments, we must first highlight how Plaintiffs are obfuscating the nature of their class definitions. Specifically, Plaintiffs imply that the Main Class is distinct from the two subclasses, claiming that "[t]he question is whether individual questions predominate within a particular class (or subclass), not when all the proposed classes are lumped together." Doc. 237 (Reply Br.) at 3. Yet Defendants are not "lumping" anything together: there are not "**three** proposed classes," as asserted by Plaintiffs in their reply (Doc. 237 at 3), rather there is one Main Class, which wholly encompasses two smaller, nested subclasses. Not only is this patently clear from the class definitions themselves, but also this is how the class definitions are described in Plaintiffs' motion to certify class, which states: "The Main Class is California residents who applied

---

[1] As discussed more fully in the MoneyMutual Defendants' and Mr. Williams' sur-reply in opposition to Plaintiffs' motion for leave to amend, Plaintiffs have not "clarified" the definition of their Main Class, so much as they have redefined the class in their reply brief.

for a payday loan from certain unlicensed lenders using one of Defendants' affiliated websites. There are subclasses of *those persons* who actually received a payday loan either using the MoneyMutual website or another SellingSource website." Doc. 227 (Cert. Br.) at 4-5 (emphasis added).

The SellingSource Class and the MoneyMutual Class are therefore not simply "the other two classes," apart from the Main Class but rather are *wholly encompassed within* the Main Class. Doc. 237 (Reply Br.) at 3. Put another way, a subclass member is simply a Main Class member who received a loan after submitting their information through a SellingSource affiliate or through the MoneyMutual website. What the MoneyMutual Defendants highlight in their opposition brief are the significant differences *within the Main Class* between the Main Class members that are also subclass members (because they received loans), and the Main Class members who are not subclass members (because they did not receive loans).[2]

Plaintiffs' reply brief, surprisingly, explicitly acknowledges this cleavage, admitting that, "Yes, the members of the Main Class would be subject to a legal challenge that the members of the other two classes would not be subject to." Doc. 237 (Reply Br.) at 3. Perhaps Plaintiffs do not fully appreciate the significance of this admission. Plaintiffs' above admission is effectively saying, "Yes, the members of the Main Class [who did not receive loans] would be subject to a legal challenge that the members [of the Main Class who did receive loans] would not be subject to." Despite Plaintiffs' assertion, this distinction *is* of "legal significance." *See id.* at 3. By analogy, this would be like having a Main Class defined as all dogs, a subclass defined as poodles, making the statement, "dogs would be subject to a legal challenge that poodles would not be subject to," and not recognizing that this statement creates a distinction in your Main Class between the poodles and the other dogs. Indeed, Plaintiffs failure to acknowledge this basic fact of their class definitions is baffling.

As discussed below, the members of the Main Class who did not receive loans are subject to a standing challenge based on the fact they suffered no injury, which defeats commonality. And, since even the Main Class as "clarified" in Plaintiffs' Reply to the Opposition to Motion to Certify Class

---

[2] It should be evident by context that where the MoneyMutual Defendants refer to "the class" when discussing standing issues in their opposition brief (Doc. 233 (Opp. Br.) at 6-8), they are referring to the Main Class (which wholly encompasses the two smaller subclasses). The MoneyMutual Defendants apologize if this was not clear to the Court.

continued to include persons who did not receive loans, nothing has been changed by Plaintiffs' so-called clarification. *See* The MoneyMutual Defendants' and Montel Williams' Surreply in Opposition to Plaintiffs' Motion to Certify Classes, at § II(B), (C).

> **B.    Individual Issues Predominate Because the Main Class is Hopelessly Divided on the Issue of Standing under the CDDTL**

The MoneyMutual Defendants' opposition to class certification shows that common issues of law or fact cannot predominate any class composed of individuals who both did and did not receive funded loans. In their opposition to class certification, the MoneyMutual Defendants stated the following:

> Plaintiffs' First Cause of Action is for alleged violation of the California Deferred Deposit Transaction Law ("CDDTL"), Financial Code Section 23000 *et seq.*, charging that the MoneyMutual Defendants and Mr. Williams assisted in "offering" loans from unlicensed lenders.  Section 23064 of the Financial Code creates a private right of action for individuals *harmed* by a violation of that chapter:
>
>> Any person who is injured by any violation of this division may bring an action for the recovery of damages, an equity proceeding to restrain and enjoin those violations, or both. The amount awarded may be up to three times the damages actually incurred, but in no event less than the amount paid by the aggrieved consumer to a person subject to this section. . . .
>
> A clear legal question arises, applicable to only a portion of the class: can an individual who applied for, but did not receive, a loan from an unlicensed lender and therefore never paid anything to anybody – legally, illegally or in any other possible respect – be said to have been "harmed" by the violation of not being licensed?  The second sentence in Section 23064 necessarily presumes that the definition of an "aggrieved customer" is somebody that has paid some amount to the party that allegedly has violated the CDDTL – obviously limiting recovery to such "aggrieved customers."

Doc. 233 (Opp. Br.) at 7.

As the forgoing makes clear, individuals who applied for loans, but did not have those loans funded, have a far weaker argument that they were "injured" – and thus that have standing to bring a CDDTL claim – than individuals who received and paid fees on loans.  Indeed, Plaintiffs freely acknowledge this fact, as mentioned above.  Thus, individuals within the Main Class who received

loans, and those who did not, are not "subject to the same legally significant question in the same way." *Rojas v. Marko Zaninovich, Inc.*, No. CIV-F-09-0705AWI JLT, 2013 WL 1326582, *2 (E.D. Cal. Mar. 29, 2013); *see also Brinker Restaurant Corp. v. Sup. Ct.* 53 Cal.4th 1004, 1025 (2012) (class definition adopted by trial court was overinclusive because "[t]he definition on its face embraces individuals who now have no claim against Brinker"). This is true regardless of whether Plaintiffs include in the Main Class everyone who applied and received no loans, or only those whose leads were "Completed" – the fact of whether a lender acquired the loan or not has no impact on the fact that a plaintiff who received no loan, and paid no money, was not injured.[3]

The plain language of Financial Code § 23064, which grants a private right of action to "[a]ny person who is injured by any violation of" the CDDTL, requires actual injury, and Plaintiffs' reply brief does not argue otherwise.[4] Indeed, when dealing with such language in analogous circumstances, courts require plaintiffs to demonstrate actual injury resulting from statutory violations in order for the plaintiffs to have standing to bring the claim. *See, e.g., Boorstein v. Men's Journal LLC*, No. CV 12–771 DSF (Ex), 2012 WL 2152815, *2-3 (C.D. Cal. Jun. 14, 2012) (plaintiff lacked standing to sue under California's "Shine the Light" law, which granted standing to consumers "injured by a violation of this title"; "Because the violation alleged by Plaintiff was not the cause of the purported economic injury, this theory does not provide Plaintiff with statutory standing to sue."); *Miller v. Hearst Comm'ns, Inc.*, No. CV 12–0733–GHK (PLAx), 2012 WL 3205241 (C.D. Cal. Aug. 3, 2012) (same); *c.f., Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F.Supp.2d 1166, 1195 (N.D. Cal. 2009) (to bring private action under Federal antitrust laws, "the antitrust violation need not

---

[3] A "Completed" lead is one that was acquired by a lender after being circulated, as distinguished from a "Failed" lead, which is a lead that was not acquired by any lender. *See* Doc. 233-16 (Madsen Decl.) ¶ 9. Defendant PartnerWeekly maintains a database showing whether or not leads circulated to lenders were "Completed" or "Failed," but this database does not contain information regarding whether a "Completed" lead resulted in a consummated loan. *Id*. ¶ 12.

[4] In their reply brief in support of their motion for leave to amend, Doc. 236, Plaintiffs present alternate arguments that individuals do not need to be injured to bring a CDDTL claim (despite the plain language of the statute), and that Plaintiffs have been injured because they spent a few minutes filling out an online form or because of the increased risk of having their private information disseminated (and in support of which Plaintiffs have uncovered no evidence tying any such dissemination to the MoneyMutual Defendants, particularly given that the Plaintiffs defaulted on loans, which then were sent to debt collectors). These unpersuasive arguments are fully addressed in the sur-reply in opposition to motion for leave to amend.

be the sole cause of the injury, though it must be a material and a substantial cause of the injury"); *Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 799 (9th Cir. 1996) (where Hawaii statute gave private right to sue for injury caused by violation of statute, "[t]he mere existence of a violation is not sufficient ipso facto to support the action; forbidden acts cannot be relevant unless they cause private damage").

### III.   CONCLUSION

Because limiting the Main Class to the CDDTL claim and to "Completed" leads does not change the fact that plaintiffs who suffered no injury lack standing, and the fact that the Main Class contains individuals who did and did not suffer economic injury, Plaintiffs revised class definition has no impact on Defendants arguments in opposition.

Dated: January 25, 2016          PUTTERMAN LOGAN LLP

                                 By:   /S/ *Donald J. Putterman*
                                       Donald J. Putterman

                                 Attorneys for Defendants MoneyMutual, LLC, SellingSource, LLC, Montel Brian Anthony Williams, Glenn McKay, PartnerWeekly, LLC, John Hashman, Brian Rauch, Samuel W. Humphreys, Douglas Tulley, and Alton F. Irby III