UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN L. GILBERT, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MONEYMUTUAL, LLC, et al.,<br><br>    Defendants. | Case No. 13-cv-01171-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION FOR CLASS CERTIFICATION**<br><br>Re: Docket No. 227 |

Now before the Court for consideration is the motion for class certification, filed by Plaintiffs, Sean L. Gilbert ("Gilbert"), Keeya Malone ("Malone"), Charmaine B. Aquino ("Aquino"), and Kimberly Bilbrew ("Bilbrew") (collectively "Plaintiffs"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and it GRANTS, IN PART, AND DENIES, IN PART, Plaintiffs' motion for class certification.

**BACKGROUND**

The Court has set forth the facts underlying this litigation in several prior orders, and it shall repeat them here only as necessary. In brief, Plaintiffs allege they applied for and obtained "payday loans" from entities that are not licensed to issue such loans in California ("Unlicensed Lenders"). (Fifth Amended Complaint ("5th AC"), ¶¶ 52-55.)[1] Plaintiffs have not sued the Unlicensed Lenders. Instead, they have sued, *inter alia*, Defendants, MoneyMutual LLC ("MoneyMutual"), Selling Source, LLC ("Selling Source"), Glenn McKay, PartnerWeekly, LLC ("PartnerWeekly"), John Hashman, Brian Rauch, Samuel W. Humprheys, Douglas Tulley, and

---

[1] An "Unlicensed Lender" is defined to mean "persons or companies offering loans … which do not have licenses issued by the State of California to make a payday loan or any other type of loan to a California resident." (5th AC ¶ 40.)

Alton F. Irby III (collectively, the Money Mutual Defendants") and Montel Brian Anthony Williams ("Mr. Williams").

The MoneyMutual Defendants are the business of generating "leads," which consist of "information concerning persons who have identified themselves over the internet as interested in obtaining short-term personal loans." (Docket No. 233-16, Declaration of Tim Madsen ("Madsen Decl."), ¶ 2.) The MoneyMutual Defendants then connect those leads "via a real-time, electronic system to potential lenders who have contracted with PartnerWeekly for the opportunity to review and potentially acquire leads meeting parameters established" by lenders. (*Id.*)

According to Mr. Madsen, PartnerWeekly's President, PartnerWeekly obtains leads from the MoneyMutual.com website, or from independent third-party affiliates known as "Publishers." (*Id.* ¶¶ 3-4.)[2] Partner Weekly obtains leads from Publishers either through websites operated by the Publishers or through banner and pop-up advertising. In the latter instance, a potential lead can be redirected to "an internal web page maintained by PartnerWeekly which includes the same form as that on the MoneyMutual website" and may also be directed to other lead generation websites. (*See id.* ¶¶ 4-5.)

PartnerWeekly maintains an ongoing electronic database, which includes all leads offered since September 2009 to contracting lenders through PartnerWeekly's real-time electronic system. That database includes "basic identifying information concerning the lead…, including the person's name, address, phone numbers and the email address from which the person submitted his or her information; the date and time when the lead is received by PartnerWeekly…; information concerning the source of the lead to PartnerWeekly," whether or not the lead was acquired by a lender, and, if so, the lender's identity. The database does not include any information about whether the lender ultimately offered a loan to the person identified in the lead. (*Id.* ¶¶ 9-12.)

Plaintiffs allege that the MoneyMutual Defendants and Williams assisted the Unlicensed Lenders in the origination of payday loans without a license to do so. (5th AC ¶ 58.) According

---

[2] Williams is alleged to promote the MoneyMutal Defendants' network of lenders on the MoneyMutual.com website and in other forms of advertising. (5th AC ¶¶ 107-113.)

1   to Plaintiffs, they each obtained a payday loan from an Unlicensed Lender by using the

2   MoneyMutual.com website or a website of an entity affiliated with Selling Source.  (5th AC ¶¶

3   50-54.)

4       Plaintiffs now move to certify the following classes:

> All California residents who **received** a "payday loan" from an UNLICENSED LENDER on or after February 11, 2009 by using any website affiliated with or in response to an email from Selling Source, LLC or one of its subsidiaries.  Any lender owned by an American Indian Tribe during the entire Class Period is excluded.

> All California residents who **received** a "payday loan" from an UNLICENSED LENDER on or after February 11, 2009 by using the MoneyMutual website.  Any lender owned by an American Indian Tribe during the entire Class Period is excluded.[3]

(5th AC, ¶¶ 23-24 (emphasis in original).)[4]  The Court refers to these two classes as the Selling Source Class and the MoneyMutual Class, respectively.

## ANALYSIS

**A.    Applicable Legal Standards.**

Class certifications are governed by Federal Rule of Civil Procedure 23 ("Rule 23").  As the moving parties, Plaintiffs bear the burden of "demonstrating that [they have] met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)."  *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007); *see also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.), amended 273 F.3d 1266 (9th Cir. 2001) (trial court must conduct a "rigorous analysis" to determine whether the requirements of Rule 23 have been met).  "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate ... compliance with the Rule – that is, [the party] must

---

[3]    Aquino is not a member of the MoneyMutual Class.  (5th AC ¶ 24.)

[4]    When Plaintiffs filed their motion for class certification, they also filed a motion for leave to amend their complaint to include a "Main Class."  The Main Class was defined to include persons who had applied for a loan using a Selling Source affiliate and whose lead was identified as "completed."  The Court denied Plaintiffs' motion to the extent it sought to add the Main Class.  (*See* Docket No. 254.)  Plaintiffs also move to certify the Main Class.  In light of the ruling on the motion for leave to amend, the Court denies, as moot, the motion to certify the Main Class.

3

be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011). "Class certification is not immutable, and class representative status could be withdrawn or modified if at any time the representatives could no longer protect the interests of the class." *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citing *Soc. Servs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 948-49 (9th Cir. 1979)).

The Supreme Court has noted that, frequently, a "'rigorous analysis'" of the Rule 23 factors, "will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart*, 131 S. Ct. at 2551. "The district court is required to examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (citing *Wal-Mart*, 131 S. Ct. at 2552 n.6). "To hold otherwise would turn class certification into a mini-trial." *Ellis*, 657 at 983 n.8.

**B.     Plaintiffs' Claims.**

Plaintiffs assert claims against the MoneyMutual Defendants and Williams for violations of the California Deferred Deposit Transaction Law, California Financial Code sections 23000, *et seq.* (the "CDDTL Claim"), violations of California's Unfair Competition Law, California Business and Professions Code sections 17200, *et seq.* based on the unlawful and fraudulent prongs of that statute (the "UCL Claim"), and a claim under the Racketeering Influenced and Corrupt Organizations Act (the "RICO Claim").[5] According to Plaintiffs, the Selling Source Class will assert the CDDTL Claim, the RICO Claim, and the UCL claim, but based only on the unlawful prong of the statute. The MoneyMutual Class will assert the CDDTL Claim, the RICO Claim, and the UCL Claim based on both the unlawful and fraudulent prongs of the statute.

The CDDTL Claim is based on an alleged violation of Section 23005, which provides that "[a] person shall not offer, originate, or make a deferred deposit transaction, arrange a deferred

---

[5] The Court shall refer to the UCL Claim based on the fraudulent prong of the statute as the "UCL Fraud Claim."

4

deposit transaction for a deferred deposit originator, act as an agent for a deferred deposit originator, or assist a deferred deposit originator in the origination of a deferred deposit transaction without first obtaining a license from the commissioner and complying with the provisions of this division." There is a dearth of authority on the proper interpretation of the CDDTL. However, based on the language of Section 23005, in order to prevail on this claim, Plaintiffs will be required to establish that the MoneyMutual Defendants and Williams engaged in one of the acts prohibited by that provision and did so without a license. In addition, Plaintiffs will be required to show a causal connection between the alleged violation of Section 23005 and their injury. *Cf., Miller v. Hearst Communications,* No. CV-12-733-GHK (PLAx), 2012 WL 3205241, at * 5-6 (C.D. Cal. Aug. 3, 2012) (finding that to show a plaintiff was "injured by a violation" of California's "Shine the Light" law, plaintiff must show injury was caused by the alleged violation), *aff'd* 554 Fed. App. 657 (9th Cir. 2014).

In order to prevail on the RICO Claim, Plaintiffs will be required to establish "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to [their] 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.1996), in turn citing 18 U.S.C. §§ 1964(c), 1962(c)). An "enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Racketeering activity is any act indictable under any of the statutory provisions listed in 18 U.S.C. section 1961(1). A "pattern of racketeering activity" requires the commission of at least two such acts within a ten-year period. 18 U.S.C. § 1961(5).

Finally, in order to prevail on their UCL Claims, Plaintiffs "must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1043 (9th Cir. 2004) (quoting Cal. Bus. & Prof. Code § 17200); *see also Albillo v. Intermodal Container Servs., Inc.*, 114 Cal. App. 4th 190, 206 (2003). The unlawful prong proscribes "anything that can be properly called a business practice and that at the same time is forbidden by law." *Smith v. State*

5

1  *Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717-18 (2001) (internal quotations omitted). To
2  state a claim based on the unlawful prong, Plaintiffs must establish that the MoneyMutual
3  Defendants' and Williams' practices are "forbidden by law, be it civil, criminal, federal, state, or
4  municipal, statutory, regulatory, or court made." *Saunders v. Superior Court*, 27 Cal. App. 4th
5  832, 838-39 (1994).

6  Under the fraudulent prong of the UCL, Plaintiffs will be required to show that members of the public are likely to be deceived. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) ("*Tobacco II*"). A claim under the fraudulent prong of the UCL is distinct from common law fraud. *Id.* Under the UCL, "reliance may be presumed from a showing that a misrepresentation was material." *Id.* at 327. Materiality, in turn, is determined using an objective standard. *See id.*; *Ries v. Arizona Beverages, LLC*, 287 F.R.D. 523, 538 (N.D. Cal. 2012).

**C.   The Court Grants, in Part, and Denies, in Part, the Motion for Class Certification.**

**1.   Rule 23(a) Factors.**

Class certification is appropriate only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

**a.   Numerosity.**

Rule 23(a)'s "numerosity" factor requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Although "[t]here is no absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable[,] . . . [j]oinder has been deemed impracticable in cases involving as few as 25 class members. . . ." *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 628-29 (N.D. Cal. 2005) (internal citations omitted) (finding joinder was impractical where there were over 236 members in the putative class). "[A] survey of representative cases indicates that, generally speaking, classes consisting of more than 75 members usually satisfy the numerosity requirement

1 of Rule 23(a)(1)." *Id.* (citing 7A Wright, Miller & Kane Federal Practice and Procedure: Civil 3d
2 § 1762 (2005)).

3     Plaintiffs submit evidence that the MoneyMutual Defendants sold over 100,000 leads to various lenders. (Docket No. 227-1, Declaration of Jeffrey Wilens ("Wilens Decl."), ¶¶ 3-4; Docket No. 228, Plaintiffs' Compendium of Evidence ("COE"), Exs. 2, 5 (excerpt of spreadsheets and sampling of lead orders).) Plaintiffs argue that, based on the number of leads sold, the Selling Source Class and the MoneyMutual Class are sufficiently numerous to warrant class certification. Although Plaintiffs have not specifically identified the number of loans that were funded as a result of the leads sold, the MoneyMutual Defendants and Williams have not contested the issue of numerosity.

    The Court concludes Plaintiffs have met their burden to show that the Selling Source Class and the MoneyMutual Class are sufficiently numerous.

### b. Commonality

    Commonality requires that there be "questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (internal quotation marks omitted). Courts look for "shared legal issues or a common core of facts." *Id.* Where diverging facts underlie the individual claims of class members, courts consider whether the issues "at the heart" of those claims are common such that the class vehicle would "facilitate development of a uniform framework for analyzing" each class member's situation. *Id.* at 1123. The class claims "must depend on a common contention," which "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. The commonality requirement has been construed permissively and is "less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019.

    In their opening brief, the MoneyMutual Defendants and Williams argued that Plaintiffs could not demonstrate commonality, because some members of the proposed Main Class would

7

not have had standing. In light of the Court's ruling on the motion for leave to amend, that argument is now moot. The MoneyMutual Defendants and Williams do not otherwise contest the commonality factor. With respect to the CDDTL Claim and the UCL Claim, to the extent it is based on unlawful conduct, Plaintiffs will be required to show, *inter alia*, that the MoneyMutual Defendants and Williams were not licensed and that they engaged in one of the acts prohibited by Financial Code section 23005. With respect to the RICO Claim, a key common question is whether the MoneyMutual Defendants and Williams were part of an "association in fact" enterprise. Finally, with respect to the MoneyMutual class, a key common question is whether the alleged misrepresentations or omissions were deceptive and material to the class. *See, e.g., Ehret v. Uber Technologies, Inc.*, -- F. Supp. 3d --, No. 14-cv-00113-EMC, 2015 WL 7759464, at *5 (N.D. Cal. Dec. 2, 2015) (questions of whether defendant made the alleged misrepresentation and whether that alleged misrepresentation would be material to class members was sufficient to satisfy commonality requirement).

The Court concludes that Plaintiffs have met their burden to show common questions of law and fact exist as to both the MoneyMutual and Selling Source Classes.

        **c.**      **Typicality.**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As with the commonality requirement, the typicality requirement is applied permissively. *Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.*; *see also Lozano*, 504 F.3d at 734 ("Under Rule 23(a)(3) it is not necessary that all class members suffer the same injury as the class representative."). Thus, typicality is "'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

The MoneyMutual Defendants and Williams do not contest this factor. Plaintiffs' claims arise out of the same course of events as the claims of absent class members. Specifically, they

8

1 allege they obtained loans either through the MoneyMutual.com website or through a Selling
2 Source affiliate.[6] In addition, based on the allegations in the 5th AC and the record presented on
3 this motion, Plaintiffs' claims depend upon the same legal theories as absent class members.
4 The Court concludes that Plaintiffs have met their burden to show typicality as to both the
5 MoneyMutual and Selling Source Classes.

### d. Adequacy of Representation.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. In order to determine whether the adequacy prong is satisfied, courts consider the following two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing, Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *see also Fendler v. Westgate California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (noting that representative plaintiffs and counsel also must have sufficient "zeal and competence" to protect the interests of the class). "'[T]he adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative.'" *Rodriguez v. West Publishing Co.*, 563 F.3d 948, 961 (9th Cir. 2009) (quoting *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001) (brackets added in *Rodriguez*)).

The MoneyMutual Defendants and Williams do not contest this issue. The Court finds that Plaintiffs do not have conflicts with any absent class members and that they are adequate representatives. (*See* Docket No. 227-3, Declaration of Sean L. Gilbert, ¶¶ 11-19; Docket No. 227-4, Declaration of Kimberly Bilbrew, ¶¶ 13-21; Docket No. 227-5, Declaration of Charmaine B. Aquino, ¶¶ 8-15; Docket No. 227-6, Declaration of Keeya Malone, ¶¶ 10-18.) The Court also has considered the declarations submitted by counsel, and it concludes that they will vigorously

---

[6] As noted above, Aquino is not alleged to be a member of the MoneyMutual Class.

1  prosecute this action on behalf of the class. (*See* Wilens Decl., ¶¶ 18-37; Docket No. 227-2,

2  Declaration of Jeffrey Spencer, ¶¶ 1-29.)

3        The Court concludes that Plaintiffs have met their burden to show that they will adequately

4  represent the Selling Source and MoneyMutual Classes.

5        **e.     Ascertainability.**

6        Although Rule 23 does not expressly include a requirement that classes be ascertainable,

7  courts have concluded that it is an implied requirement for class certification. *See, e.g., Kosta v.*

8  *Del Monte Foods, Inc.*, 308 F.R.D. 217, 223 (N.D. Cal. 2015); *Xavier v. Phillip Morris USA Inc.*,

9  787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). To satisfy this requirement, the party seeking class

10  certification must show that the class definition is based on objective criteria and sufficiently

11  definite so that it is administratively feasible to determine whether a particular person is a class

12  member. *Kosta,* 308 F.R.D. at 223; *Xavier*, 787 F. Supp. 2d at 1089; *see also Yordy v. Plimus,*

13  *Inc.*, No. 12-cv-229-TEH, 2013 WL 5832225, at *2 (N.D. Cal. Oct. 29, 2013) ("A class is

14  'ascertainable' if it can be described by a set of common characteristics sufficient to allow a

15  member of that group to identify himself or herself as having a right to recover based on the class

16  description."). "Without an objective, reliable way to ascertain class membership, the class

17  quickly would become unmanageable, and the preclusive effect of final judgment would be easy

18  to evade." *Xavier*, 787 F. Supp. 2d at 1089. However, some courts have noted that failure to

19  demonstrate ascertainability alone will not be sufficient to defeat a motion for class certification.

20  *See, e.g, Jones v. ConAgra Foods, Inc.*, No. 12-cv-01633-CRB, 2014 WL 2702726, at *11 (N.D.

21  Cal. June 13, 2014).

22        The MoneyMutual Defendants and Williams do not dispute that the putative classes are

23  defined by objective criteria, and the Court also concludes that they are. For example, the

24  MoneyMutual Class is defined, in part, by whether a class member received a loan by using the

25  MoneyMutual website. That definition would provide a prospective class member with sufficient

26  information to determine whether he or she applied for, and ultimately received a loan, by using

27  the MoneyMutual website. *See, e.g., Kosta*, 308 F.R.D. at 227 (finding definition that defined

28  class as "all persons who purchased a Defendant's brand canned tomato product or a Defendant's

FruitNatural or SunFress fruit product," used objective criteria, but finding that class was not ascertainable because of variability in products and labelling).  Similarly, although a Selling Source affiliate or its subsidiary may not be known to a putative class member, Plaintiffs have shown that there are objective means of identifying class members whose leads originated with a Selling Source affiliate, namely through Selling Source business records.  Finally, although the term "Unlicensed Lenders" overlaps to some degree with the merits of the case, and a putative class member may not know whether a lender is licensed in California, a lender's licensing status also can be determined by reference to objective criteria.

The MoneyMutual Defendants and Williams do argue that there is not an administratively feasible method to identify class members, because their database does not show whether a lead ultimately resulted in a loan.  Although the MoneyMutual Defendants and Williams cite to a number of cases that found self-identification was insufficient to satisfy the ascertainability requirement, the cases on which they rely involved food labelling where the courts found that self-identification would be insufficient, because of the number of products at issue and the variations in labels.  The courts also noted that it was not likely that the defendants would have records that could be used to identify class members and, because of the low costs of the products, it was unlikely that putative class members would have retained receipts.  *See, e.g, Kosta*, 308 F.R.D at 228-29; *Jones*, 2014 WL 2702726, at *8-12; *Red v. Kraft Foods, Inc.*, No. CV-10-01028-GW (AGRx), 2012 WL 8019257, at *4-6 (C.D. Cal. Apr. 12, 2012).

In contrast, in this case, although the loans at issue may have been small, the decision to obtain a payday loan is likely to be memorable and to the extent the Unlicensed Lenders deducted fees from a putative class members' bank account, that fact would be documented in bank records. Further, the record demonstrates that the MoneyMutual Defendants and Williams maintain business records that may be used, in conjunction with other records, to identify class members. (*See, e.g.,* Declaration of Cherilyn Rodriguez, ¶¶ 1-8; Madsen Decl., ¶¶ 9-12.)  Thus, at this stage, and on this record, the Court is satisfied that putative class members would not have to engage in a "memory test" to determine whether they are a member of the MoneyMutual Class or the Selling Source Class.  *Compare, Kosta*, 308 F.R.D. at 229.

11

The Court finds that Plaintiffs have met their burden to show that the Selling Source and MoneyMutual Classes are ascertainable.

### 2. The Rule 23(b) Factors.

Plaintiffs move to certify a class under Rule 23(b)(3), which requires a court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See also Hanlon*, 150 F.3d at 1022.

#### a. Predominance.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The focus is "on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

The MoneyMutual Defendants and Williams do not seriously contest that common questions will predominate with respect to the Selling Source Class and the claims they intend to assert. They also do not seriously contest predominance with respect to the MoneyMutual Class on the CDDTL or the RICO Claim. However, the MoneyMutual Defendants and Williams do argue that individual issues will predominate with respect to the MoneyMutual Class on the UCL Fraud Claim, because the issues of materiality and reliance would vary by class member.[7]

The Court concludes that Plaintiffs have met their burden to show predominance as to the Selling Source Class and as to the MoneyMutual Class on the CDDTL, the UCL Claim, based on the unlawful prong, and the Civil RICO Claims. However, for the reasons that follow, the Court concludes Plaintiffs have not met their burden to satisfy the predominance prong on the UCL

---

[7] The MoneyMutual Defendants and Williams argued that individual issues would not predominate because some members of the "Main Class" did not receive a loan. In light of the Court's ruling on the motion for leave to amend, that argument is now moot. They also contended that individual issues relating to damages would predominate. On the existing record, the Court does not find that argument persuasive. *See, e.g., Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 513 (9th Cir. 2013).

Fraud Claim, which is based on statements contained in the MoneyMutual Code of Lender Conduct.

The MoneyMutual Defendants and Williams do not contend that different *versions* of this Code of Lender Conduct exist. Thus, it is reasonable to conclude that the alleged misrepresentations were uniform in content. The issue the Court must decide is whether Plaintiffs have met their burden to show that it would be reasonable to infer all class members were exposed to the alleged misrepresentations. *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) ("class certification of UCL claims is available only to those class members who were actually exposed to the business practices at issue"); *accord Mazza v. Honda Motor Co.,* 666 F.3d 581, 596 (9th Cir. 2012); *Ehret*, 2015 WL 7759464, at *8.

In the *Ehret* case, for example, the court found that the representations at issue were made on a uniform basis, but it determined that the plaintiff had not met her burden to show that it was reasonable to infer the class she sought to certify had been exposed to the alleged misrepresentations. In reaching its conclusion, the *Ehret* court distinguished the facts before it from cases involving product labels, where it could be reasonable to infer that the class members were exposed to the allegedly misleading statement at the point of sale. *Ehret*, 2015 WL 7759464, at *8 (citing *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (C.D. Cal. 2013) and *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 488 (N.D. Cal. 2011)).

The *Ehret* court also concluded that the nature of the defendant's advertising campaign was not sufficient to show that it was reasonable to infer classwide exposure to the allegedly misleading information. *Id.* The court distinguished, for example, the *Tobacco II* case, in which the plaintiffs had been exposed to a massive and decades long advertising campaign that contained the allegedly misleading information. *See id.*, 2015 WL 7759464, at 9.; *see also Tobacco II*, 46 Cal. 4th at 328. The *Ehret* court also distinguished the facts before it from *Makaeff v. Trump University,* No. 3:10-cv-0940-GPC-WVG, 2014 WL 688164, at *13 (S.D. Cal. Feb. 21, 2014). *Ehret*, 2015 WL 7759464, at *10. In *Makaeff*, the court found that the defendant's "multi-media promotional campaign was uniform, highly orchestrated, concentrated and focused on its intended audience." 2014 WL 688164, at *13. Based on those facts, the *Makaeff* court found "the effect of

13

1    this campaign was to make it highly likely that each member of the putative class was exposed to
2    the same representation." *Id.*

3         In contrast, in *Mazza*, the court found that advertising campaign at issue was limited in
4    time and scope, and it therefore found that individual issues of reliance and materiality would
5    predominate over common issues. *Mazza,* 666 F.3d at 595-96.  Similarly, the court found the
6    there was insufficient evidence to presume classwide exposure in a case alleging
7    misrepresentations allegedly made in a "sixteen-month advertising campaign combined with
8    messages in small print" on the back of a minority of products.  *See In re Clorox Consumer Litig.,*
9    301 F.R.D. 436, 445-46 (N.D. Cal. 2014).  Thus, the *In re Clorox* court found that the plaintiffs
10   failed to meet the predominance requirement as to their UCL claim.  *Id.*

11        As in this case, the plaintiff in *Ehret* argued that the defendant had included the alleged
12   misrepresentations on its website and proposed as alternative relief that the class could be certified
13   if it was limited to individuals who either had visited the defendant's website or had actually
14   received an email containing the alleged misrepresentations.  *Ehret*, 2015 WL 7759464, at *12.
15   The court denied the plaintiff's request to certify a class limited to persons who had actually
16   visited the defendant's website, because it still found that there was insufficient evidence of
17   exposure.  The court reasoned that "[j]ust because the information was available on the website
18   does not necessarily imply that visitors would likely have seen it, especially when there was a
19   good deal of other information on the website." *Id.*  The court did find, however, that it was
20   highly likely that individuals who received an email containing the alleged misrepresentation had
21   been exposed to it, and it distinguished the email from the website, because the contents of the
22   email focused on the alleged misrepresentation and were not diluted by other information.  Thus, it
23   was "highly likely" that customers who had received the email had "seen and been exposed to the
24   alleged misrepresentation." *Id.* at *13

25        Although Plaintiffs allege that the website contains the Code of Lender Conduct, there are
26   no allegations to suggest that the MoneyMutual Defendants or Williams highlight that aspect of
27   their business in print, radio or television advertisements. (*See* 5th AC ¶¶ 102-111.)  In addition,
28   although the record shows that the Plaintiffs recalled the Code of Lender Conduct, they have not

14

1    put forth any other evidence to support their argument that classwide exposure to the alleged
2    misrepresentations in that Code can be presumed. In addition, the record that is before the Court
3    demonstrates that the Code of Lender Conduct is not set forth, let alone referenced, on the home
4    page of the MoneyMutual.com website. (*See, e.g.,* Docket No. 65, Request for Judicial Notice in
5    Support of Motion to Dismiss, Ex. A.)[8] Thus, like the website at issue in *Ehret*, the alleged
6    misrepresentations are "not highlighted or especially set off to ensure that visitors would see"
7    them. *Ehret*, 2015 WL 7759464 at *12. In addition, the MoneyMutual.com website contains "a
8    good deal of other information" about payday loans. *Id.* The Court finds that the facts, and
9    evidentiary record, in this case are more in line with *Mazza, Ehret*, and the *In re Clorox* cases than
10   with the *Makaeff* or *Tobacco II* cases, and it concludes that there is insufficient evidence of
11   classwide exposure to the alleged misrepresentations regarding the Code of Lender Conduct.
12           The Court concludes that Plaintiffs have not met their burden to show predominance as to
13   the MoneyMutual Class on the UCL Fraud Claim.

        **b.**      **Superiority.**

15           A plaintiff can satisfy the superiority requirement when he or she can show that "class-
16   wide litigation of common issues will reduce litigation costs and promote greater efficiency."
17   *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In order to make this
18   determination, the Court should consider the following factors: "the interest of members of the
19   class in individually controlling the prosecution or defense of separate actions; the extent and
20   nature of any litigation concerning the controversy already commenced by or against members of
21   the class; the desirability or undesirability of concentrating the litigation of the claims in the
22   particular forum; the difficulties likely to be encountered in the management of a class action."
23   Fed. R. Civ. P. 23(b)(3)(A)-(D).
24           Because the Court has found that Plaintiffs have not met their burden to show
25   predominance on the MoneyMutual Class as to the UCL Fraud Claim, the Court analyzes
26   superiority only as to the Selling Source Class, on all claims, and as to the MoneyMutual Class on

---

[8] That document is attached as Exhibit M to the Putterman Declaration in opposition to the motion for class certification.

15

1  the CDDTL Claim, the RICO Claim, and the UCL Claim based on the unlawful prong.

2  Except to the extent issues of manageability overlap with the question of whether the
3  classes are ascertainable, the MoneyMutual Defendants and Williams have not contested the
4  superiority prong.  Based on the claims, the Court concludes that that the first factor weighs in
5  favor of finding a class action is superior to individual actions.  There is a case pending in state
6  court, which raises many of the same claims raised in this case.  However, the parties have not
7  provided the Court within any information about the status of that case.[9]  Thus, the second and
8  third factors are neutral.  Finally, having determined that the classes are ascertainable, and lacking
9  any other issues showing that the case could not be managed as a class action, the fourth factor
10 weighs in favor of a finding that a class action is superior.

11 The Court finds Plaintiffs have met their burden on the superiority prong as to the Selling
12 Source Class on all claims, and as to the MoneyMutual Class on the CDDTL Claim, the RICO
13 Claim, and the UCL Claim, based on the unlawful prong.

14 **CONCLUSION**

15 For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, the
16 motion for class certification.  The Court's ruling is without prejudice to the MoneyMutual
17 Defendants filing a motion for decertification, if circumstances warrant such a motion.

18 **IT IS SO ORDERED.**

19 Dated: February 8, 2016

20
21  JEFFREY S. WHITE
    United States District Judge
22

---

[9] Plaintiffs assert that it would presumably be stayed in favor of this case.

16