UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SEAN L. GILBERT, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>MONEYMUTUAL, LLC, et al.,<br><br>    Defendants. | Case No. 13-cv-01171-JSW (LB)<br><br>**AMENDED DISCOVERY ORDER**<br>Re: ECF No. 303 |

## INTRODUCTION

The plaintiffs in this class action challenge payday loans that they allege were illegal primarily because the lenders were unlicensed.[1] David Johnson (a defendant who successfully moved to compel arbitration[2]) and the plaintiffs dispute whether the plaintiffs' counsel is misusing contact information to solicit clients to file arbitrations against Mr. Johnson and others. The MoneyMutual defendants produced the information as "Highly Confidential" in the related state case *Pham v. JP Morgan Chase Bank, NA* and as "Protected Material" in this lawsuit. Generally, both protective orders provide that the plaintiffs can use such confidential information only for prosecuting the

---

[1] *See* Fifth Amended Complaint — ECF No. 256. Citations are to the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] 4/8/15 Order — ECF No. 186.

AMENDED ORDER (No. 13-cv-01171-JSW (LB))

litigation.[3] The court held hearings on April 28 and May 5, 2016. On this record and argument, the court accepts the plaintiffs' counsel's representation that he is not violating the protective orders because he is not using confidential information to solicit clients within the meaning of California Rule of Professional Conduct 1-400. Counsel agreed, and the court orders, that he will continue to abide by this practice.

## STATEMENT

The contact information is for individuals marketed as "leads" to short-term lenders.[4] One of the short-term lenders was Hong Kong Partners.[5] The plaintiffs and the MoneyMutual defendants agreed that the contact information could be used in this case subject to the terms of the *Pham* protective order; later, they entered into a protective order that a receiving party (here, the plaintiffs) may use "Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation."[6] Mr. Johnson separately produced documents regarding loans that Hong Kong Partners made to California residents between 2008 and 2013; the plaintiffs agreed to keep the information confidential and to use it only in connection with the motion for class certification in this case.[7]

Mr. Johnson contends that the plaintiffs' counsel is misusing the contact information to file arbitrations against Mr. Johnson and other defendants who successfully moved to compel arbitration.[8] Apparently the plaintiffs' counsel filed arbitrations after the district judge granted the defendants' motions to compel arbitration.[9] The plaintiffs' counsel asserts that he acted only to protect his clients' interests. Mr. Johnson counters that tolling protects clients, and this is an attempt to leverage settlement; the plaintiffs' counsel apparently filed 94 arbitrations since April

---

[3] Letter Brief — ECF No. 292 at 1-2.

[4] *Id.* at 1.

[5] *Id.*

[6] *Id.* at 2 (citing Protective Order — ECF No. 260).

[7] *Id.*

[8] *Id.*

[9] 4/8/15 Order — ECF No. 186.

AMENDED ORDER (No. 13-cv-01171-JSW (LB))   2

1  2015, each costing Hong Kong Partners $10,000, $3,000 of which is non-refundable.[10] (For a
2  point of reference, the plaintiffs' counsel said at the hearing that the class size is 40,000.) The
3  discovery dispute is whether this practice violates the protective order's requirement that the
4  plaintiffs' counsel can use confidential information only "in this litigation."

5  At the April 28 hearing, the plaintiffs' counsel represented that he would use information from
6  Mr. Johnson only to 1) determine which persons should be sent notice of class certification and 2)
7  prove damages at trial.[11] The court ordered that limitation but also explained that a further
8  limitation might interfere with the plaintiffs' counsel's communications with clients.[12] Because the
9  MoneyMutual defendants did not participate in the drafting of the letter brief or attend the April 28
10 hearing, the court clarified — at the plaintiffs' counsel's request — that the order applied only to
11 Mr. Johnson's disclosures.[13] Mr. Johnson then asked the court to reconsider its clarification on the
12 ground that it is inappropriate for the plaintiffs' counsel to solicit class members using contact
13 information designated for use only in this litigation.[14] The court set the May 5 hearing to obtain
14 the MoneyMutual defendants' input. Basically, the input was that the protective order at ECF No.
15 260 governs the use of information produced in the litigation, and the plaintiffs' counsel cannot
16 use information in a manner that violates the protective order.

## ANALYSIS

18 The plaintiffs' counsel first asserts that the MoneyMutual defendants produced the contact list
19 under the *Pham* protective order, and any claim of misuse needs to be raised in state court.[15] That
20 may be one forum, but there is a protective order here that — like the *Pham* protective order —
21 limits use of information to the prosecution of this litigation.
22 Next, the plaintiffs' counsel argues that the "arbitrations are part of the same *Pham*

---

[10] *See* Letter Brief — ECF No. 292 at 3 n.4.
[11] 4/29/16 Order — ECF No. 299.
[12] *Id.*
[13] ECF No. 301; 4/29/16 Order — ECF No. 302.
[14] ECF No. 303 at 2.
[15] Letter Brief — ECF No. 292 at 4.

United States District Court
Northern District of California

litigation."[16] He explains that the protective order there limited use of the information to litigating the claims in the lawsuit (as opposed to using it for some other purpose). If a claim is sent to another forum (such as another court or arbitration), that does not cut off use of the discovery; it is the same litigation.[17] That is not a fair reading of the protective orders. "Litigation" in both is defined as (essentially) the lawsuit. Also, the ordinary way to address use of information is to dispute confidentiality designations.

More fundamentally, the plaintiffs' counsel argues that he has not used confidential information in violation of the protective orders. The spreadsheet has contact information for class members. He began contacting class members from the list and other sources, gathering information to support class certification and his prosecution of the case. He informed the class members that certain claims were split and sent to arbitration. He did not solicit them to file arbitrations (and at the hearing, defined "solicitation" as the definition in California Rule of Professional Conduct 1-400, meaning, a communication concerning his availability for professional employment in which a significant motive is pecuniary gain). Instead, he told them only the status of their case and the consequences of action and inaction. Thereafter, certain class members filed arbitrations to preserve their rights in the event that the arbitrator upheld the enforceability of the arbitration agreement and the class-action waiver.[18]

The court cannot conclude on this record and argument that the plaintiffs' counsel violated the protective orders (and more particularly, the protective order at ECF No. 260). The court recognizes that courts routinely prohibit the use of confidential information in other litigation. For example, one cannot use confidential information learned in one lawsuit to file a separate lawsuit. *See, e.g.*, *On Command Video Corp. v. LodgeNet Entm't Corp.*, 976 F. Supp. 917, 921 (N.D. Cal. 1997). But the cases generally involve the misuse of proprietary information (such as trade secrets or source code or competitive information). *See id.; Avago Techs., Inc. v. IPtronics Inc.,* No. 5:10-cv-02863-EJD (PSG), 2015 WL 3640626, at *1 (N.D. Cal. June 11, 2016). By contrast, the

---

[16] *Id.*
[17] *Id.*
[18] *Id.*

AMENDED ORDER (No. 13-cv-01171-JSW (LB))   4

alleged misuse here involves an attorney giving advice to actual class members (albeit those identified through discovery) who are his clients. Mr. Johnson cites no authority that compels (or even persuades) a conclusion that the plaintiffs' counsel — who is allowed to contact those on the spreadsheet — cannot communicate information about the status of the litigation, advise them, and act to protect their interests. Mr. Johnson's counsel was careful to specify that he did not object to the arbitrations themselves. But the court sees no path to imposing — through a discovery ruling — a blanket limitation on counsel's communications with persons on the spreadsheet. To do so intrudes into the attorney-client relationship. Moreover, the plaintiffs' counsel represented that he is not using protected information to solicit (within the meaning of Rule 1-400) clients.

On this record and argument, the best that the court can do is to order the plaintiffs' counsel to do what he agrees to do: not solicit (as defined in Rule 1-400) clients through use of the contact information disclosed by the MoneyMutual defendants or Mr. Johnson.

The court is not unsympathetic to the concerns that Mr. Johnson raises, especially given what may be the premature, serial filings of arbitrations at Mr. Johnson's expense. The parties are free to raise any solutions — including a proposal for ADR — at the June 9 motions hearing.

## CONCLUSION

The court orders the plaintiffs' counsel to do what he has agreed to do: not solicit (within the meaning of California Rule of Professional Responsibility 4-100) clients through use of the contact information disclosed by the MoneyMutual defendants or Mr. Johnson. This disposes of ECF No. 303.

**IT IS SO ORDERED.**

Dated: May 6, 2016

_____
LAUREL BEELER
United States Magistrate Judge